UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEROY PEOPLES,

                              Plaintiff,

          - against-

BRIAN FISCHER, DOCS Commissioner,
et al.

                           Defendants.

Docket Number
11-CV-2694 (SAS)

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
<u>Attorney for State Defendants</u>
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-6185

JEB HARBEN
Assistant Attorney General
    *of Counsel*

# PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted on behalf of defendants Fischer, Leclaire, Ward, Bezio, Rock, Lee, O'Connor and Bellamy.[1] Each of these defendants is or was a New York State Department of Corrections and Community Supervision ("DOCCS") employee and each moves to dismiss plaintiff's Complaint pursuant to F.R.C.P. 12(b)(1) and (6).[2] Plaintiff, a *pro se* inmate, claims his rights were violated as a result of his discipline for possessing U.C.C. lien materials in a criminal effort to harass public officials. Defendants now move to dismiss on the grounds of: (1) failure to state a claim; (2) qualified immunity; (3) no personal involvement; (4) Eleventh Amendment immunity; and (5) failure to exhaust administrative remedies.

# STATEMENT OF FACTS

Plaintiff is a rapist currently serving a 13-year, 8 month, 16 day to 16-year sentence in the custody of DOCCS.[3] In October 2009, he was incarcerated at Green Haven Correctional Facility ("Green Haven"). With ample time for creative scheming while incarcerated, he apparently decided to try his hand at filing bogus U.C.C. liens on public officials in order to harass them. Plaintiff has brought this action because on or about September 30, 2009, the Queens County District Attorney's Office forwarded to DOCCS various U.C.C. lien materials that plaintiff had sought to illegally file against Queens County District Attorney personnel.[4] This resulted in

---

1 There is no record of defendant Malave or the "Office of Counsel" having been served.

2 Defendant Commissioner's Hearing Officer Drown is deceased. Counsel has inquired as to the status of his estate in order for counsel to appear on behalf of the Estate, but has not yet received information in this regard. All arguments made herein, however, are equally applicable to defendant Drown and if this action is dismissed as to other defendants, it is respectfully submitted that this Court should dismiss defendant Drown regardless of his representational status.

3 See http://nysdocslookup.docs.state.ny.us/GCA00P00/WIQ1/WINQ000.

4 See November 30, 2010 Declaration of Jeb Harben ("Harben Decl."), Exh. B (September 30, 2009 letter from Queens County Executive Assistant District Attorney Peter A. Crusco to Green Haven Correctional Facility ("Green Haven") Superintendent William A. Lee; Exh. C (Transcript

plaintiff's cell at Green Haven being searched on October 5, 2009 by named defendant Corrections Officer Malave at which time 148 pages of U.C.C. lien-related materials that violate DOCCS Standards of Inmate Behavior 107.21 and 113.30 (codified at 7 NYCRR § 270.2) were found.[5] Plaintiff was issued a misbehavior report by named defendant Sgt. O'Connor charging him with violating standards 107.21 and 113.30 as well as 180.11, which deals with facility correspondence procedures in general. See Exh. E. After an October 13, 2009 hearing, during which plaintiff had the opportunity to present his defense, call witnesses and submit evidence before a Hearing Officer (defendant Drown), plaintiff was found guilty of violating all three disciplinary standards and received a sentence of 36 months placement in the Special Housing Unit ("SHU"), 36 months loss of packages, commissary, and phone privileges as well as a recommended loss of 72 months of "good time."[6] Due to good behavior while in SHU, plaintiff's time in SHU and corresponding losses of privileges were reduced so that these disciplinary sanctions ended on November 28, 2011. See Exh. H.

**ARGUMENT: DEFENDANTS' MOTION TO DISMISS SHOULD BE GRANTED**

**I.   STANDARD OF REVIEW**

Under F.R.C.P. 12(b)(6), the Court must accept all of plaintiff's factual allegations as true and "draw all reasonable inferences in plaintiff's favor." But plaintiff must also allege enough

---

of October 13, 2009 Disciplinary Hearing) at p. 6. Because plaintiff specifically cites to and/or attaches these documents/events in question and thus incorporates them by reference, these underlying documents may be considered by the Court here. See, e.g., Chambers v. Time, 282 F.3d 147, 152 (2d Cir. 2002) (documents that are "integral" to the complaint may be considered on motion to dismiss); Cortec Indus., Inc. v. Sum, 949 F.2d 42, 48 (2d Cir. 1991) (court may consider documents plaintiff relied on in framing the complaint). The contents of these documents are not in dispute, although the parties may dispute what conclusions should be drawn from them. The Queens County defendants have separately moved to dismiss this action as well.

