UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ X

LEROY PEOPLES,

               **Plaintiff,**

    **- against -**

BRIAN FISCHER, LUCIEN LECLAIRE,
JR., DOCS OFFICE OF COUNSEL,
WILLIAM LEE, PETER A. CRUSCO,
ERIC C. ROSENBAUM, RICHARD A.
BROWN, LT. L. WARD, SGT.,
O'CONNOR, C.O. MALARE, C.O.
DROWN, NORMAN BEZIO, D. ROCK,
LT. WARD, and KAREN BELLAMY,

          **Defendants.**

------------------------------------------------------ X

**OPINION AND ORDER**

**11 Civ. 2694 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Leroy Peoples, proceeding pro se, brings this action against, *inter alia*: Brian Fischer, Commissioner of the New York State Department of Correctional Services ("DOCS"); Lucien J. Leclaire Jr., Deputy Commissioner of DOCS; Office of Counsel for DOCS; William Lee, Superintendent of the Green Haven Correctional Facility ("Green Haven"); Richard Ward, a Green Haven Lieutenant; Sergeant K. O'Connor; Green Haven Correction Officers ("C.O.s")

1

Curtis Drown and Malare, Norman Bezio, Director of the Special Housing Unit

("SHU"); David Rock, Superintendent of the Upstate Correctional Facility

("Upstate"); and Karen Bellamy, Director of the Inmate Grievance Program

("IGP"), Central Office Review Committee ("CORC") (collectively, the

"defendants").[1]

Peoples seeks compensatory and punitive damages and injunctive

relief pursuant to section 1983 of Title 42 of the United States Code ("section

1983").  Peoples alleges that defendants deprived him of rights and privileges

secured by the First, Fourth, Sixth, Eighth, and Fourteenth Amendments to the

United States Constitution.  Specifically, plaintiff brings the following claims:  a

Fourth Amendment claim resulting from a pat frisk and subsequent search of his

prison cell; an Eighth Amendment cruel and unusual punishment claim resulting

from his three-year sentence to SHU confinement; an Eighth Amendment claim

regarding his altercation with a fellow inmate; a Fourteenth Amendment due

process claim arising in connection with his disciplinary hearing; and a right of

---

[1]        Former defendants Peter A. Crusco,  Eric C. Rosenbanm and Richard
A. Brown were previously dismissed in this Court's December 1, 2011 Opinion
and Order.  Additionally, a review of the docket sheet indicates that the Complaint
("Compl." or "Complaint") was filed on April 18, 2011.  Rule 4(m) of the Federal
Rules of Civil Procedure provides that if a defendant is not served within 120 days
after a complaint is filed, the claims may be dismissed without prejudice.  Because
Malare has not been served to date, the claims against him are dismissed without
prejudice pursuant to Rule 4(m).

access to the courts claim under the First and Sixth Amendments.

Defendants now move to dismiss Peoples' remaining claims pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) on the following grounds: (1) failure to state a claim; (2) failure to exhaust administrative remedies; (3) lack of personal involvement; (4) Eleventh Amendment immunity; and (5) qualified immunity. For the reasons discussed herein, defendants' motion is granted in part and denied in part.

## II.    BACKGROUND[2]

Peoples is currently an inmate at Upstate and was previously an inmate at Green Haven.[3] On October 5, 2009, while Peoples was at Green Haven, Sergeant O'Connor and C.O. Malare approached him while he was at his industry work program and performed a pat and frisk search.[4] Peoples was then

---

[2]    These facts are drawn from Peoples' Complaint and the exhibits annexed thereto. In addition, because Peoples is proceeding pro se, the factual allegations made in his Opposition to Motion to Dismiss dated January 5, 2012 ("Pl. Opp."), together with the exhibits annexed thereto, will be treated as part of the Complaint to the extent they are consistent with the Complaint. *See Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering pro se plaintiff's affidavit in opposition to defendant's motion to dismiss in reviewing district court's dismissal of claim).

[3]    *See* Compl., I(A) and II(A).

[4]    *See id*. III(D)  ¶ 2.

escorted to his cell, F-Block 150, where O'Connor and Malare searched his cell.[5]
Peoples alleges that certain papers were seized and that his personal mail, legal
mail, family photos, clothing and other miscellaneous property was scattered all
over his cell.[6]

      Peoples was immediately taken to the SHU.[7]  The next day, October 6,
2009, Peoples was served with the Inmate Misbehavior Report (the "Report"),
which alleged that he violated rules 107.21[8] and 113.30[9] of the Standards of Inmate
Behavior rule book.[10]  The Report further states that on October 5, 2009, prior to
the search, C.O. O'Connor was given a packet of papers sent from the Queens

---

[5]     *See id.*

[6]     *See id.* ¶¶ 1, 11.

