UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

LEROY PEOPLES,

           Plaintiff,

- against -

BRIAN FISCHER, DOCS
COMMISSIONER, LUCIEN LECLAIRE,
JR., DOCS OFFICE OF COUNSEL,
WILLIAM LEE, PETER A. CRUSCO,
ERIC C. ROSENBAUM, RICHARD A.
BROWN, LT. L. WARD, SGT.,
O'CONNOR, C.O. MALARE, C.O.
DROWN, NORMAN BEZIO, D. ROCK, LT.
WARD, and KAREN BELLAMY,

           Defendants.

------------------------------------------------------------X



OPINION AND ORDER

11 Civ. 2694 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.    INTRODUCTION

        As the Commission on Safety and Abuse in America's Prisons recently found, "[t]he overreliance on and inappropriate use of segregation hurts individual prisoners and officers. But the consequences are broader than that: The misuse of segregation works against the process of rehabilitating people and threatens public safety."[1] In 2010, the American Bar Association approved its

---

        [1]      John J. Gibbons and Nicholas de B. Katzenbach, *Confronting Confinement: A Report of the Commission on Safety and Abuse in America's*

Criminal Justice Standards on the Treatment of Prisoners, which recommend that "[s]egregated housing should be for the briefest term and under the least restrictive conditions practicable and consistent with the rationale for placement and with the progress achieved by the prisoner."[2] The ABA emphasized that

> Correctional authorities should use long-term segregated housing sparingly and should not place or retain prisoners in such housing except for reasons relating to:
>
> (i) discipline after a finding that the prisoner has committed a very severe disciplinary infraction, in which safety or security was seriously threatened; [or]
> (ii) a credible continuing and serious threat to the security of others or to the prisoner's own safety.[3]

As to disciplinary segregation, the ABA recommended that "only the most severe disciplinary offenses, in which safety or security are seriously

---

*Prisons* at 53-54 (2006) (explaining that "the actual risk someone presents to the prison community should be carefully considered before segregating the person," that segregation should be "a last resort and a more productive form of confinement," and that the use of isolation should be ended). *Accord* Stuart Grassian, *Psychiatric Effects of Solitary Confinement*, 22 Wash. U. J.L. & Pol'y 325, 327 (2006). *See also* Jamie Goldberg, *Solitary confinement 'is driving men insane,' exonerated convict testifies*, L.A. Times, June 19, 2012 (describing Senate Judiciary Committee hearing on solitary confinement); Editorial, *The Abuse of Solitary Confinement*, N.Y. Times, June 20, 2012.

[2] Standard 23-2.6 Rationales for segregated housing.

[3] Standard 23-2.7 Rationales for long-term segregated housing.

threatened, ordinarily warrant a sanction that exceeds 30 days placement in disciplinary housing, and *no placement in disciplinary housing should exceed one year*."[4] These ABA standards are not radical or fringe views: on the contrary, "[t]he Standards' unique contribution . . . is to address all the aspects of long-term segregation by presenting solutions that embody *a consensus view of representatives of all segments of the criminal justice system* who worked on them together in the exhaustive and collaborative ABA Standards process."[5]

Leroy Peoples was housed in segregation for over two years, even though there was never any finding that he posed a threat to the safety of others or the security of the prison. His placement in the SHU for such a time period was grossly disproportionate to the non-violent violation that he was found to have committed. He has therefore stated a plausible claim that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment.

## II.  PROCEDURAL POSTURE

On May 3, 2012, this Court issued an Opinion and Order (the "May 3, 2012 Order") dismissing, in part, plaintiff's Complaint for failure to state a

---

[4]   Standard 23-4.3 Disciplinary sanctions (emphasis added).

[5]   Margo Schlanger, *Regulating Segregation: The Contribution of the ABA Criminal Justice Standards on the Treatment of Prisoners*, 47 Am. Crim. L. Rev. 1421, 1423 (2010) (emphasis added).

claim.[6] Defendants now seek reconsideration on the following grounds: (1) defendants Ward, Bezio and Rock are entitled to qualified immunity; and (2) Ward was not personally involved. For the reasons stated below, defendants' motion for reconsideration is granted in part and denied in part.

