UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEROY PEOPLES,

                        Plaintiff,

- against-

NORMAN BEZIO, et al.

                        Defendants.

Docket Number
11-CV-2694 (SAS)

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
<u>Attorney for State Defendants Bezio, Rock and Ward</u>
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-6185

JEB HARBEN
Assistant Attorney General
    *of Counsel*

## PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted on behalf of defendants Ward, Bezio, and Rock, current or former New York State Department of Corrections and Community Supervision ("DOCCS") employees.[1] Defendants now move to transfer venue to the Northern District of New York and/or to dismiss the Amended pursuant to FRCP 12(b)(1) and/or (6) on the grounds of: (1) failure to state a claim; (2) qualified immunity; (3) no personal involvement; and (4) failure to exhaust administrative remedies.

Defendants hereby expressly incorporate by reference all arguments and statements contained in their memoranda of law in support of their motion to dismiss dated November 30, 2011 and January 27, 2012, respectively, and memorandum of law in support of their motion for reconsideration dated May 17, 2012. Defendants also incorporate by reference as if fully set forth herein the November 30, 2011 Declaration of Jeb Harben ("Harben Decl.").

## PROCEDURAL HISTORY

On November 30, 2011, defendants Fischer, Leclaire, Ward, Bezio, Rock, Lee, O'Connor and Bellamy moved to dismiss this action. At that time, unserved named defendants Drowns, Malave and "Office of Counsel" did not move to dismiss. By Opinion and Order entered May 3, 2012, this Court dismissed all moving defendants except for Ward, Bezio and Rock. The Court also dismissed all claims with prejudice other than plaintiff's Eighth Amendment claim regarding the length of time he was sentenced to/served in the DOCCS Special Housing Unit ("SHU") in

---

1 Defendant Commissioner's Hearing Officer Drowns died on March 29, 2011. While the Office of the New York Attorney General has reached out to the Estate of Mr. Drowns to determine whether it wishes to be represented in this action and has not received a written request in that regard, to date, plaintiff has never moved to substitute the Estate despite being aware of defendant Drowns' death since at least November 30, 2011, when he was so advised by defendants' memorandum of law. Accordingly, as more than 90 days have elapsed since then, the Court may *sua sponte* dismiss this action as to defendant Drowns. See FRCP 25(a)(1); Rivera v. Pataki, 2005 WL 407710 at *16 (S.D.N.Y. Feb. 7, 2005) (statement in motion sufficient under FRCP 25(a)(1)).

1

connection with the infractions in question and his claim that his due process rights were violated as a result of the length of time he was sentenced to/served in SHU, which was dismissed without prejudice with leave to amend to eliminate any claim for loss of "good time" credits. On May 17, 2012, defendants Ward, Bezio and Rock moved for reconsideration of the Court's May 3, 2012 Opinion and Order. By Opinion and Order entered June 26, 2012, this Court partially granted the motion to the extent that defendant Ward was dismissed from the action. That Opinion and Order, however, accepted plaintiff's Amended Complaint (July 10, 2012 Declaration of Jeb Harben ("Harben Decl. II"), Exh. A) for filing, which contained claims against defendant Ward essentially identical to those previously raised that had been dismissed by the Court.

## STATEMENT OF FACTS[2]

Plaintiff is a rapist currently serving a 13-year, 8 month, 16 day to 16-year sentence in the custody of DOCCS at Attica Correctional Facility in the Western District of New York. He is not eligible for parole release until February 23, 2017 and the maximum expiration date of his sentence is June 7, 2019.[3] In October 2009, he was incarcerated at Green Haven Correctional Facility ("Green Haven"). At approximately that time, Green Haven officials became aware that plaintiff had filed two separate bogus and illegal U.C.C. liens on two public officials (Queens County District Attorney Richard Brown and Assistant District Attorney Eric Rosenbaum).[4] Plaintiff's cell was searched and 148 pages of U.C.C. lien-related materials demonstrating that plaintiff was also in the process of preparing to file liens on several other public officials were