5  See Harben Decl., Exh. C at pp. 6 – 7; Exh. D  (July 24, 2009 Notice to Inmate Population); Exh. E (October 5, 2009 Inmate Misbehavior Report); Exh. F (Contraband Receipt).

6  See Harben Decl., Exh. G (Hearing Disposition pages 1-2 and Hearing Record Sheet).

facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Any duty to liberally construe a *pro se* complaint is not the equivalent of a duty to re-write it for him. 3 Moore's Federal Practice, § 12.34[4][a], pg. 12-60 and 12-72 (1997). However, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." DeJesus v. Sears, 87 F.3d 65, 70 (2d. Cir. 1996). "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Iqbal at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" need not be accepted as true. Id. Accordingly, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent" dismissal. Sylla v. NYC, 2005 U.S. Dist. LEXIS 31817, *4 (E.D.N.Y. Dec. 8, 2005).

## II. PLAINTIFF HAS FAILED TO STATE A CLAIM

### A. HECK V. HUMPHREY BARS PLAINTIFF'S § 1983 CLAIM: THE OCTOBER 13, 2009 DECISION WAS NOT OVERTURNED

The basis of plaintiff's claim is that on October 13, 2009, he was found guilty of violating DOCCS' Disciplinary Rules 113.30, 107.21 and 180.11 and, as a result, plaintiff was sentenced to 36 months in the Special Housing Unit and received 72 months recommended loss of "good time." Plaintiff disagrees with this decision and the penalty imposed. He is seeking damages and injunctive relief. This lawsuit seeks expungement of the October 13 disciplinary decision, including a release from SHU and return of good-time credits (Complaint at ¶ 17(g)) as well as nullification of the DOCCS inmate standards the discipline imposed was based on. As plaintiff has not had the underlying disciplinary decision reversed or expunged, his claims here are barred by Heck v. Humphrey, 512 U.S. 477, 489 (1994) (requirement that discipline be reversed does not just "engraft an exhaustion requirement upon § 1983, but rather den[ies] the existence of a cause of action" absent reversal). See also Edwards v. Balisok, 520 U.S. 641 (1997) (applying Heck to

prison disciplinary proceeding). Accordingly, plaintiff's claims must be dismissed.

### B. FILING BOGUS U.C.C. LIENS IS NOT A PROTECTED FORM OF COMMUNICATION AND DOES NOT CONCERN ACCESS TO COURTS

"Prisoners have a First Amendment right of meaningful access to the courts that requires state prisons 'to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" Collins v. Goord, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008) (quoting Bounds v. Smith, 430 U.S. 817, 825 (1977)). "In order to establish a constitutional violation based on a denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in an actual injury to the plaintiff." Id. at 563 (citing Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003)). "The actual injury requirement ensures that courts provide relief to claimants only when they have suffered or will imminently suffer actual harm and prevents courts from undertaking tasks assigned to the other political branches." Id. (citation omitted).

"To state a claim for denial of access to the courts . . . a plaintiff must allege that the defendant 'took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim.'" Davis at 351 (quotation omitted). "[T]he plaintiff must demonstrate that the defendant's conduct frustrated the plaintiff's efforts to pursue a nonfrivolous claim." Collins at 563. "The Supreme Court has made clear that a plaintiff seeking to establish a denial of access to the courts claim must 'identify a 'non-frivolous,' 'arguable' underlying claim.'" Id. at 576-77 (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)). Moreover, a prison regulation impinging on inmates' purported constitutional rights "is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987).