[7]     *See id.* ¶ 2.

[8]     *See id.*  Rule 107.21 states that "[a]n inmate shall not file or record
any document or instrument of any description which purports to create a lien or
record a security interest of any kind against the person or property of any officer
or employee of the Department, the State of New York, or the United States, absent
prior written authorization from the superintendent or a court order authorizing
such filing."  7/24/09 Inmate Rule Book Additions, Ex. A to Compl., at 6.

[9]     Rule 113.30 provides that "[a]n inmate shall not possess any Uniform
Commercial Code (UCC) Article 9 Form, including but not limited to any
financing statement, . . . correction statement. . . , or information request . . .,
whether printed, copied, typed or hand written, or any document concerning a
scheme involving an inmate's 'strawman.'" *Id.*

[10]     *See* Report, Ex. A to Compl., at 1.

County District Attorneys Office.[11]  The cover letter with the materials identified the papers as "U.C.C. [and] other financial claims that are bogus [and] without legal basis."[12]  The Report states that the subsequent search of Peoples' cell "produced approx[imately] 148 documents which all also appear to violate the above referenced charges."[13]

On October 13, 2009, a misbehavior report hearing was conducted.[14] Peoples alleges that he was walked through the "normal formalities of a hearing."[15] At the end of the hearing, Peoples was sentenced to three years confinement in the SHU, a three-year loss of phone, package and commissary privileges, and seventy-two months recommended loss of good time credit.[16]

Peoples appealed the hearing disposition to SHU Director Bezio who denied his appeal.[17]  In November of 2009, while still confined in the SHU and

---

[11]     *See id.*

[12]     *Id.*

[13]     *Id.*

[14]     *See* Compl., III(D) ¶ 3.

[15]     *Id.*

[16]     *See id.  See also* Superintendent Hearing Disposition Report, Ex. A to Compl., at 2.  At the time of the hearing, Peoples had not yet accrued seventy-two months of good time credit.  *See* Compl., III(D) ¶ 3.

[17]     *See id.* ¶ 4.

under Superintendent Rock's watch, Peoples was involved in a fist fight with fellow inmate Larry Allen and lost a tooth.[18]  In April 2010, Peoples drafted an Article 78 motion addressing some of the issues raised in the instant Complaint. Upon his return from Court, however, the Article 78 motion was confiscated by corrections officers acting under Rock's orders.[19]

On March 7, 2011, Peoples filed a grievance in connection with alleged violations of his constitutional rights.[20]  The grievance referenced violations of various Constitutional amendments including the First, Sixth, and Fourteenth Amendments.[21]  Peoples complained about the addition of rules 107.21 and 113.30 of the Standards of Inmate Behavior rule book and complained that he was affected by these rules by being placed in the SHU for three years along with three years of lost phone, package and commissary privileges.[22]

On March 9, 2011, Peoples received a response from the Inmate Grievance Review Committee ("IGRC") and simultaneously appealed to the

---

[18]     *Id.* ¶¶ 8, 9.

[19]     *See id.* ¶ 17(g).

[20]     *See* 3/7/11 Inmate Grievance, Ex. A to Compl., at 4.

[21]     *See id.*

[22]     *See id.*

Superintendent of DOCS.[23]  On March 15, 2011, Superintendent Rock responded to Peoples' appeal.[24]  Two days later, on March 17, 2011, Peoples appealed to the CORC.[25]  On April 18, 2011, Peoples commenced the instant action.  On June 8, 2011, he received a response from the CORC.[26]

Peoples generally suffers from "stress, fear . . . depression and other psychological impacts" which are side effects from his confinement in the SHU, which he has described as "psychological torture."[27]  Peoples alleges that Superintendent Rock was personally involved by continuously and unlawfully confining Peoples in the SHU, upholding the CORC's determination of Peoples' appeal, and being in a supervisory role at the time Peoples was involved in a fist fight with Allen.[28]  Similarly, Peoples alleges that Bellamy, the Director of the CORC, was personally involved by virtue of upholding the rules that Peoples challenged, suppressing Peoples' "communication, forbidding access to the court

---

[23]    *See* Compl., III(D) ¶ 8.  *See also* 3/9/11 IGRC Response, Ex. A to Compl., at 5.

[24]    *See* 3/15/11 Response from Inmate Grievance Program Superintendent, Ex. A to Compl., at 6.

[25]    *See id.*

[26]    *See* CORC's 6/8/11 CORC Response, Ex. B to Pl. Opp., at 1.

[27]    Compl., III(D) ¶¶ 7, 9.

[28]    *See id.* ¶¶ 1, 8.