### III.   FACTUAL BACKGROUND

Peoples is currently an inmate at Upstate Correctional Facility and was previously an inmate at Green Haven Correctional Facility.[7] On October 5, 2009, while Peoples was at Green Haven, Sergeant O'Connor and Corrections Officer ("C.O.") Malare approached him while he was working and performed a pat and frisk search.[8] Peoples was then escorted to his cell, F-Block 150, which O'Connor and Malare then searched.[9] Peoples alleges that certain papers were seized and that his personal and legal mail, family photos, clothing, and other miscellaneous property was scattered all over his cell.[10]

---

[6]   *See Peoples v. Fischer*, No. 11 Civ. 2694, 2012 WL 1575302 (S.D.N.Y. May 3, 2012).

[7]   *See* Compl., I(A) and II(A).

[8]   *See id*. III(D)  ¶ 2.

[9]   *See id*.

[10]  *See id*. ¶¶ 1, 11.

Peoples was immediately taken to the Special Housing Unit ("SHU") and placed in solitary confinement.[11]  The next day, October 6, 2009, Peoples was served with an Inmate Misbehavior Report (the "Report"), which alleged that he violated Rules 107.21[12] and 113.30[13] of the Standards of Inmate Behavior rule book (hereafter "Rules").  The Report further states that on October 5, 2009, prior to the cell search, C.O. O'Connor received a packet of papers from the Queens County District Attorney's Office.[14]  The accompanying cover letter identified the papers as "U.C.C. [and] other financial claims that are bogus [and] without legal basis."[15]  The Report states that the subsequent search of Peoples' cell "produced approx[imately] 148 documents which all also appear to violate the above

---

[11]   *See id.* ¶ 2.

[12]   *See id.*  Rule 107.21 states that "[a]n inmate shall not file or record any document or instrument of any description which purports to create a lien or record a security interest of any kind against the person or property of any officer or employee of the Department, the State of New York, or the United States, absent prior written authorization from the superintendent or a court order authorizing such filing."  7/24/09 Inmate Rule Book Additions, Ex. A to Compl., at 6.

[13]   Rule 113.30 provides that "[a]n inmate shall not possess any Uniform Commercial Code ("UCC") Article 9 Form, including but not limited to any financing statement, . . . correction statement. . . , or information request . . ., whether printed, copied, typed or hand written, or any document concerning a scheme involving an inmate's 'strawman.'" 7/24/09 Inmate Rule Book Additions, Ex. A to Compl., at 6.

[14]   *See* Compl., III(D) ¶ 1.

[15]   *Id.*

referenced charges."[16]

On October 13, 2009, a misbehavior report hearing was conducted which Peoples alleges, had the "normal formalities of a hearing."[17]   At the end of the hearing, Peoples was sentenced to three years confinement in the SHU, a three-year loss of phone, package, and commissary privileges, and seventy-two months recommended loss of good time credit.[18]  Peoples appealed the hearing disposition to SHU Director Bezio who denied his appeal.[19]  In November of 2009, while still confined in the SHU and under Superintendent Rock's watch, Peoples was involved in a fist fight with fellow inmate Larry Allen and lost a tooth.[20]

On March 7, 2011, Peoples filed a grievance in connection with the alleged violations of his constitutional rights.[21]  The grievance referenced violations of his rights under the First, Sixth, and Fourteenth Amendments of the Constitution

---

[16]    *Id.*

[17]    Compl., III(D) ¶ 3.

[18]    *See id*.  *See also* Superintendent Hearing Disposition Report, Ex. A to Compl., at 2.  At the time of the hearing, Peoples had not yet accrued seventy-two months of good time credit.  *See* Compl., III(D) ¶ 3.

[19]    *See* Compl., III(D) ¶ 4.

[20]    *Id*. ¶¶ 8, 9.