---

2  Defendants incorporate by reference the Statement of Facts in their Memorandum of Law dated November 30, 2011, previously submitted to the Court, as if fully set forth herein.
3  See http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ3/WINQ130.
4  See Harben Decl., Exh. B (correspondence); Exh. C (October 13, 2009 Transcript) at p. 6. Because plaintiff specifically cites to and/or attaches these documents/events in question and thus incorporates them by reference, these underlying documents may be considered by the Court here. See, e.g., Cortec v. Sum, 949 F.2d 42, 48 (2d Cir. 1991) (court may consider documents relied on to frame complaint). The contents of these documents are not in dispute, although the parties may dispute what conclusions may be drawn from them.

2

confiscated. Filing bogus U.C.C. liens and the possession of other U.C.C. materials by plaintiff violated DOCCS Standards of Inmate Behavior 107.21 and 113.30 (codified at 7 NYCRR § 270.2).[5] Plaintiff was subsequently found guilty of violating three DOCCS disciplinary rules and ultimately served less than 26 months of the 36 months placement in SHU he was initially sentenced to. See Harben Decl., Exh. H.

**ARGUMENT: DEFENDANTS' MOTION TO DISMISS SHOULD BE GRANTED**

**I.   STANDARD OF REVIEW**

Under F.R.C.P. 12(b)(6), the Court must accept all of plaintiff's factual allegations as true and "draw all reasonable inferences in plaintiff's favor." But plaintiff must also allege enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). Any duty to liberally construe a *pro se* complaint is not the equivalent of a duty to re-write it for him. 3 Moore's Federal Practice, § 12.34[4][a], pg. 12-60 and 12-72 (1997). "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Iqbal at 1949. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent" dismissal. Sylla v. NYC, 2005 WL 3336460, *1 (E.D.N.Y. Dec. 8, 2005).

**II.   DEFENDANT WARD**

In its June 26, 2012 Opinion, the Court dismissed defendant Ward (who has retired from DOCCS and now resides out of state) and correctly held that he was not personally involved in the alleged constitutional violation that the Court had not dismissed from this case, namely the decision to have plaintiff serve nearly 26 months in SHU for the infractions in question, but rather, was merely involved in temporarily placing plaintiff in SHU pending his disciplinary hearing a few days later, which the Court concluded was not a constitutional violation.

---

5  See Harben Decl., Exh. C at pp. 6 – 7; Exh. D (July 24, 2009 Notice to Inmate Population); Exh. E (October 5, 2009 Inmate Misbehavior Report); Exh. F (Contraband Receipt).

After dismissing defendant Ward, however, the Court allowed plaintiff to file an Amended Complaint, which also named defendant Ward, without also ordering that any such claims be deemed stricken from the amended pleading or deemed a nullity. While presumably it was the intent of the Court to not allow claims to go forward against defendant Ward as a result of the filing of the Amended Complaint, the record is now unclear. Accordingly, it is respectfully requested that the Court confirm that defendant Ward was previously deemed dismissed from the Amended Complaint pursuant to the June 26, 2012 Opinion and Order, or, that defendant Ward is again dismissed from this action for all the previous reasons stated.

### III. **VENUE IS PROPER IN THE NORTHERN DISTRICT OF NEW YORK**

This action was filed in the Southern District of New York by plaintiff, but all Southern District defendants have been dismissed from this action and/or remain unserved well after the 120/90 day periods for effecting service and/or moving to substitute under the FRCP have passed. As such, the allegedly unconstitutional actions purportedly taken by defendants Bezio (employed at DOCCS' offices in Albany) and Rock (Superintendent of Upstate Correctional Facility ("Upstate") in Franklin County) all took place in the Northern District of New York while plaintiff was located in the Northern District.[6]

Proper venue in a federal question case such as this one is set out in 28 U.S.C. § 1391(b).[7] Where proper venue is not established pursuant to § 1391(b), the remedy is set out in 28 U.S.C. §

---

6 Moreover, to the extent plaintiff may take issue with the conditions of his confinement in SHU stemming from the length of his time in SHU (although no such claims are pled), such time was spent in SHU at Upstate in the Northern District, not in the Southern District, so any witnesses concerning those issues are located in the Northern District.