Plaintiff has failed to state a claim for violation of his right of access to courts or other First Amendment claim with respect to his U.C.C. materials. Plaintiff fails to allege that

4

defendants had any malicious intent in confiscating plaintiff's U.C.C. materials, as possession of such documents violated prison regulations. Plaintiff also fails to allege actual injury because he has not plausibly alleged that the confiscation of these U.C.C. papers prevented him from filing a complaint or obtaining relief on a case related to an appeal of his criminal conviction, a petition for habeas corpus, or a § 1983 claim, or any other *nonfrivolous* claim. Furthermore, the confiscation of plaintiff's U.C.C. materials was clearly reasonably related to a legitimate penological interest, as the filing of unauthorized liens through the use of U.C.C. forms implicates a violation of law and thus is reasonably related to the operation of a prison. See also Crusco, *Combatting Inmates' Use of Bogus UCC-1 Lien Notices*, N.Y. LAW JOURNAL, Apr. 26, 2011, at 5.

Finally, plaintiff's complaint alleges that the DOCCS inmate standards complained of "suppress communication with public officials." Harben Decl., Exh. A (Complaint) at p. 6. It is patently ridiculous to claim that the harassment of public officials through attempts to file bogus U.C.C. liens on them constitutes a protected form of "communication." Just as sending death threats is not a protected form of "communication," filing false U.C.C. liens is, in fact, a crime under state and federal law. See, e.g., United States v. Williamson, 418 F.3d 863 (8th Cir. 2005) (affirming the conviction of two defendants for filing false UCC financing statements against a judge and two prosecutors); U.S. v. Orrego, 2004 WL 1447954 (E.D.N.Y. June 22, 2004) (filing of false U.C.C. lien amounts to mail fraud under 18 U.S.C. § 1341); N.Y. Penal Law 175.35 (filing a false U.C.C. lien is a Class E felony). Moreover, as plaintiff alleges that DOCCS suppressed his ability to "communicate" by preventing him from filing further U.C.C. liens, plaintiff has admitted that he possessed U.C.C. materials with the intent to file them, not as some sort of academic or intellectual exercise. As none of these criminal statutes have been found unconstitutional when applied to false U.C.C. liens, plaintiff's claims of restricted court access or

5

ability to "communicate" with public officials must be rejected.

### C.     <u>**PLAINTIFF RECEIVED ALL THE DUE PROCESS HE WAS ENTITLED**</u>

Even if the Court were to find that plaintiff's due process claims are not barred, plaintiff fails to state a claim for relief. Plaintiff received all the process he was due, and thus fails to state a claim for violation of his due process rights.[7]

Under <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), "an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." <u>Sira v. Morton</u>, 380 F.3d 57, 69 (2d Cir. 2004) (<u>citing</u> <u>Wolff</u>, 418 U.S. at 563-67). A finding against an inmate in a prison disciplinary hearing must be supported by "some evidence in the record." <u>Superintendent v. Hill</u>, 472 U.S. 445, 454 (1985). The "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." <u>Id.</u> at 455-56. Prisoners have a qualified right to call witnesses and submit documentary evidence in their defense when doing so would not be "unduly hazardous to institutional safety or correctional goals." <u>Wolff</u>, 418 U.S. at 566. An accused inmate is entitled to "a fair and impartial hearing officer." <u>Sira</u>, 380 F.3d at 69 (<u>citing</u> <u>Wolff</u>, 418 U.S. at 563-67). However:

> the degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally. Because of the special characteristics of the prison environment, it is permissible for the impartiality of such officials to be encumbered by various conflicts of interest that, in other contexts, would be

---

7 For purposes of the instant motion, defendants accept that plaintiff's due process claim may not be barred by <u>Sandin v. Connor</u>, 515 U.S. 472 (1995) due to the length of plaintiff's time in SHU, but reserve their right to raise <u>Sandin</u> should plaintiff's due process claim survive this motion.

6

adjudged of sufficient magnitude to violate due process. The mere assertion that the hearing officer was less than a perfectly neutral arbiter, and that the inmate was thus denied a fair chance to prevail at the disciplinary hearing will not suffice to constitute the deprivation of due process. Likewise, a plaintiff-inmate armed with nothing more than conclusory allegations of bias and prejudgment should not be able to [prevail].