7

and law books, [and] authorizing the seizure" of Peoples and his papers.[29]  SHU Director Bezio was alleged to be personally involved when he "affirmed and confirmed the disposition of unlawful confinement and revoked privileges" in violation of the aforementioned constitutional amendments.[30]

Peoples alleges that Lieutenant Ward was personally involved because he authorized the seizure of Peoples and his papers as well as his unlawful confinement in the SHU.[31]  C.O. Drown's alleged personal involvement arises from sentencing Peoples to three years in the SHU with loss of privileges and loss of good time credit.[32]

Peoples alleges that Fischer was personally involved because he facilitated the enactment of the rules that Peoples was accused of violating.[33] Peoples also claims that after Fischer learned of the violations of Peoples' constitutional rights, he failed to remedy the situation.[34]  Fischer allegedly created the "policy procedure, or custom which violated the constitutional rights and

---

[29]    *Id.*

[30]    *Id.* ¶ 4.

[31]    *See id.* ¶¶ 1, 10.

[32]    *See id.* ¶ 1.

[33]    *See id.* ¶ 14.

[34]    *See id.*

allowed [it] to continue."[35]  Similarly, Deputy Commissioner Leclaire's involvement was based on the preparation of the July 24, 2009 memorandum advising Superintendents Lee and Rock of the addition of rules 107.21 and 113.30.[36]

Superintendent Lee's only involvement seems to be that he received the package of materials from the District Attorneys's office and sent them to C.O. O'Connor, which precipitated the search of Peoples' cell.[37]  C.O. O'Connor's personal involvement in this action was limited to the search he performed of Peoples' cell and the subsequent preparation of the Report.[38]

## III.   LEGAL STANDARDS

### A.   Motion to Dismiss Under Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] all factual allegations in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor."[39]  The court

---

[35]     *Id.*

[36]     *See id.* ¶ 5.  *See also* 7/24/09 Inmate Rule Book Additions, Ex. A to Compl., at 7.

[37]     *See* Compl., III(D) ¶ 1.

[38]     *See id.* ¶¶ 1, 2.

[39]     *Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 128 (2d Cir. 2011) (quotation marks and citation omitted).

then evaluates the sufficiency of the complaint under the "two-pronged approach" suggested by the Supreme Court in *Ashcroft v. Iqbal*.[40]  *First*, a court "'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"[41]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.[42]  *Second*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[43]  To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility."[44]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[45]  Plausibility "is not akin to a probability

---

[40]     556 U.S. 662, 679 (2009).

[41]     *Hayden v. Patterson*, 594 F.3d 150, 161 (quoting *Iqbal*, 556 U.S. at 664).  *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

[42]     *Iqbal*, 556 U.S. at 663 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[43]     *Id.* at 670.  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

[44]     *Twombly*, 550 U.S. at 564.

[45]     *Iqbal*, 556 U.S. at 678 (quotation marks and citation omitted).

requirement," rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[46]

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[47]  However, the court may also consider a document that is not incorporated by reference, "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."[48]  A court may also take judicial notice of "the status of other lawsuits in other courts and the substance of papers filed in those actions."[49]

Where the plaintiff is proceeding pro se, his pleadings must be considered under a more lenient standard than that accorded to "formal pleadings

---

[46]     *Id.* (quotation marks and citation omitted).

[47]     *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[48]      *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).  *Accord Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006).

[49]     *Schenk v. Citibank/Citigroup/Citicorp*, No. 10 Civ. 5056, 2010 WL 5094360, at *2 (S.D.N.Y. Dec. 9, 2010) (citing *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 205 n.4 (2d Cir. 2003)).

11

drafted by lawyers,"[50] and must be "interpret[ed] . . . to raise the strongest

arguments they suggest."[51]  These same principles apply to briefs and opposition

papers submitted by pro se litigants.[52]  Notwithstanding liberal treatment of their

pleadings, pro se status does not relieve a plaintiff from satisfying the pleading

requirements set forth above.[53]

### B.    Leave to Amend the Complaint

Under Federal Rule of Civil Procedure 15(a), leave to amend a

complaint should be "freely given when justice so requires."[54]  A court should not

dismiss a pro se complaint for failure to state a claim  "without granting leave to

amend at least once when a liberal reading of the complaint gives any indication

that a valid claim might be stated."[55]  However, "it is well established that leave to

---

[50]    *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). *Accord Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("Because [plaintiff] is a pro se litigant, we read his supporting papers liberally.").

[51]    *Burgos*, 14 F.3d at 790.

[52]    *See Ortiz v. McBride*, 323 F.3d 191, 194 (2d Cir. 2003); *Burgos*, 14 F.3d at 790.