[21]    *See* 3/7/11 Inmate Grievance, Ex. A to Compl., at 4.

of the United States.[22] Peoples complained about the addition of Rules 107.21 and 113.30 and complained that he was affected by these Rules by being placed in the SHU for three years, along with three years of lost phone, package and commissary privileges.[23]

On March 9, 2011, Peoples received a response from the Inmate Grievance Review Committee ("IGRC") and simultaneously appealed to the Superintendent of the Department of Correctional Services ("DOCS").[24] On March 15, 2011, Superintendent Rock responded to Peoples' appeal.[25] Two days later, on March 17, 2011, Peoples appealed to the Central Office Review Committee ("CORC").[26] On April 18, 2011, Peoples commenced the instant action. On June 8, 2011, he received a response from the CORC affirming the denial of his grievance.[27]

---

[22]   *See id.*

[23]   *See id.*

[24]   *See* Compl., III(D) ¶ 8.  *See also* 3/9/11 IGRC Response, Ex. A to Compl., at 5.

[25]   *See* 3/15/11 Response from Inmate Grievance Program Superintendent, Ex. A to Compl., at 6.

[26]   *See id.*

[27]   *See* 6/8/11 CORC Response, Ex. B to Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss ("Opp. Mem.") at 1.

Peoples generally suffers from "stress, fear . . . depression and other psychological impacts" of his confinement in the SHU, which he has described as "psychological torture."[28] Peoples alleges that Superintendent Rock was personally involved in the deprivation of Peoples' constitutional rights because Rock confined Peoples in the SHU, upheld the CORC's determination of Peoples' appeal, and was in a supervisory role at the time Peoples was involved in a fist fight with Allen.[29] SHU Director Bezio is personally involved in his deprivation, Peoples argues, as he "affirmed and confirmed the disposition of unlawful confinement and revoked privileges" in violation of Peoples' constitutional rights.[30] Peoples alleges that Lieutenant Ward was personally involved because he authorized the seizure of Peoples and his papers as well as his unlawful confinement in the SHU.[31]

## IV.   LEGAL STANDARD

### A.   Motion for Reconsideration

Motions for reconsideration are governed by Local Rule 6.3 and are

---

[28]   Compl., III(D) ¶¶ 7, 9.

[29]   *See id.* ¶¶ 1, 8.

[30]   *Id.* ¶ 4.

[31]   *See id.* ¶¶ 1, 10. In April 2010, Peoples drafted a request for an Article 78 proceeding addressing some of the issues raised in the instant Complaint. Upon his return from state court, however, the Article 78 motion was confiscated by corrections officers acting under Rock's orders. *See id.* ¶ 17(g).

committed to the sound discretion of the district court.[32]  A motion for reconsideration is appropriate where "'the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'"[33]  A motion for reconsideration may also be granted to "'correct a clear error or prevent manifest injustice.'"[34]

The purpose of Local Rule 6.3 is to "'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'"[35]  Local Rule 6.3 must be

---

[32]   *See Patterson v. United States*, No. 04 Civ. 3140, 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006 ) ("The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court.") (citing *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983)).

[33]   *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003) (quotation marks omitted).

[34]   *RST (2005) Inc. v. Research in Motion Ltd.*, No. 07 Civ. 3737, 2009 WL 274467, at *1 (S.D.N.Y. Feb. 4, 2009) (quoting *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

[35]   *Grand Crossing, L.P. v. United States Underwriters Ins. Co.*, No. 03 Civ. 5429, 2008 WL 4525400, at *3 (S.D.N.Y. Oct. 6, 2008) (quoting *S.E.C. v. Ashbury Capital Partners*, No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001)). *Accord Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, 233 F.R.D. 355, 361 (S.D.N.Y. 2005) ("[A] movant may not raise on a motion for reconsideration any matter that it did not raise previously to the court on the underlying motion sought to be reconsidered.").

"narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court."[36] Courts have repeatedly been forced to warn litigants that such motions should not be made reflexively to reargue "'those issues already considered when a party does not like the way the original motion was resolved.'"[37] A motion for reconsideration is not an "opportunity for making new arguments that could have been previously advanced,"[38] nor is it a substitute for appeal.[39]

### B. Qualified Immunity

Agency officials performing discretionary functions are generally granted qualified immunity and are immune from suit provided that "'their conduct does not violate clearly established statutory or constitutional rights of which a

---

[36] *United States v. Treacy*, No. 08 CR 366, 2009 WL 47496, at *1 (S.D.N.Y. Jan. 8, 2009) (quotation marks and citation omitted). *Accord Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (holding that a court will deny the motion when the movant "seeks solely to relitigate an issue already decided").