7 Section 1391(b) reads as follows: A civil action wherein jurisdiction is not founded solely on diversity of citizenship may . . . be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

1406(a).[8] Under § 1406(a), where venue does not lie, the case shall be dismissed or transferred. The decision of whether to dismiss or transfer an action for improper venue is within the discretion of the trial court. See Friedman v. Rev. Mgt., 38 F.3d 668, 672 (2d Cir. 1994). Once objection to venue is made, however, plaintiff bears the burden of establishing that venue is appropriate. See, e.g., Astor v. Roski, 2002 WL 72936, at ** 8-9 (S.D.N.Y. Jan. 17, 2002).

In this case, the events plaintiff complains of (denial of his grievance and disciplinary appeal and allegedly excessive time spent in SHU) all occurred in the Northern District and the defense witnesses are located there as well. For venue purposes, it is well-settled under 28 U.S.C. § 1391 that public officials reside the district in which they perform their official duties. See, e.g., Berry v. NY DOCS, 808 F. Supp. 1106, 1108 (S.D.N.Y. 1992). As such, venue does not lie in the Southern District under 28 U.S.C. § 1391 and the remedy is dismissal of this action pursuant to 28 U.S.C. § 1406(a) or transfer under § 1404(a). See also Barlow v. Fischer, 2010 WL 1544613 (W.D.N.Y. Apr. 15, 2010) (transfer to Northern District; claims made against officials in Albany).

Finally, while not dispositive under the relevant venue provisions, plaintiff is incarcerated in Attica in the Western District, which is far closer to Albany than New York City if plaintiff needs to be transported to court for a trial. Moreover, as plaintiff cannot be released on parole until February 2017, and has a reasonable likelihood of not being released until the maximum expiration of his sentence in June 2019, whether or not plaintiff intends to return to the New York City area after his release (he was convicted in the Eastern District) is irrelevant as, if there is a trial in this action, it will occur well before February 2017. The expense of a trial in New York City, requiring the transport of plaintiff here and the housing of DOCCS witnesses at local hotels,

---

8 Section 1406(a) reads as follows: The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

5

which, even at their most basic are far more expensive than similar accommodations in Albany, further shifts the balance of equities in favor of transfer. See Hall v. S. Orange, 89 F. Supp. 2d 488, 494 (S.D.N.Y. 2000). Accordingly, this action should be transferred to the Northern District.

## IV. PLAINTIFF HAS FAILED TO STATE A CLAIM

Plaintiff received all the process he was due, and thus fails to state a claim for violation of his due process rights.[9] Unserved defendant Drowns was a fair and impartial hearing officer, permitting plaintiff to call witnesses and submit documentary evidence, as well as explaining the hearing process and prison regulations to plaintiff. Id. at Exh. C. Finally, plaintiff received a written disposition setting forth the evidence relied on and the reasons for the disciplinary actions taken. Id. at Exh. G. As all procedural aspects of the hearing satisfied the relevant constitutional standards, defendant Bezio would have had no basis to reverse defendant Drowns' finding on appeal. In fact, plaintiff does not argue that there was not at least "some evidence" demonstrating his guilt. Plaintiff's claim that defendant Drowns made an off the record comment about plaintiff being a sex offender is irrelevant as plaintiff objectively received all the process he was due. See Richardson v. DOCS, 2011 WL 4091491 (S.D.N.Y. Sept. 13, 2011) (dismissing due process claim

---

9 As previously argued, under Wolff v. McDonnell, 418 U.S. 539 (1974), "an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (citing Wolff, 418 U.S. at 563-67). A finding against an inmate in a prison disciplinary hearing must be supported by "some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454 (1985). The "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56. Prisoners have a qualified right to call witnesses and submit documentary evidence in their defense when doing so would not be "unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 566. An accused inmate is entitled to "a fair and impartial hearing officer." Sira, 380 F.3d at 69 (citing Wolff, 418 U.S. at 563-67); Johnson v. Goord, 487 F. Supp. 2d 377, 401 (S.D.N.Y. 2007) (discussion of fairness requirement).

in inmate U.C.C. case). Any conclusory inferences that the hearing was "unfair" must be rejected. Plaintiff has failed to properly state a due process claim and any such claim should be dismissed.