Johnson v. Goord, 487 F. Supp. 2d 377, 401 (S.D.N.Y. 2007) (citation omitted).

Plaintiff received all of the procedural due process protections set forth in Wolff, including notice of his hearing, the opportunity to present witnesses and evidence and to defend against the charges against him. See Harben Decl., Exhs. C and G. In fact, plaintiff does not contest the procedural aspects of his disciplinary hearing, but rather, the constitutionality of the disciplinary rules he was found guilty under. Defendant Drown was a fair and impartial hearing officer, permitting plaintiff to call witnesses and submit documentary evidence, as well as explaining the hearing process and prison regulations to plaintiff. Id. at Exh. C. Finally, plaintiff received a written disposition of defendant Drown's findings setting forth the evidence relied on and the reasons for the disciplinary actions taken. Id. at Exh. G. He relied upon the misbehavior report, the confiscated documents, and the testimony of plaintiff and corrections staff. Id. Plaintiff does not argue that there was not at least "some evidence" demonstrating his guilt. Plaintiff's claim that defendant Drown made an off the record comment about plaintiff being a sex offender is irrelevant as plaintiff objectively received all the process he was due. See Richardson v. DOCS, 2011 WL 4091491 (S.D.N.Y. Sept. 13, 2011) (dismissing due process claim in inmate U.C.C. case). Any other inferences that the hearing was "unfair" are conclusory and must be rejected. Plaintiff's due process claims are meritless, fail to state a claim, and should be dismissed.

### D. DOCCS' U.C.C. REGULATIONS ARE VALID

Plaintiff's claims that DOCCS' policies regarding U.C.C. materials are constitutionally invalid must fail because they are reasonably related to legitimate penological interests. Turner at

89. Here, preventing the filing of criminal U.C.C. liens is clearly a legitimate interest and courts that have address this issue agree. For example, the Third Circuit rejected challenges to rules, similar to the DOCCS' standards involved here, which restricted inmates' possession and use of U.C.C. materials. See Monroe v. Beard, 536 F.3d 198, 207-9 (3d Cir. 2008); Edmonds v. Sobina, 296 Fed. Appx. 214, 217-8 (3d Cir. 2008). And earlier this year, a similar challenge to restrictions on the possession of U.C.C. materials within DOCCS was rejected in the Northern District of New York (see Neree v. O'Hara, 2011 WL 3841551 (N.D.N.Y. July 20, 2011)) as have such challenges in New York state court. See, e.g., Harben Decl., Exh. I (Decision in Hopkins v. Fischer, 2009-5583 (Onondaga Co.)). There is simply no legitimate purpose for an inmate to have or use U.C.C. materials because they are not allowed to handle business matters while incarcerated. See Jordan v. Garvin, 2004 WL 302361, at **3-4 (S.D.N.Y. Feb. 17, 2004) (upholding DOCCS' rule 103.20 prohibiting inmates from conducting business affairs).

### E. FALSE MISBEHAVIOR REPORT

To the extent plaintiff's complaint can be read as stating a claim regarding the receipt of a false misbehavior report, such a claim must be rejected. Inmates have no guaranteed immunity from being falsely accused of conduct that may result in the deprivation of a protected liberty interest. Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986), cert. den'd, 485 U.S. 982 (1988); Boddie v. Schneider, 105 F.3d 857, 862 (2d Cir. 1997). See also Richardson, 2011 WL 4091491, at **4-5 (dismissing claim for false misbehavior report in U.C.C. lien case).

### F. PLAINTIFF HAS FAILED TO STATE A CONSPIRACY CLAIM

"To state a conspiracy claim under [] § 1985, plaintiff must allege (1) some racial or other class-based discriminatory animus underlying the defendants' actions, and (2) that the conspiracy was aimed at interfering with the plaintiff's protected rights." See Porter v. Selsky, 287 F. Supp.