[53]    *See Praseuth v. Werbe*, 99 F.3d 402 (2d Cir. 1995) ("Failure to comply with Rule 8(a) may result in dismissal of a complaint, even if the pleader is proceeding pro se.") (citing *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972)).

[54]    Fed. R. Civ. P. 15(a).

[55]    *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quotation marks and citations omitted).

amend a complaint need not be granted when amendment would be futile."[56]

## IV.    APPLICABLE LAW

### A.    Section 1983

Section 1983 states, in relevant part, that:

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .[57]

Section 1983 "does not create a federal right or benefit;  it simply provides a mechanism for enforcing a right or benefit established elsewhere."[58] "The purpose of [section]1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide

---

[56]    *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).

[57]    42 U.S.C. § 1983.

[58]    *Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). *Accord  Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("'[O]ne cannot go into court and claim a 'violation of § 1983' – for § 1983 by itself does not protect anyone against anything.'") (quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979)).

relief to victims if such deterrence fails."[59]

### 1.    Personal Involvement

In 1995, the Second Circuit held that the personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicated that unconstitutional acts were occurring.[60]

However, in 2009, the Supreme Court held that  "[b]ecause vicarious liability is inapplicable to . . . [Section] 1983 suits, a plaintiff must [prove] that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[61]  "Accordingly only the first and third *Colon*

---

[59]    *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

[60]    *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

[61]    *Iqbal*, 556 U.S. at 677 (citations omitted) (explicitly rejecting the argument that "a supervisor's mere knowledge of his subordinate's discriminatory

factors have survived the Supreme Court's decision in *Iqbal*."[62]

## B.     Exhaustion of Remedies

The Prison Litigation Reform Act ("PLRA"), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted."[63]  This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[64]

The requirement to exhaust avaliable remedies, "refer[s] to the procedural means, not the particular relief ordered," since "one 'exhausts' processes, not forms of relief."[65]  While exhaustion is a prerequisite to suit, the "PLRA exhaustion requirement is not jurisdictional."[66]

---

purpose amounts to the supervisor's violating the Constitution").

[62]     *Spear v. Hugles*, No. 08 Civ. 4026, 2009 WL 2176725, at *2 (S.D.N.Y. July 20, 2009).

[63]     42 U.S.C. § 1997e(a).

[64]     *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

[65]     *Booth v. Churner*, 532 U.S. 731, 739 (2001).

[66]     *Woodford v. Ngo*, 548 U.S. 81, 101 (2006).

DOCS has a well established inmate grievance resolution process. To exhaust their administrative remedies, inmates must complete all three steps. Inmates must: "(1) file a grievance with the [Inmate Grievance Resolution Committee ("IGRC")] . . . ; (2) appeal to the superintendent within four working days of receiving the IGRC's written response. . . ; and (3) appeal to the CORC in Albany, New York within four working days of receipt of the superintendent's written response."[67]  The CORC then has thirty days to review the appeal and render a decision on the grievance.[68]

Additionally, the Second Circuit has held that "the grievant need not lay out the facts, articulate legal theories, or demand particular relief.  All the grievance need do is object intelligibly to some asserted shortcoming."[69]  As noted by the Second Circuit, "[u]ncounselled inmates navigating prison administrative procedures without assistance cannot be expected to satisfy a standard more stringent than that of notice pleading."[70]  The "PLRA's exhaustion requirement . . . require[s] that prison officials be 'afford[ed] . . . time and opportunity to address

---

[67]     *Abney v. McGinnis*, 380 F.3d 663, 668 (2d Cir. 2004).

[68]     *See* 7 N.Y.C.C.R. § 701.5.

[69]     *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004).

[70]     *Id*.

complaints internally.'"[71]   "In order to exhaust . . . inmates must provide enough

information about the conduct of which they complain to allow prison officials to

take appropriate responsive measures."[72]

      An appeal is not exhausted until an inmate appeals to the CORC and

receives a final decision regarding his grievance.[73]  The Second Circuit, however,

has recognized that in some situations a prisoner who has failed to fully exhaust

administrative remedies may survive a motion to dismiss.  In *Hemphill v. New

York,*[74] the Second Circuit announced a three-part inquiry "appropriate in cases

where a prisoner plaintiff plausibly seeks to counter defendants' contention that the

prisoner has failed to exhaust available administrative remedies as required by the

PLRA."  In examining a complaint the court should determine:

> [*First,*] whether administrative remedies were in fact
> 'available' to the prisoner. [*Second* ], . . . whether the
> defendants' own actions inhibiting the inmate's exhaustion
> of remedies may estop one or more of the defendants from
> raising the plaintiff's failure to exhaust as a defense.
> [*Third*], [i]f the court finds that administrative remedies
> were available to the plaintiff, and that the defendants are

---

[71]    *Id*. (quoting *Porter*, 534 U.S. at 524-25).