[37] *Makas v. Orlando*, No. 06 Civ. 14305, 2008 WL 2139131, at *1 (S.D.N.Y. May 19, 2008) (quoting *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996)).

[38] *Associated Press v. United States Dep't of Defense*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005).

[39] *See Grand Crossing,* 2008 WL 4525400, at *3.

reasonable person would have known.'"[40] The Second Circuit has held that "[a] right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful."[41]

To prevail on a motion to dismiss on the basis of qualified immunity "[n]ot only must the facts supporting the defense appear on the face of the complaint, but as with all Rule 12(b)(6) motions . . . the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense."[42]

## V. DISCUSSION

### A. Personal Involvement of Ward

Defendants point out that although Lt. Ward authorized the seizure of Peoples and his papers as well as his initial confinement in the SHU, Peoples does not allege that Ward was personally involved in the SHU sentence following the

---

[40] *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004) (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)).

[41] *Id.* (quotation marks and citations omitted).

[42] *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). *Accord Percinthe v. Julien*, No. 08 Civ. 893, 2008 WL 4489777, at *3 (S.D.N.Y. Oct. 4, 2008).

disciplinary hearing or the denial of Peoples' appeal of that sentence. Defendants are correct. Because the only remaining claim relates to Peoples' three-year SHU sentence and not to the initial search, seizure and SHU confinement, there is no assertion that Lt. Ward was personally involved in the alleged constitutional violations.[43] Because Ward's involvement was limited to the initial search, seizure and SHU confinement pending Peoples' disciplinary hearing, reconsideration is warranted. As such, defendants' motion to dismiss Lt. Ward for lack of personal involvement is granted.

### B. Bezio and Rock are Not Entitled to Qualified Immunity at This Stage of the Proceedings

Defendants request reconsideration of the May 3, 2012 Order denying qualified immunity to Bezio and Rock as to the remaining Eighth Amendment claim.[44] To succeed on their claim for qualified immunity, Bezio and Rock must show that from the "face of the complaint they did not violate a clearly established right of which they should have known."[45] Defendants maintain that there is no

---

[43] *See Ashcroft v. Iqbal*, 556 U.S. —, 129 S. Ct. 1937, 1948-49 (2009).

[44] Because Lt. Ward has now been dismissed from this lawsuit due to lack of personal involvement, there is no need to do a qualified immunity analysis as to him.

[45] *Percinthe*, 2008 WL 4489777, at *3. *Accord McKenna*, 386 F.3d at 436 (internal citations omitted).

clearly established law indicating that the length of a SHU sentence alone can be considered cruel and unusual punishment.

The Supreme Court has noted that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution" and that "'[w]hen a prison . . . practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights.'"[46] "Confinement in a prison or in an isolation cell is a form of punishment subject to scrutiny under Eighth Amendment standards" and "the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards."[47] The Eighth Amendment "prohibits punishments which, although not physically barbarous, 'involve the unnecessary and wanton infliction of pain,' or are grossly disproportionate to the severity of the crime."[48]

The Supreme Court and Second Circuit have clearly established that lengthy durations of SHU confinement can constitute an "atypical and significant" hardship for purposes of determining an inmate's liberty interest within the context

---

[46] *Turner v. Safley*, 482 U.S. 78, 85 (1987) (quoting *Procunier v. Martinez*, 416 U.S. 396, 405-06 (1974)).

[47] *Hutto v. Finney*, 437 U.S. 678, 685-86 (1979).

[48] *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (*quoting Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).

of a due process claim.[49]  Moreover, the Second Circuit has held that

> lengthy segregated confinement of the type considered herein, after an inordinate lapse of time, may necessitate periodic review to insure that conditions once constitutional have not become cruel and unusual[.][50]

Here, the defendant served twenty-six months of a thirty-six month sentence imposing SHU confinement. Whether twenty-six or thirty-six months is the starting point, a sentence of either duration could be considered "atypical and significant" in determining whether an inmate had a liberty interest for due process purposes under *Sandin* and its progeny.[51]

Although the due process analysis is conceptually distinct from that of the Eighth Amendment, a finding of atypicality is, by analogy, indicative of whether a sentence is grossly disproportionate to the underlying offense.