The Court has previously inferred that plaintiff may state a claim that "no evidence" exists to support the length of sanctions issued. See May 3, 2012 Opinion at 28. We are unaware of any precedent indicating that this standard applies to the analysis of whether a sanction imposed is proper, rather than whether guilt was properly found. In addition, putting aside the fact that plaintiff served 10 fewer months in SHU than he was sentenced to, so the length of the original sentence (which presumably contemplated significant potential reductions for good behavior) should not be the sole consideration, there was sufficient reliable evidence to support the sanctions plaintiff ultimately served (and was sentenced to). In Neree v. O'Hara, 2011 WL 3841551 (N.D.N.Y. July 20, 2011), the court took no issue with cumulative sentences of 18 months in SHU for three U.C.C. lien-related violations, none of which actually involved the successful filing of U.C.C. liens on public officials as occurred here.[10] Here, defendant Drowns could have just as easily treated each U.C.C. lien violation (such as the two liens filed and each draft lien directed to an individual) as a separate disciplinary matter, imposing 2-8 months per violation, and still reached the 36 month total. Moreover, it is unfathomable that "no evidence" supported the discipline imposed when the filing of a false lien on a federal official can result in *ten years* of imprisonment and an individual act of filing a false lien is a Class E felony in New York,

---

10 Plaintiff's illegal filing of these U.C.C. liens required these public officials to initiate court proceedings to have the liens nullified. See Harben Decl. II, Exh. B. While these public officials were apparently able to obtain free representation from their employers to pursue these civil remedies, not all public officials or non-public individuals are similarly situated and nullifying such liens through the required court proceedings could cost thousands of dollars in lawyer fees aside from the potential financial chaos such a lien might cause under certain circumstances, such as a rejection for a home loan/refinancing or other financial loss. Plaintiff is a convicted rapist, and his filing of felonious liens against anyone - - from a government official to his rape victim -- should be subject to serious disciplinary consequences.

punishable by a sentence of more than one year of imprisonment.[11] While SHU conditions are no doubt more restrictive than those in general population, if a single violation under certain circumstances can result in *ten years* of imprisonment, it can hardly be said that there is no basis for 26 (or even 36) months in SHU for multiple infractions. These arguments also apply equally to rebut the notion that the discipline imposed here could be an Eighth Amendment violation.

## V. QUALIFIED IMMUNITY

Even if plaintiff has stated a cause of action against the defendants, they are nevertheless entitled to qualified immunity. The doctrine of qualified immunity provides "'that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known.'" Davis v. Rhoomes, 2009 WL 415628 at * 10 (S.D.N.Y. Feb. 19 2009) (quotation omitted); Hunter v. Bryant, 502 U.S. 224, 228-29 (1991) ("mistaken judgments" allowed). A two-part test exists to determine whether a defendant is entitled to qualified immunity. See Reichle v. Howards, 132 S. Ct. 2088, 2093 (June 4, 2012); Pearson v. Callahan, 129 S. Ct. 808, 815-18 (2009). Initially, the court must ascertain whether the "plaintiff's allegations, if true, establish a constitutional violation" and then the court must determine "if the right was "clearly established" at the time it was allegedly infringed." Id. at 815-6. "To be clearly established, a right must be sufficiently clear 'that *every* 'reasonable official would [have understood] that what he is doing violates that right." Reichle at 2093 (emphasis added) (quotation omitted). In the absence of **Supreme Court or Second Circuit precedent on point**, a constitutional right is not "clearly established." Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir.

---

11 See U.S. v. Speight, 75 Fed. Appx. 802, * 1 (2d Cir. Aug. 28, 2003) (affirming 72 month sentence imposed on inmate who filed false U.C.C. liens on federal judge and officials); 18 U.S.C. § 1521 (filing false U.C.C. liens on federal official may be punishable by up to ten years of imprisonment); N.Y. Penal Law 175.35 (filing a false U.C.C. lien is a Class E felony).