8

2d 180, 187 (W.D.N.Y. 2003), aff'd, 421 F.2d 141 (2d Cir. 2005). A conspiracy claim pursuant to § 1985 or § 1983 must contain more than mere conclusory allegations. The Second Circuit has not hesitated to dismiss conspiracy claims grounded in conclusory notions such as here. See, e.g., Ciambrello v. Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002). A plaintiff must allege facts creating an inference of a meeting of the minds of the alleged conspirators. See Romer v. Morgenthau, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000). Vague allegations of a conspiracy without pleading any overt acts or providing a basis in fact are insufficient. Polur v. Raffe, 912 F.2d 52, 56 (2d Cir. 1990), cert. den'd, 499 U.S. 937 (1991). Here, if a claim of conspiracy can be inferred from plaintiff's allegations, for the above reasons, it must be rejected as a matter of law.

## III. QUALIFIED IMMUNITY

Assuming for argument's sake that plaintiff has sufficiently stated a cause of action against the defendants, they are nevertheless entitled to qualified immunity. The doctrine of qualified immunity provides "'that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known.'" Davis v. Rhoomes, 2009 U.S. Dist. LEXIS 12891, * 28 (S.D.N.Y. 2009) (quotation omitted). A two-part test exists to determine whether a defendant is entitled to qualified immunity. Pearson v. Callahan, 129 S. Ct. 808, 815-18 (2009). Initially, the court must ascertain whether the "plaintiff's allegations, if true, establish a constitutional violation." Id. at 815-816. Second, the Court must determine "if the right was "clearly established" at the time it was allegedly infringed." Id. Whether a right is "clearly established" depends on "'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Id. Even a mistake or oversight does not deprive an officer of qualified immunity. See Hunter v. Bryant, 502 U.S. 224, 228-29 (1991) (qualified immunity allows "mistaken judgments").

9

Because DOCCS' rules regarding U.C.C. materials have been previously upheld, as have other similar regulations elsewhere, no person would reasonably believe that they were violating anyone's rights by enforcing or implementing such rules. Accordingly, qualified immunity applies to all defendants. See Neree at **22-3 (qualified immunity in U.C.C. lien case).

## IV. LACK OF PERSONAL INVOLVEMENT

Personal involvement is a prerequisite to § 1983 liability. See Iqbal at 1948-49. Courts have found a lack of personal involvement of supervisors such as defendants Fischer, Leclaire, Bezio, Rock, Lee and Bellamy who simply promulgated rules or reviewed disciplinary sanctions in cases involving inmates possessing U.C.C. materials and should do so here as well. Richardson v. DOCS at *3-4; Richardson v. Fischer, 2011 WL 710617, at * 3, n. 51 (S.D.N.Y. Feb. 28, 2011).

## V. ELEVENTH AMENDMENT IMMUNITY

Money damages may not be sought against the state, or against any agency or department of the state, without a waiver of sovereign immunity. See Florida v. Treasure, 458 U.S. 670, 684 (1982). Thus any official capacity claims here seeking damages are barred. Also, the claim against unserved defendant "Office of Counsel" is clearly a claim against a state department and is barred by the 11th Amendment and § 1983, which only allows claims against persons.

## VI. PLRA EXHAUSTION

This action was filed on April 18, 2011. Harben Decl., Exh. A. Plaintiff did not fully exhaust his administrative remedies until on or about June 8, 2011 when he received a decision from the DOCCS Central Office Review Committee. Id. at Exh. J. In order to satisfy the requirements of the P.L.R.A., an inmate must exhaust his administrative remedies before he initiates legal action. Neal v. Goord, 267 F.3d 116, 121 (2d Cir. 2001) ("exhausting administrative remedies after a complaint is filed will not save a case from dismissal")). As this was not done here, plaintiff's claims should be dismissed for failure to exhaust his administrative remedies.

10

## **CONCLUSION**

For all the foregoing reasons, defendants respectfully request that the Court dismiss plaintiff's Complaint in its entirety.

| | |
|---|---|
| Dated: New York, New York<br>      November 30, 2010 | Respectfully submitted,<br><br>ERIC T. SCHNEIDERMAN<br>Attorney General of the<br> State of New York<br>Attorney for Defendants<br><br>By:_____/S/_____<br>JEB HARBEN<br>Assistant Attorney General<br>120 Broadway - 24th Floor<br>New York, New York 10271<br>(212) 416-6185 |

JEB HARBEN
Assistant Attorney General
<u>of Counsel</u>