[72]    *Johnson*, 380 F.3d at 697.

[73]    *See Partee v. Grood*, No. 06 Civ. 15528, 2007 WL 2164529, at *3 (S.D.N.Y. July 25, 2007), *aff'd sub nom*, *Partee v. Wright*, 335 Fed. App'x 85 (2d Cir. 2009).

[74]    380 F.3d 680, 686-91 (2d Cir. 2004).

not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements.[75]

As noted by the Second Circuit in *Hemphill*, where an inmate does not receive a response to a grievance, there may be a question as to whether further administrative remedies are available.[76] As noted by the Supreme Court "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not

---

[75]    *Id*.

[76]    *See id*. at 690, n.6 (citing *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002) ("agree[ing with other circuits] that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable"); *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002) (stating that prison's failure timely to respond renders administrative remedies unavailable); *Foulk v. Charrier,* 262 F.3d 687, 698 (8th Cir. 2001) (holding that defendants failed to prove non-exhaustion where they presented no evidence to refute plaintiff's contention that he could not pursue grievance further after warden did not respond to his grievance); *Underwood v. Wilson,* 151 F.3d 292, 295 (5th Cir. 1998) (holding that "available administrative remedies are exhausted when the time limits for the prison's response set forth in the prison Grievance Procedures have expired")).  *See also Whitington v. Ortiz*, 472 F.3d 804, 807-08 (10th Cir. 2007) ("[A] prisoner cannot be required to wait indefinitely for a response to his final grievance before he may seek judicial review. That is, when prison officials fail to timely respond to a grievance, the prisoner has exhausted 'available' administrative remedies under the PLRA."); *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004); *Sergent v. Norris*, 330 F.3d 1084, 1085 (8th Cir. 2003) (recognizing that officials' failure timely to respond to grievance could be basis for prisoner to show he exhausted available administrative remedies);.

have such an opportunity unless the grievant complies with the system's critical procedural rules."[77]  When a prisoner "complie[s] with all of the administrative requirements and ma[kes] a good-faith effort to exhaust, he should not be denied the opportunity to pursue his grievance in federal court simply because the final administrative decision maker has . . . neglected . . . to issue a final administrative determination."[78]

### C.    Favorable Termination Rule

The favorable termination rule provides that a section 1983 plaintiff who brings a claim that would implicate the validity of his conviction or sentence, must first prove that the conviction or sentence was vacated or reversed.[79] However, this rule does not bar prisoners from bringing section 1983 claims with respect to the conditions of their confinement that do not implicate the validity of their underlying sentence.  When a section 1983 claim is made, the court must:

> consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if

---

[77]    *Woodford*, 548 U.S. at 95.

[78]    *Torres v. Carry*, 672 F. Supp. 2d 338, 345 (S.D.N.Y. 2009).

[79]    *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed.[80]

A section 1983 claim implicating the deprivation of good-time credits can be brought only if the good-time credit sanction has been invalidated.[81] However, in this Circuit, a prisoner who receives mixed sanctions affecting both the duration and conditions of confinement at a prison disciplinary hearing can proceed to challenge those sanctions, as long as the inmate agrees to waive any challenge to the sanction affecting the length of his confinement.[82]

### D.   Eleventh Amendment Immunity

The Eleventh Amendment immunizes state agencies and officials acting in their official capacity from suit under section 1983.[83]  Generally, a suit may "not be maintained directly against the State itself, or against an agency or department of the State, unless the State has waived its sovereign immunity."[84]

---

[80]   *Id*. at 487.

[81]   *See Edward v. Balisock*, 520 U.S. 641, 645 (1997).

[82]   *See Peralta v. Vasquez*, 467 F.3d 98,104 (2d Cir. 2006).

[83]   *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office.  As such, it is no different from a suit against the State itself.").

[84]   *Florida Dep't of State v. Treasure Salvors, Inc*., 458 U.S. 670, 684 (1982).

20

"'[It] does not protect [an official] from personal liability if . . . sued in his 'individual' or 'personal' capacity.'"[85]

### E.     Qualified Immunity

Agency officials performing discretionary functions are generally granted qualified immunity and are immune from suit provided that "'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[86]  The Second Circuit has held that "[a] right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful."[87]

To prevail on a motion to dismiss claiming qualified immunity "[n]ot only must the facts supporting the defense appear on the face of the complaint, but as with all Rule 12(b)(6) motions . . . the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also

---

[85]     *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 605 (S.D.N.Y. 2009) (quoting *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988)).

[86]     *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004) (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)).

[87]     *Id.* (quotation marks and citations omitted).