---

[49] See *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Sims v. Artuz*, 230 F.3d 14, 22-24 (2d Cir. 2000); *Colon v. Howard,* 215 F.3d 227, 230-31 (2d Cir. 2000).

[50] *Smith v. Coughlin*, 748 F.2d 783, 787 (2d Cir. 1984) ("Restraints on an inmate do not violate the amendment unless they are 'totally without penological justification,' 'grossly disproportionate,' or 'involve the unnecessary and wanton infliction of pain.'") (quoting *Rhodes,* 452 U.S. at 346).

[51] See *Sandin*, 515 U.S. 472, 484 (1995); *Sims*, 230 F.3d at 23 (sentence of one year was "of sufficient length to be atypical and significant"); *Colon,* 215 F.3d at 229 (a prisoner's SHU confinement for 305 days was 'atypical' and a 'severe hardship').

Numerous courts have found that long stretches of segregation can constitute cruel and unusual punishment.[52] Furthermore, courts have repeatedly determined that conditions of segregated confinement are unconstitutional if they do not meet certain minimum standards.[53] Thus, prison officials were arguably put on sufficient notice that a sentence of three years of SHU confinement for a non-violent infraction of prison rules could well be found to be grossly disproportionate and, therefore, in violation of the Eighth Amendment. Accordingly, the conduct of the CO defendants could be found to have violated Peoples's clearly established right to be free from cruel and unusual punishment. Further development of the record

---

[52] *See Morris v Travisono*, 549 F. Supp. 291 (D.R.I. 1982) *aff'd* 707 F. 2d 28 (1st Cir. 1983) (solitary confinement for 8.5 years of prisoner who murdered a prison guard and then engaged in minor acts of disobedience was without sufficient penological justification and constituted cruel and unusual punishment) *Silverstein v. Bureau of Prisons*, 704 F. Supp. 2d 1077 (D. Colo. 2010) (twenty-seven years of solitary confinement for prisoner who murdered three people while in prison stated a claim under the Eighth Amendment); *Carothers v. Follette*, 314 F. Supp. 1014, 1026 (S.D.N.Y. 1970) (stating, in dicta, that placing a prisoner in solitary confinement for 4.5 months for writing a letter to a judge criticizing the prison administration would constitute grossly disproportionate and therefore unconstitutional punishment); *Ruiz v. Johnson*, 37 F. Supp. 2d 855 (S.D. Tex. 1999) (administrative segregation of inmates unconstitutional because of its impact on their mental health).

[53] *See Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) (Kennedy, J.) (Eighth Amendment requires that prisoners confined to segregation be allowed regular exercise); *Keenan v. Hall*, 83 F.3d 1083 (9th Cir. 1996) (collecting cases holding that the level of noise, ventilation, temperature, cell size, lighting and the access to personal hygiene items, food, water, and medical care all implicate the Eighth Amendment analysis).

during discovery will assist in determining whether Peoples' conditions of confinement in the SHU violated a clearly established Eighth Amendment right.[54] Thus, Bezio and Rock's motion for reconsideration based on qualified immunity is denied at this stage in the proceedings, without prejudice and with leave to renew.

## VI. CONCLUSION

For the foregoing reasons, defendants' motion for reconsideration is granted in part and denied in part. The Clerk of the Court is directed to close this motion [Docket No. 50]. Additionally, Peoples attached an Amended Complaint to his opposition papers, which this Court now accepts for filing. A status conference has been scheduled for July 23, 2012, at 4:30 p.m., in Courtroom 15C.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
June 26, 2012

---

[54] *See Colon v. Howard*, 215 F.3d 227, 232 (2d Cir. 2000).

**- Appearances -**

**Plaintiff (Pro Se):**

LeRoy Peoples
# 05-A-2620
Attica Correctional Facility
P.O. Box 149
Attica, NY 14011

**For Defendants:**

Jeb Harben
Assistant Attorney General
120 Broadway - 24th Floor
New York, NY 10271
(212) 416-6185