8

1991), cert. den., 503 U.S. 962 (1992). To be "clearly established" the law must be defined with reasonable clarity (see Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003)) as officials cannot be expected "to recognize the significance of a few scattered cases from disparate areas of law" where a right that may be evolving. Rakovich v. Wade, 850 F.2d 1180, 1209-10 (7th Cir. 1988).

With respect to whether the SHU penalties imposed here violate the Eighth Amendment (or whether there was "no evidence" to support them in the due process context), it is respectfully submitted that a handful of non-Second Circuit decisions (and *dicta* from one 1970 S.D.N.Y. case), which may suggest that 27 or 8 years in solitary confinement (which may be more restrictive than SHU in the states in question) may be inappropriate, do not show a "clearly established" right as Second Circuit precedent defines that term, particularly when other cases from this district have held otherwise for infractions that were arguably less serious than those at issue here.[12] Moreover, in Silverstein v. Bureau of Prisons, 704 F. Supp. 2d 1077, 1098-99 (D. Colo. 2010) (which was decided *after* unserved defendant Drowns and defendant Bezio took the actions complained of), while the court held that 27 years in solitary confinement may raise Eighth Amendment issues, the court also dismissed all individual defendants pursuant to the doctrine of qualified immunity, acknowledging that any such Eighth Amendment right was not clearly established. Accordingly, defendants here are also entitled to qualified immunity.

## VI. LACK OF PERSONAL INVOLVEMENT

Section 1983 liability requires personal involvement. See Iqbal at 1948-49. The denial of a grievance will not ordinarily create personal involvement.[13] Furthermore, the grievance in question and defendant Rock's decision (Amended Complaint, Exh. A) show that the grievance

---

12 See, e.g., Shannon v. Selsky, 2005 WL 578943, at *2, n. 4 and *6 (S.D.N.Y. 2005) (allowing 20 months of S.H.U. for planning to organize a work stoppage and other protest-related activities).
13 See Davis, 2009 WL 415628 at *9 (S.D.N.Y. 2009) (grievance denial does not establish personal involvement); Joyner v. Greiner, 195 F. Supp.2d 500, 506 (S.D.N.Y. 2002) (same).

9

concerned an attack on the constitutionality of DOCCS regulations, not a request to reduce plaintiff's penalties. Plaintiff had already filed an earlier administrative appeal that was denied by defendant Bezio. In sum, in denying the grievance, defendant Rock was not addressing plaintiff's sentence, nor would he have been in a position to overrule defendant Bezio through the grievance process. Plaintiff does not allege otherwise. Furthermore, defendant Rock issued his decision on March 15, 2011, after plaintiff had already served 18 months in SHU. Accordingly, even if the Court decides that he can be responsible for the next 8 months of plaintiff's time in SHU, there is no basis to conclude that 8 months in SHU for the infractions in question is unconstitutional.

## VII. PLRA EXHAUSTION

Defendants incorporate by reference their prior arguments regarding P.L.R.A. exhaustion made in their November 30, 2011 and January 27, 2012 memoranda of law.[14]

## CONCLUSION

For all the foregoing reasons, defendants respectfully request that the Court dismiss plaintiff's Amended Complaint in its entirety.

Dated: New York, New York
      July 10, 2012

Respectfully submitted,

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
Attorney for Defendants Rock, Ward and Bezio
By:_____/S/_____
JEB HARBEN
Assistant Attorney General
120 Broadway - 24th Floor
New York, New York 10271
(212) 416-6185

JEB HARBEN
Assistant Attorney General
of Counsel

---

14 To the extent that plaintiff's Amended Complaint now contains any inferences regarded unexhausted issues (such as any inferences regarding conditions in SHU, plaintiff's equitable request that he be placed in protective custody, plaintiff's request for a new hearing regarding the discipline at issue in this case), plaintiff has not exhausted those claims as required by the PLRA and they must be dismissed. See, e.g., Neal v. Goord, 267 F.3d 116, 121 (2d Cir. 2001).