21

those that defeat the immunity defense."[88]

## F.    Access to the Courts

"[P]risoners have a constitutional right of access to the courts" that is "adequate, effective, and meaningful."[89]  To establish a constitutional violation based on denial of access to the courts, a plaintiff must show "actual injury."[90] "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense."[91]  *Bounds v. Smith* does not "guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims."[92]  Meaningful access requires that inmates be provided the tools they need "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."[93]  The "[i]mpairment of any *other* litigating capacity is simply one

---

[88]    *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (internal citations omitted).  *Accord Percinthe v. Julien*, No. 08 Civ. 893, 2008 WL 4489777, at *3 (S.D.N.Y. Oct. 4, 2008).

[89]    *Bounds v. Smith*, 430 U.S. 817, 821-22 (1977).

[90]    *Lewis v. Casey*, 518 U.S. 343, 349 (1996).

[91]    *Id*. at 351.

[92]    *Id*. at 355.

[93]    *Id*.

22

of the incidental (and perfectly constitutional) consequences of conviction and incarceration."[94]

## G.   Procedural Due Process

In order to maintain a due process claim with respect to a prisoner's disciplinary proceeding, "a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."[95]   A prisoner can only establish a due process claim in connection with prison disciplinary proceedings resulting in segregative confinement or loss of privileges by demonstrating that the sanctions "impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[96]   "The duration of SHU confinement is a relevant, but not the only, factor with respect to whether such confinement is 'atypical.'"[97]   "Generally, periods of confinement in SHU lasting fewer than 101 days have been found not to amount to atypical and significant hardship."[98]   The Second Circuit has held that

---

[94]   *Id.*

[95]   *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001).

[96]   *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

[97]   *Alicea v. Howell*, 387 F. Supp. 2d 227, 231 (W.D.N.Y. 2005) (citing *Ortiz v. McBride*, 380 F.3d 649, 654-55 (2d Cir. 2004)).

[98]   *Dawkins*, 646 F. Supp. 2d at 606.  *Accord Ortiz*, 380 F.3d at 655 (prison conditions such as "solitary confinement for twenty-three hours a day,

confinement in the SHU for a period of 305 days, without anything more, satisfies the *Sandin* standard of atypical and significant hardship.[99]

      With respect to process, "[f]or a prison disciplinary proceeding to provide due process there must be, among other things, 'some evidence' to support the sanction imposed."[100]  Additionally, "[a]n inmate subject to a disciplinary hearing is entitled to an impartial hearing officer."[101]

### H.   Fourth Amendment Right to Be Free from Unreasonable Search and Seizure

      "While persons imprisoned for crime enjoy many protections of the Constitution, it is also clear that imprisonment carries with it the circumscription or

---

provid[ing] one hour of exercise in the prison yard per day, and permitt[ing] two showers per week" for less than 101 days does not amount to atypical and significant hardship).

    [99]   *See Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) ("Confinement in normal SHU conditions for 305 days is in our judgment a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin.*").

    [100]   *Ortiz*, 380 F.3d at 655 (quoting *Gaston v. Coughlin*, 249 F.3d 156, 163 (2d Cir. 2001)).

    [101]   *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996) (citing *Wolff v. McDonnell*, 418 U.S. 539, 570-71 (1974)); *Patterson v. Coughlin*, 905 F.2d 564, 569-70 (2d Cir. 1990) ("[A]n impartial decisionmaker is one who, *inter alia,* does not prejudge the evidence and who cannot say . . . how he would assess evidence he has not yet seen.").

loss of many significant rights."[102]  "These constraints on inmates, and in some

cases the complete withdrawal of certain rights, are 'justified by the considerations

underlying our penal system.'"[103]  "The curtailment of certain rights is necessary,

as a practical matter, to accommodate a myriad of 'institutional needs and

objectives' of prison facilities . . . chief among which is internal security."[104]  In

fact, the Supreme Court has repeatedly "confirmed the importance of deference to

correctional officials and explained that a regulation impinging on an inmate's

constitutional rights must be upheld 'if it is reasonably related to legitimate

penological interests.'"[105]  "[T]he Fourth Amendment proscription against

unreasonable searches does not apply within the confines of the prison cell."[106]

## I.      Eighth Amendment Violations

"[P]rison officials have a duty . . . to protect prisoners from violence

at the hands of other prisoners."[107]  However, not every incident causing injury

---

[102]    *Hudson v. Palmer*, 468 U.S. 517, 524 (1984) (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)).

[103]    *Id*. (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)).

[104]    *Id*. (internal citations omitted).

[105]    *Florence v. Board of Chosen Freeholders of the County of Burlington*, 566 U.S. —, 132 S. Ct. 1510, 1515 (2012).

[106]    *Hudson*, 468 U.S. at 526.

[107]    *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

25

"translates into constitutional liability for prison officials responsible for the victim's safety."[108]  Thus, a plaintiff alleging a violation of the Eighth Amendment is required to establish two elements.  *First*, that he is incarcerated under conditions posing a substantial risk of serious harm.[109]  *Second*, that the prison officials had a sufficiently culpable state of mind, or at the very least that they were deliberately indifferent.[110]  The first element is objective while the second element is subjective.  The Supreme Court has held that to demonstrate deliberate indifference, an official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[111]

## V.    DISCUSSION

### A.    Access to the Courts

Peoples' claim that his right of access to the courts was violated is dismissed.  Peoples has failed to allege that he was denied tools needed to attack his sentence directly or collaterally, which is the right he is constitutionally

---

[108]    *Id*. at 834.

[109]    *See id*.

[110]    *See id*.

[111]    *Id*. at 837.

guaranteed.[112]  Peoples alleged that defendants actions violated his right to instigate a special court proceeding under the Uniform Commercial Code for commercial purposes.[113]  However, the right to institute such proceedings is not the type of meaningful access to the courts that is protected.[114]  As Peoples has failed to allege that he has been deprived of the right of meaningful access to the courts and that he suffered actual injury, this claim is dismissed.

### B.    Fourth Amendment Claims

Peoples' claims relating to alleged violations of his Fourth Amendment rights to be free from unreasonable searches and seizures are similarly dismissed.  Peoples has not pled factual allegations that allow this Court to find that the pat frisk search or the search of Peoples' cell were not reasonably related to legitimate penological interests.  As a result, Peoples' claims arising from the alleged violations of his Fourth Amendment rights are dismissed.

---

[112]    *See Lewis*, 518 U.S. at 355.

[113]    *See* Compl., III(D) ¶ 5.

[114]    *See Lewis*, 518 U.S. at 355 ("[i]mpairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration").

### C.    Fourteenth Amendment Claims

Defendants have argued that Peoples' due process claim is barred because of the favorable termination rule, which provides that a prisoner cannot bring a section 1983 claim if a judgment in his favor would imply the invalidity of his conviction or sentence, unless the "conviction or sentence has been reversed."[115]  This rule applies to Peoples' challenge to his loss of good time credit.[116]  Thus, Peoples' due process claim can only proceed if he agrees to waive any challenge to any sanction affecting the length of his confinement, including the loss of good time credit.[117]

Peoples has adequately pled a protected liberty interest,[118] and that he was deprived of his liberty as a result of insufficient process in that there is no evidence to support the sanction of three years in the SHU.  However, Peoples has not waived any challenge to the loss of his good time credit.  If he were to waive the challenge to the loss of good time credit, Peoples' due process claim could proceed as it would no longer implicate the length of his underlying criminal

---

[115]    *Heck*, 512 U.S. at 487.

[116]    *See Edward*, 520 U.S. at 645.

[117]    *See Peralta*, 467 F.3d at 104.

[118]    *See Colon*, 215 F.3d at 231 ("Confinement in normal SHU conditions for 305 days is in our judgment a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin*.").

28

conviction.  Accordingly, until Peoples waives his challenge to the loss of good time credit, his due process claim is dismissed.

### D.  Eighth Amendment Claims

Peoples' Eighth Amendment claim is dismissed to the extent it is based on his altercation with Larry Allen.  Peoples has not alleged any facts that would allow this Court to infer that the prison officials acted with deliberate indifference, in connection with this altercation.[119]

However, Peoples states a viable Eighth Amendment claim based on his three-year sentence in the SHU.  As previously discussed, three years in the SHU is an extraordinary amount of time.  Construing the allegations in Peoples' Complaint liberally, Peoples has adequately pled that he was incarcerated under conditions that pose a substantial risk of harm.  Additionally, Peoples' allegations that the defendants were deliberately indifferent is plausible given the length of his confinement in the SHU.  Accordingly, Peoples' Eighth Amendment claim in connection with his sentence of three years confinement in the SHU, together with the other loss of privileges, may proceed.

---

[119]    *See Farmer*, 511 U.S. at 834-37.  Additionally even if he had made these allegations, Peoples' claim in relation to his altercation with Allen would still be dismissed as he has not exhausted his administrative remedies in connection with this claim.

### E.    Exhaustion of Remedies

Defendants' argument that plaintiff has failed to exhaust his administrative remedies fails.[120]  Peoples complied with all of the DOCS's procedural rules, thereby giving DOCS a fair opportunity to consider his grievance.[121]  Peoples made his final appeal to the CORC on March 17, 2011.[122] Pursuant to New York State Regulations, the CORC had thirty days to respond.[123] The final denial of his appeal was issued on June 8, 2011.[124]  Had the CORC timely provided a response to Peoples' appeal, he would have received a response prior to filing the instant action.  Defendants do not contest this fact.  Peoples complied with the administrative requirements and made a good faith effort to exhaust.  The CORC's failure to timely respond does not bar his claim.[125]  Moreover, the CORC

---

[120]    To the extent defendants sought to dismiss the claims based upon lack of subject matter jurisdiction because they claim Peoples failed to exhaust his remedies, it should be noted that the PLRA is not a jurisdictional requirement.  *See Woodford*, 548 U.S. at 101.

[121]    *See id.* at 95.

[122]    *See* Appeal Statement, Ex. A to Compl., at 6.

[123]    *See* 7 N.Y.C.C.R. § 701.5.

[124]    *See* 6/8/11 CORC Response, Ex. B to Pl. Opp., at 1.

[125]    *Cf. Torres*, 672 F. Supp. 2d at 345.  It is unclear how long an inmate must wait after not receiving a response from the CORC before he can commence a section 1983 action.  However, when an inmate has complied with all administrative requirements and waited for the response period to expire, he has

has since denied his appeal.[126]  Thus, Peoples' claim relating to his three-year

confinement in the SHU is deemed to be fully exhausted.[127]

### F.      Personal Involvement

Peoples' surviving Eighth Amendment claim must be dismissed as to

Fischer, Leclaire, Lee, O'Connor and Bellamy as their personal involvement in

unlawfully confining him to the SHU has not been adequately alleged.  However,

Peoples' claim against Ward , Bezio and Rock, remains as he has pled that these

defendants were personally involved.[128]

### G.      Eleventh Amendment Immunity

Peoples' claims against the Office of Counsel for DOCS are dismissed

because that Office is an arm of the State of New York, which has not waived its

---

exhausted all the administrative remedies that are avaliable to him.  Peoples should
not be penalized for the CORC's failure to timely respond, especially where the
eventual response denied the requested relief.

[126]    *See* 6/8/11 CORC Response, Ex. B to Pl. Opp., at 1.

[127]    *See Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 103 (2d Cir. 1997)
(holding that where facts are not contested by either party, the pleading may be
deemed amended).

[128]    As there is no indication that the Attorney General's office represents
Drown, I decline to dismiss him from this action.  Additionally, because Drown
was the officer who imposed the three-year SHU sentence, it is unlikely that he
would be dismissed at this stage of these proceedings.

sovereign immunity.[129]

### H.   Qualified Immunity

To succeed on their claim for qualified immunity Ward, Bezio and Rock must show that from the "face of the complaint they did not violate a clearly established right of which they should have known."[130]  By sentencing and confining Peoples to the SHU for three years,[131] Ward, Bezio and Rock violated a clearly established right protecting inmates from cruel and unusual punishment. Thus, these defendants are not entitled to the defense of qualified immunity.

### I.   Leave to Amend

Because Peoples cannot cure his claims against Fischer, Leclaire, Lee, O'Connor and Bellamy due to their lack of personal involvement, the claims against these defendants are dismissed with prejudice and without leave to amend. Furthermore, Peoples may not amend his Complaint as to the alleged Fourth Amendment violations, his right to access to the courts claim, his claim regarding his altercation with a fellow inmate, and his claims against the Office of Counsel

---

[129]   *See Treasure Salvors, Inc.*, 458 U.S. at 684.

[130]   *Percinthe*, 2008 WL 4489777, at *3.  *Accord McKenna*, 386 F.3d at 436 (internal citations omitted).

[131]   This is an extraordinary amount of time given the nature of the charges filed against him.

for DOCS, as any such amendments would be futile.

Peoples may amend his Complaint in connection with his Fourteenth Amendment due process claim.  In order to do so, he must first waive his challenge to the loss of good time credit.  Peoples may amend this claim within thirty days of the date of this Order.  If Peoples submits a timely Amended Complaint, this Court will review it to determine whether Peoples has adequately pled a Fourteenth Amendment due process claim.

## VI.   CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part.[132]  The Clerk of the Court is directed to close this motion [Docket No. 33].  A status conference has been scheduled for June 12, 2012, at 4:30 p.m. in Courtroom 15C.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            May 2, 2012

---

[132]     If Peoples wishes to purse the claims described in his February 13, 2012 letter to this Court, he should do so by commencing a new action.

33

**- Appearances -**

**Plaintiff (Pro Se):**

LeRoy Peoples
# 05-A-2620
Attica Correctional Facility
P.O. Box 149
Attica, NY 14011

**For Defendants:**

Jeb Harben
Assistant Attorney General
120 Broadway - 24th Floor
New York, NY 10271
(212) 416-6185