UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEROY PEOPLES, et al.

                           Plaintiff,

           - against-

BRIAN FISCHER, et al.

                           Defendants.

Docket Number
11-CV-2694 (SAS)



**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
CORRECTED THIRD AMENDED CLASS ACTION COMPLAINT**

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
Attorney for Defendants
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-6185/8746

JEB HARBEN
CHRISTINA OKEREKE
Assistant Attorneys General
      *of Counsel*

**Table of Contents**

**Page**

Table of Authorities……………………………………………………………..……ii

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF FACTS ........................................................................................2

    Plaintiff Leroy Peoples ........................................................................................2
    Plaintiff Dewayne Richardson .............................................................................3
    Plaintiff Tonja Fenton .........................................................................................4

ARGUMENT ............................................................................................................6

I.       THERE IS NO CLEARLY ESTABLISHED LAW SUPPORTING PLAINTIFFS'
         CLAIMS, AND THUS, QUALIFIED IMMUNITY MANDATES DISMISSAL OF ALL
         MONETARY DAMAGES CLAIMS AGAINST DEFENDANTS ...................................6

    A.  THE GENERAL STANDARD FOR DETERMINING "CLEARLY ESTABLISHED"
        LAW ...................................................................................................................6

    B.  PLAINTIFFS' SPECIFIC CLAIMS ARE NOT SUPPORTED BY CLEARLY
        ESTABLISHED LAW UNDER EITHER THE EIGHTH OR FOURTEENTH
        AMENDMENTS ................................................................................................8

          i.    EIGHTH AMENDMENT.............................................................................8
          ii.   FOURTEENTH AMENDMENT .................................................................16

II.    EVEN IF THE COURT SOMEHOW WERE TO FIND A CLEARLY ESTABLISHED
       RIGHT, DEFENDANTS' CONDUCT WAS OBJECTIVELY REASONABLE………...18

    A.  GENERAL STANDARD FOR FINDING ACTIONS OBJECTIVELY
        REASONABLE ...................................................................................................18

    B.  DEFENDANTS' SPECIFIC ACTIONS WERE OBJECTIVELY REASONABLE
        UNDER EITHER THE EIGHTH OR FOURTEENTH AMENDMENTS………….…18

          i.    EIGHTH AMENDMENT.............................................................................18
          ii.   FOURTEENTH AMENDMENT .................................................................24
          iii.  DEFERENCE TO STATE INSTITUTIONS .............................................24

CONCLUSION..........................................................................................................25

**Table of Authorities**

**Cases**                                                                                 **Page(s)**

Anderson v. Coughlin,
757 F.2d 33 (2d Cir. 1985)................................................................................24

Anderson v. Creighton,
483 U.S. 635 (1987)...........................................................................................18

Anderson v. Recore,
317 F.3d 194 (2d Cir. 2003)...........................................................................7, 14

Ashcroft v. al-Kidd,
131 S. Ct. 2074 (2011)....................................................................................6, 10

Barakat v. Goord,
707 N.Y.S.2d 509 (3rd Dep't 2000) ...................................................................14

Bell v. Wolfish,
441 U.S. 520 (1979)......................................................................................24, 25

Benitez v. Wolf,
985 F.2d 662 (2d Cir. 1993)...........................................................................7, 14

Coollick v. Hughes,
699 F.3d 211 (2d Cir. 2012)................................................................................7

Cortec v. Sum,
949 F.2d 42 (2d Cir. 1991)...................................................................................4

Davidson v. Coughlin,
631 N.Y.S.2d 949 (4th Dep't 1995)....................................................................14

DiBlasio v. Novello,
413 F. App'x 352 (2d Cir. 2010) cert. denied, 132 S. Ct. 411 (2011)....................10

Dixon v. Goord,
224 F. Supp. 2d 739 (S.D.N.Y. 2002).................................................................14

Edwards v. Balisok,
520 U.S. 641 (1997).........................................................................................18

Feliciano v. Selsky,
658 N.Y.S.2d 147 (3rd Dep't 1997) ...................................................................14

Fludd v. Fischer,
    2012 U.S. Dist. LEXIS 122924 (W.D.N.Y. Aug. 28, 2012) ...........................13, 20

Green v. Selsky,
    685 N.Y.S.2d 127 (3rd Dep't 1999) .......................................................................14

Harmelin v. Michigan,
    501 U.S. 957 (1991)...............................................................................................11

Hattley v. Goord,
    2006 U.S. Dist. LEXIS 13622 (S.D.N.Y. Mar. 27, 2006) ....................................13

Heck v. Humphrey,
    512 U.S. 477 (1994)...............................................................................................18

Horne v. Coughlin,
    155 F.3d 26 (2d Cir. 1998)..................................................................................9, 10

Hutto v. Davis,
    454 U.S. 370 (1982)...............................................................................................11

Jackson v. Fischer,
    935 N.Y.S.2d 727 (3rd Dep't 2011) .....................................................................13

Johnson v. Goord,
    776 N.Y.S.2d 914 (3rd Dep't 2004) .....................................................................13

Monroe v. Beard,
    536 F.3d 198 (3d Cir. 2008)..................................................................................12

Morris v Travisono,
    549 F. Supp. 291 (D.R.I. 1982) *aff'd* 707 F.2d 28 (1st Cir. 1983) ........................14

Neree v. O'Hara,
    2011 WL 3841551 (N.D.N.Y. July 20, 2011) ................................................12, 14

Palkimas v. Bella,
    2013 U.S. App. LEXIS 2374 (2d Cir. Feb. 4, 2013) ...........................................7, 8

Pearson v. Callahan,
    555 U.S. 223 (2009) .............................................................................................6, 7

Peoples v. Fischer,
    2012 U.S. Dist. LEXIS 62428 (S.D.N.Y. May 3, 2012) ....................................2, 14

Poe v. Leonard,
    282 F.3d 123 (2d Cir. 2002)..................................................................................23

Porter v. Coughlin,
    421 F.3d 141 (2d Cir. 2005) .................................................1

Ray v. Williams,
    2005 U.S. Dist. LEXIS 45513 (D. Or. Mar. 24, 2005).........................20

Redd v Wright,
    597 F. 3d 532 (2d Cir. 2010)..................................................6

Reichle v. Howards,
    132 S. Ct. 2088 (2012)...................................................6, 7

Rhodes v. Champman,
    452 U.S. 337 (1981)..................................................8, 9, 24

Richardson v. Dep't of Corr. of NYS,
    2011 U.S. Dist. LEXIS 103871 (S.D.N.Y. Sept. 13, 2011)...............2, 14

Rivera v. Pataki,
    2005 WL 407710 (S.D.N.Y. Feb. 7, 2005)....................................3

Sandin v. Connor,
    515 U.S. 472 (1995).......................................................16

Saucier v. Katz,
    533 U.S. 194 (2001...................................................7, 10

Shannon v. Selsky,
    2005 WL 578943 .........................................................13

Shepard v. Coughlin,
    1993 WL 77385 (S.D.N.Y. Mar. 16, 1993) .................................24

Sierra v. Dubray,
    871 N.Y.S.2d 473 (3rd Dep't 2009) ......................................13

Silverstein v. Bureau of Prisons,
    704 F. Supp. 2d 1077 (D. Colo. 2010)....................................14

Sira v. Morton,
    380 F.3d 57 (2d Cir. 2004)...............................................16

Smith v. Coughlin,
    748 F.2d 783 (2d Cir. 1984)...............................................9

Solem v. Helm,
    463 U.S. 277 (1983)......................................................11

Superintendent v. Hill,
    472 U.S. 445 (1985).................................................................................17

Trice v. Clark,
    1996 U.S. Dist. LEXIS 6644 (S.D.N.Y. May 16, 1996) ..........................13

U.S. v. Chance,
    2012 U.S. App. LEXIS 22956 (2d Cir. Nov. 6, 2012).............................19

U.S. v. Rodriguez,
    291 F. Supp. 2d 266 (S.D.N.Y. 2003)......................................................12

U.S. v. Speight,
    75 Fed. Appx. 802 (2d Cir. Aug. 28, 2003) ............................................19

Vives v. City of New York,
    405 F.3d 115 (2d Cir. 2005) ....................................................................22

Whitley v. Albers,
    475 U.S. 312 (1986).................................................................................24

Williams v. Goord,
    829 N.Y.S.2d 277 (3rd Dep't 2007) ........................................................13

Winfield v. Trottier,
    2013 U.S. App. LEXIS 4635 (2d Cir. Mar. 6, 2013).........................18, 19

Wolff v. McDonnell,
    418 U.S. 539 (1974) ................................................................................16

Woods v. Goord,
    2002 U.S. Dist. LEXIS 7157 (S.D.N.Y. Apr. 23, 2002).........................23

Wright v. Smith,
    21 F.3d 496 (2d Cir. 1994)..............................................................7, 14, 16

**Constitution**

Eighth Amendment ........................................................................... passim

Fourteenth Amendment ..................................................................... passim

**Federal Statutes**

18 U.S.C. § 1521............................................................................................18

42 U.S.C. § 1983...............................................................................1, 18, 20

**Federal Rules**

FRCP 12(b)(6) ........................................................................................................1

FRCP 25(a)(1) .......................................................................................................3

**State Statutes**

N.Y. Penal Law § 175.35 .......................................................................................20

**State Regulations**

7 NYCRR § 270.2(B)(8)(iv) and (14)(xx) ............................................................3

7 NYCRR § 254.7 ..................................................................................................21

**OTHER AUTHORITIES**

Peter A. Crusco, *Combatting Inmates' Use of Bogus UCC-1 Lien Notices*, N.Y. LAW
    JOURNAL, Apr. 26, 2011.....................................................................................12

DOCCS' Standards of Inmate Behavior Rules 107.21 and 113.30 ................................3

## PRELIMINARY STATEMENT

Plaintiffs in this 42 U.S.C. § 1983 action contend that Eighth and Fourteenth Amendment jurisprudence creates a clearly established right barring "extraordinarily long" sentences of confinement in the Special Housing Unit ("SHU") for committing "non-violent" prison disciplinary offenses, even though neither the Supreme Court nor the Second Circuit has ever held that prisoners are constitutionally protected against SHU confinements of any particular duration. Federal and state courts have repeatedly upheld SHU penalties of similar and even longer duration than those served by plaintiffs. Accordingly, this is a textbook case for qualified immunity.

Plaintiffs are three incarcerated felons who violated prison disciplinary rules duly promulgated by the New York State Department of Corrections and Community Supervision ("DOCCS") and codified in the NYCRR to maintain safety and security and the orderly operations of prisons in New York. In accordance with DOCCS' rules and regulations pertaining to inmate discipline, which have never been invalidated by any court, plaintiffs were penalized for their disciplinary offenses with various periods of confinement in SHU. The periods of SHU confinement imposed on plaintiffs do not exceed any clearly established constitutional bounds, and no court has invalidated the departmental rules and regulations on which defendants relied in imposing the SHU penalties at issue. Plaintiffs' allegations to the contrary are simply unfounded.

As set forth below, plaintiffs' contention that the length of the SHU sentences that they received violated clearly established law is completely unsupported. Furthermore, the actions of defendants' were objectively reasonable. All defendants[1] are entitled to qualified immunity and plaintiffs' monetary damages claims must be dismissed.[2]

---

[1]  Defendant Fischer is not moving at this time because he was not sued for monetary damages. Pursuant to the Court's briefing schedule, the remaining defendants now move to dismiss the monetary damages claims contained in the Corrected Third Amended Complaint pursuant to FRCP 12(b)(6) on the grounds of qualified immunity. In making this motion, these defendants do

## STATEMENT OF FACTS

The named plaintiffs bring this putative class action seeking monetary damages on their own behalf and injunctive and declaratory relief on behalf of a putative class of DOCCS inmates. Each of the named plaintiffs spent time in SHU as a result of discipline imposed for violating DOCCS disciplinary rules. Plaintiffs allege that they received unconstitutionally lengthy SHU sentences in light of the infractions committed.

## Plaintiff Leroy Peoples[3]

Plaintiff Leroy Peoples ("Peoples") is a violent serial rapist currently serving an indeterminate term of 13 to 16 years in the custody of DOCCS (Corrected Third Amended Class Action Complaint ("Compl.") ¶ 64) following his conviction of first degree rape in Queens County. He is currently housed in Attica Correctional Facility, in the Western District of New York. In October 2009, while Peoples was incarcerated in Green Haven Correctional Facility ("Green Haven"), defendant Superintendent William Lee became aware that Peoples had filed fraudulent Uniform Commercial Code ("UCC") lien instruments against prosecutors in the Queens County District Attorney's Office. (See Compl. ¶ 67.) Subsequently, UCC documents were seized from Peoples' cell and he was served with a misbehavior report. (Id. ¶¶ 66-67.) The filing

---

not waive objection to venue in this district or the right to make a separate motion to dismiss based on grounds other than qualified immunity in defendants' anticipated April 23, 2013 submission.

[2] While the issue will be addressed in defendants' anticipated April 23 motion to dismiss, defendants Lee and Perez have been dismissed as defendants on the asserted claims, with prejudice, by this Court for lack of personal involvement in both Peoples v. Fischer, No. 11 CV 2694 (SAS), 2012 U.S. Dist. LEXIS 62428, at *35 (S.D.N.Y. May 3, 2012), and Richardson v. Dep't of Corr. of NYS, No. 10 CV 6137 (SAS), 2011 U.S. Dist. LEXIS 103871, at *20 (S.D.N.Y. Sept. 13, 2011) (a prior voluntarily dismissed lawsuit). While defendants reserve the right to argue *res judicata* and/or *collateral estoppel* in their April 23 submission, the Court may now dismiss these defendants from this lawsuit on the strength of the Court's previous rulings.

[3] The following Statement of Facts derives from Plaintiffs' Corrected Third Amended Complaint. Defendants do not agree with plaintiffs' version of these alleged facts.

of fraudulent UCC liens and the unauthorized possession of UCC materials violates Rules 107.21 and 113.30 of DOCCS' Standards of Inmate Behavior (7 NYCRR § 270.2(B)(8)(iv) and (14)(xx)).

After a disciplinary hearing conducted by now-deceased Commissioner's Hearing Officer Curtis Drown,[4] Peoples was found guilty of the charges against him and received a penalty of 36 months of SHU confinement and a recommended loss of 72 months of good time credits. (Id.) Peoples alleges that defendant Lee violated his rights, because he had a constitutional obligation to exercise his alleged discretion to modify or vacate Peoples' SHU penalty at that time (id. ¶ 71), despite Peoples being transferred from Green Haven a few weeks after the disciplinary sentence.

Peoples filed an administrative appeal with Norman Bezio, then DOCCS' Director of Special Housing and Inmate Discipline, which defendant Bezio denied. (Id. ¶ 73.) On November 5, 2009, Peoples was transferred from Green Haven to Upstate Correctional Facility ("Upstate"), where he continued his SHU confinement. (Id. ¶ 72.) Peoples alleges that defendant David Rock, the Superintendent of Upstate, also violated Peoples' rights by not modifying or vacating Peoples' SHU penalty. (Id.) Peoples ultimately served approximately 26 months in SHU after reductions by Upstate officials. (Id. ¶ 74.)

**Plaintiff Dewayne Richardson**

Plaintiff Dewayne Richardson ("Richardson") is serving a 7 year determinate sentence (Compl. ¶ 136) for Assault in the Second Degree. On February 19, 2010, corrections officers discovered unauthorized UCC documents in Richardson's cell in Downstate Correctional Facility ("Downstate"), where he was then incarcerated. (Id. ¶ 138.) Disciplinary proceedings followed (id. ¶¶ 138-39), pursuant to DOCCS' disciplinary rules prohibiting the unauthorized possession

---

[4] As more than 90 days passed since the August 10, 2012 service of a Suggestion of Death and plaintiff naming the Estate of Curtis Drown in the December 6, 2012 Second Amended Complaint, the Estate has been untimely substituted in this action and any effort to do so must be rejected. See FRCP 25(a)(1); Rivera v. Pataki, 2005 WL 407710, at *16 (S.D.N.Y. Feb. 7, 2005) (dismissal under FRCP 25(a)(1)).

and filing of UCC documents, as explained above. On March 5, 2010, defendant Cavaleri conducted Richardson's disciplinary hearing and found him guilty of "unauthorized possession of UCC documents and unauthorized filing of a document creating a lien." (Id. ¶ 140.) Defendant Cavaleri imposed a 36-month SHU penalty and recommended a 6-month loss of good time credit. (Id.) Richardson alleges that defendant Superintendent Perez violated his civil rights by not exercising her alleged discretion to modify or vacate Richardson's SHU penalty. (Id. ¶ 142.)

On April 12, 2010, on appeal, defendant Bezio reduced Richardson's SHU penalty to 18 months. (Compl. ¶ 143.) Richardson also alleges that current Director of Special Housing and Inmate Discipline, defendant Albert Prack ("defendant Prack"), "reviewed and affirmed [Richardson's] SHU sentence," and thus also violated his rights. (Id.)

On March 19, 2010, Richardson was transferred to Southport Correctional Facility ("Southport"), where he served the remainder of his SHU penalty. He alleges that defendant Superintendent Patrick Griffin violated his civil rights because he did not exercise his discretion to modify Richardson's SHU penalty. Id. ¶ 144. Southport staff did, in fact, reduce Richardson's SHU time for good behavior, and he ultimately served approximately 14 months of his reduced 18 month penalty. (See id. ¶ 145.) Now at Mid-State Correctional Facility, Richardson is serving 60 days in SHU for drug possession, from which he will be released on April 23, 2013. (Id. ¶ 160)

**Plaintiff Tonja Fenton**

Plaintiff Tonja Fenton ("Fenton") is currently serving an indeterminate sentence of 1 ½ to 3 years for fraud and grand larceny convictions. Fenton concedes that she committed three disciplinary offenses in 2012 that subjected her to SHU penalties.

The first infraction involved Fenton giving "her domestic partner's credit card information to another prisoner," who used the credit card to purchase various items. (Compl. ¶ 103.) In June 2012, after conducting a disciplinary hearing, defendant Collins of Albion Correctional Facility

("Albion") found Fenton guilty of "soliciting, money/authorized property, phone program violation, and facility correspondence violations."  (Id.)  Defendant Collins imposed a penalty of 12 months SHU confinement and a 12-month loss of good time credit.  (Id.)

The second violation involved Fenton falsely accusing an Albion corrections officer of sexual assault in September 2012.  (See id. ¶ 104.)  After Albion officials conducted an investigation, including reviewing videotape footage and conducting several interviews, and subsequently concluded that the sexual assault accusation was false, Fenton was served with a misbehavior report.  (Id. ¶ 107.)  Defendant Deputy Superintendent Diane Catalfu conducted Fenton's disciplinary hearing in October 2012 and found her guilty of making false statements, sentencing her to 6 months in SHU, with 3 months suspended and 6 months deferred.  (Id.)

The third offense also occurred in September 2012, when Fenton mailed a food sample to the U.S. District Court for the Western District of New York, which she concedes alarmed court officials who believed that it was a hazardous substance.  (Compl. ¶¶ 108-109.)  After conducting a disciplinary hearing, defendant Collins found Fenton guilty of making threats and sentenced her to 6 months in SHU, with 3 months suspended and 6 months deferred.  (Id. ¶ 110.)

Fenton alleges that defendant William Powers, Albion's Superintendent, violated her rights by not exercising his alleged discretionary authority to vacate or modify her SHU penalties.  (Id. ¶ 113.)  Fenton concedes that defendant Sabrina Kaplan ("defendant Kaplan"), Superintendent of Bedford Hills Correctional Facility, where Fenton was transferred on November 6, 2012 (id. ¶ 114), "suspended the remaining 97 days of [Fenton's] first [12 month] SHU sentence," released her from SHU on March 1, 2013, and suspended her second and third SHU sentences entirely.  (Id. ¶ 115.)  As a result, Fenton has only served 8 months and 23 days of her initial SHU sentence and has not served a single day in SHU with respect to her subsequent disciplinary proceedings.  Nevertheless, Fenton sues defendant Kaplan for monetary damages on the theory that defendant Kaplan "continue[s] to have the authority and ability to enforce or vacate [Fenton's] suspended

SHU sentences." (Id.)  Fenton also claims that defendant Prack violated her constitutional rights by affirming each of her SHU penalties on administrative appeal.  (Id. ¶ 116.)

**ARGUMENT**

At the very least, the discipline of plaintiffs herein presents a clear case for qualified immunity.  Defendants here should be protected from liability because there is no clearly established right against such sentences and to the extent that such a principle could potentially be deemed clearly established (which defendants dispute), it was reasonable for an official in any of defendants' positions to have believed that no law proscribed their conduct.

**I.     THERE IS NO CLEARLY ESTABLISHED LAW SUPPORTING PLAINTIFFS' CLAIMS, AND THUS, QUALIFIED IMMUNITY MANDATES DISMISSAL OF ALL MONETARY DAMAGES CLAIMS AGAINST DEFENDANTS**

**A.     THE GENERAL STANDARD FOR DETERMINING "CLEARLY ESTABLISHED" LAW**

Qualified immunity must be granted to defendants when no clearly established law proscribes their conduct.  "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was *clearly established* at the time of the challenged conduct."  Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012) (emphasis added, citation omitted). A court may grant qualified immunity based on a lack of "clearly established" law without resolving whether a purported right exists at all.  Id. (citing Pearson v. Callahan, 555 U.S. 223, 227 (2009).

In determining whether a right was clearly established at the time a defendant acted, the Supreme Court has noted that "clearly established law [should not be defined] at a high level of generality." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2084 (2011); see also Redd v Wright, 597 F. 3d 532, 536 (2d Cir. 2010) ("the Supreme Court has expressly cautioned against framing the constitutional right at *too broad a level of generality*").  "The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in [the] defendant's

position should know about the constitutionality of the conduct. . . . [W]e use an objective standard for judging the actions of state and federal officials." Coollick v. Hughes, 699 F.3d 211, 220 (2d Cir. 2012) (internal citations and quotation marks omitted). "To be clearly established, a right must be sufficiently clear 'that *every* 'reasonable official would [have understood] that what he is doing violates that right." Reichle, 132 S. Ct. 2093 (emphasis added and quotation omitted). Accordingly, the determination of whether a right was clearly established at the relevant time must "be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled on other grounds, Pearson, 555 U.S. at 233.

The Second Circuit and Supreme Court have considered, beyond whether the right in question was defined with reasonable specificity, whether that right is specifically delineated by Supreme Court or Second Circuit law, and whether under that preexisting law every reasonable defendant or official would have understood that his or her acts were unlawful. Reichle, 132 S. Ct at 2093 (emphasis added); Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003); Wright v. Smith, 21 F.3d 496, 500 (2d Cir. 1994); Benitez v. Wolf, 985 F.2d 662, 666 (2d Cir. 1993). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing clearly violates that right." Anderson, 483 U.S. at 640.

For example, in Palkimas v. Bella, 2013 U.S. App. LEXIS 2374 (2d Cir. Feb. 4, 2013) (summary order), the Second Circuit affirmed the grant of qualified immunity where no Supreme Court or Second Circuit case law had articulated the particular right at issue. In Palkimas, the appellant-plaintiff argued that the district court had erred in holding that no clearly established right had been violated when officials prepared and forwarded to two state prosecutors, at their request, a letter discussing the plaintiff, plaintiff's family and the plaintiff's history of domestic abuse. In affirming, the Second Circuit held that "there is no clear case law articulating the contours of the right in this Circuit that would inform Defendants that the disclosure in this case

violated Palkimas's right," noting that "[t]he existence of a general right to privacy does not necessarily establish the existence of the particular right in this case." Id. at **3-4 (citation omitted). The court further explained that "[the] right of privacy is clearly established 'as a broad general proposition,' but the right to be free from involuntary disclosure of [the] information . . . at issue here is not clearly established 'in a particularized sense so that the contours of the right are clear to a reasonable official.'" Id. at **4-5 (quotation omitted). Significantly, the Circuit "conclude[d] there is enough variation among the cases in this Circuit that Defendants were without clear guidance. . . . Defendants could not have known that producing the letter and providing it to the Assistant State's Attorneys, at those attorneys' request, would violate Palkimas's privacy right." Id. at *6 (citations omitted). As in Palkimas, "there is no clear case law articulating the contours of the right in this Circuit that would inform" defendants that their alleged conduct violated plaintiffs' constitutional rights, id. at *3, and furthermore, "there is enough variation among the cases in this Circuit that [d]efendants were without clear guidance" as to what length of SHU confinement may be "grossly disproportionate" in violation of the Eighth Amendment. Id. at *6. Accordingly, defendants are entitled to qualified immunity.

**B. PLAINTIFFS' SPECIFIC CLAIMS ARE NOT SUPPORTED BY CLEARLY ESTABLISHED LAW UNDER EITHER THE EIGHTH OR FOURTEENTH AMENDMENTS**

**i. EIGHTH AMENDMENT**

This Court, in previously finding that plaintiffs Peoples and Richardson may have potentially raised Eighth Amendment claims with respect to the length of their SHU confinements in their prior *pro se* proceedings, stated that the Eighth Amendment "prohibits punishments which, although not physically barbarous, 'involve the unnecessary and wanton infliction of pain,' or are grossly disproportionate to the severity of the crime." June 26, 2012 Order at pp. 2, 13 (Docket #

53) (citing <u>Rhodes v. Chapman</u>, 452 U.S. 337, 346 (1981)); <u>Richardson</u>, 10 Civ. 6137 (Docket # 41) at 15.  <u>Rhodes</u> did not involve the length of a SHU (or other disciplinary) sanction, but rather, whether inmates could be placed in double cells.  Subsequently, the Second Circuit referenced "grossly disproportionate" in <u>dicta</u> with respect to the Eighth Amendment in <u>Smith v. Coughlin</u>, 748 F.2d 783, 787 (2d Cir. 1984).  <u>See</u> June 26, 2012 Order at p. 14, n. 5.  <u>Smith</u> also did not deal with the length of a disciplinary SHU sentence, but rather, a situation where an inmate was placed in SHU-like conditions while on death row for thirteen months, after which he was released when New York's death penalty statute was declared unconstitutional.  The Circuit held that nothing about the <u>Smith</u> plaintiff's confinement violated the Eighth Amendment, and did not discuss what "grossly disproportionate" meant in the context of the Eighth Amendment and prison discipline.

The Supreme Court and Second Circuit have never set forth any specific parameters for what constitutes a "grossly disproportionate" SHU sentence.  In fact, SHU penalties of similar length to those found here have been routinely upheld by federal and state courts.  <u>See</u> decisions cited at pp. 12-14, *infra*.  Here, while there appears to be one Second Circuit decision that actually reviewed the length of the sentence imposed, indicating that a prison disciplinary sentence to SHU could *potentially* be unconstitutional under the Eighth Amendment if "grossly disproportionate," that decision provides no guidance as to the parameters of what may constitute "grossly disproportionate" in the prison disciplinary setting.

In <u>Horne v. Coughlin</u>, 155 F.3d 26 (2d Cir. 1998), the Second Circuit, in considering whether a disciplinary sanction of six months in SHU imposed on a functionally illiterate and mentally retarded inmate who asked a counselor for "a little kiss on the cheek," 155 F.3d at 32, was grossly disproportionate, determined that such a sanction *was not* grossly disproportionate. Conversely, the Circuit did not articulate, even in *dicta*, what type of sanction would be grossly

disproportionate. Moreover, the Circuit's analysis appeared to focus on the plaintiff's diminished mental capacities and whether, in that context, the sanction was grossly disproportionate, not whether, in the abstract, the sanction was unconstitutional in light of the offense.

Given the lack of precedent, the circumstances of this lawsuit are precisely the situation in which qualified immunity should be applied given that the grossly disproportionate "standard" exists, at most, in the most general terms and provides no guidance to those who are charged with imposing prison discipline. al-Kidd, 131 S. Ct. at 2084 ("clearly established law [should not be defined] at a high level of generality"); Saucier, 533 U.S. at 201 (whether a right was clearly established must "be undertaken in light of the specific context of the case, not as a broad general proposition"); DiBlasio v. Novello, 413 F. App'x 352, 356 (2d Cir. 2010) cert. denied, 132 S. Ct. 411 (2011) (finding defendant entitled to qualified immunity "given the lack of clearly established law relating to the boundaries" of the conduct at issue).

Certainly, if the Circuit found constitutional six months in SHU for a mentally retarded inmate guilty of the conduct complained of in Horne, that should end the qualified immunity inquiry here in defendants' favor, as the disciplinary infractions committed by Peoples, Richardson and Fenton were far more serious than those of the Horne plaintiff, the discipline imposed was not vastly greater in light of the more severe disciplinary violations, and none of the plaintiffs here allege the developmental disabilities considered by the Circuit in its Eighth Amendment analysis. Whatever the determination in Horne, qualified immunity should be granted to the defendants here on the grounds that no precedent proscribes the SHU sentences now at issue.

The Second Circuit's *dicta* in Horne on the duration of SHU sentences provides no guidance as to when, if ever, a SHU sentence may be considered an Eighth Amendment violation. Like the Second Circuit, the Supreme Court provides no guidance whatsoever on issues arising out

of the length of placement in SHU in relation to the offense committed, undermining plaintiff's position.  For example, in the context of criminal sentencing, in <u>Harmelin v. Michigan</u>, 501 U.S. 957 (1991), a case involving mandatory life sentences for drug possession (not prison discipline), two Justices of the Court writing the majority opinion held that, in fact, "the Eighth Amendment contains no proportionality guarantee" (<u>id.</u> at 966) with respect to the length (or type) of sentence imposed outside the context of the death penalty.  <u>Id.</u> at 994.  Hence, the parameters of what should be considered in such an analysis in *any* context, much less the specific context of prison discipline, are unclear.  Three Justices joined in the majority, but held that a very narrow and limited proportionality principle may exist for criminal sentences, but that "its precise contours are unclear" and that different jurisdictions may impose "different, yet rational, conclusions regarding the length of prison terms for particular crimes . . . . [and whether one jurisdiction] has the most severe punishment for a particular crime does not by itself render the punishment grossly disproportionate."  <u>Id.</u> at 998-1000.  Emphasizing that the parameters of such proportionality are unclear, these Justices noted that "'[a]lthough 'no penalty is *per se* unconstitutional . . .outside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [are] exceedingly rare."  <u>Id.</u> at 1001 (citation omitted) (emphasis in original).  Similarly, other Supreme Court cases dealing with sentencing in criminal cases provide no support for the argument that the SHU sentences here were "grossly disproportionate."  <u>Compare</u> <u>Hutto v. Davis</u>, 454 U.S. 370 (1982) (upholding 40 year sentence for possession with intent to distribute nine ounces of marijuana) <u>with</u> <u>Solem v. Helm</u>, 463 U.S. 277 (1983) (finding that life sentence without the possibility of parole was grossly disproportionate where crime involved passing a "no account" check for $100).  These extremes do not arise in this case where the confinements complained of are 26 months, 14 months and less than 9 months, respectively.

Further demonstrating that the rights plaintiff claim exist are not, in fact, clearly established, are the numerous lower court decisions that support defendants' position. In <u>Neree v. O'Hara</u>, 2011 WL 3841551 (N.D.N.Y. July 20, 2011), for example, a Northern District of New York court upheld a cumulative penalty of 18 months served in SHU in a case in which an inmate was disciplined for UCC lien-related violations,[5] none of which actually involved the filing of UCC liens on public officials as occurred here.[6] Richardson served approximately 14 months for more serious offenses than the <u>Neree</u> plaintiff (who served 18 months) and Peoples served approximately 26 months for the offense of successfully filing multiple fraudulent liens on public officials (and possessing many more as-of-yet unfiled lien materials naming other government officials).

---

[5] In New York State and around the country, inmates have been engaging in schemes to defraud, harass and intimidate federal, state, and local government employees through the misuse of the UCC. This conduct has been referred to as "paper terrorism" and can have dire consequences on a victim's credit rating and ability, for example, to obtain credit or to maintain preferred interest rates that are dependent on maintaining a certain credit score. The schemes involve inmates "filing financing statements under Article 9 of the UCC, which sets forth a process for perfecting security interests in property." <u>Monroe v. Beard</u>, 536 F.3d 198, 202-03 (3d Cir. 2008). These are "bogus" and fraudulent liens by which "an inmate seeks to harass, annoy and retaliate against those he blames for the consequences of his actions, including the police, corrections officers, prosecutors, judges, and[] . . . defense attorneys." Peter A. Crusco, *Combatting Inmates' Use of Bogus UCC-1 Lien Notices*, N.Y. LAW JOURNAL, Apr. 26, 2011, at 5. For example, the Honorable Robert W. Sweet was the victim of such fraudulent lien filing (<u>see</u> <u>U.S. v. Rodriguez</u>, 291 F. Supp. 2d 266, 268 (S.D.N.Y. 2003)) as were other officials.

[6] Plaintiff Peoples' illegal filing of these U.C.C. liens caused cognizable injury. Public officials against whom the liens were filed were required to initiate court proceedings to have the liens nullified. While these public officials were apparently able to obtain free representation from their employers to pursue these civil remedies, not all public officials or non-public individuals are similarly situated. Nullifying such liens through the required court proceedings could cost thousands of dollars in lawyer fees aside from the potential financial chaos such a lien might cause under certain circumstances, such as a rejection for a home loan/refinancing or other financial loss. The filing of felonious liens by plaintiff Peoples, for example, against anyone -- from a government official to his multiple rape victims who live in terror of him -- is considered serious by DOCCS and the rules impose serious disciplinary consequences.

Moreover, federal and state courts in New York have routinely upheld significant SHU penalties for offenses that can be characterized as "non-violent" as the Court has termed Peoples' and Richardson's offenses.  See June 26, 2012 Order at p. 15.  For example, in Shannon v. Selsky, 2005 WL 578943 (S.D.N.Y. Mar. 10 2005), the court took no issue with a 20-month SHU sentence in connection with planning to organize a work stoppage and other protest-related activities.  A Western District of New York court also took no issue with an inmate being placed in administrative segregation in SHU for at least four years in connection with UCC lien filing activities.  See Fludd v. Fischer, 2012 U.S. Dist. LEXIS 122924, at *26 (W.D.N.Y. Aug. 28, 2012); see also Hattley v. Goord, 2006 U.S. Dist. LEXIS 13622 (S.D.N.Y. Mar. 27, 2006) (rejecting Eighth Amendment argument with respect to 120 days spent in SHU for violation of a direct order and work stoppage).  Indeed, this Court has upheld 150 days (reduced from an initial 180 day sentence) in SHU in relation to conduct that did not rise to the level of assault or weapons possession.  See Trice v. Clark, 1996 U.S. Dist. LEXIS 6644 (S.D.N.Y. May 16, 1996) (rejecting Eighth and Fourteenth Amendment challenges to SHU confinement).

State court decisions also provide numerous examples of courts upholding lengthy SHU sentences for "non-violent" conduct.  See Jackson v. Fischer, 935 N.Y.S.2d 727, 729 (3rd Dep't 2011) (36 months in SHU and 36 months of loss of good time for contraband cell phone during visitation "was not so shocking to one's sense of fairness to be excessive"); Sierra v. Dubray, 871 N.Y.S.2d 473, 474 (3rd Dep't 2009) (18 months in SHU upheld stemming from urine testing positive for drugs); Williams v. Goord, 829 N.Y.S.2d 277, 278 (3rd Dep't 2007) (15 months in SHU and 24 months loss of good time for sending anonymous sexual letters "was not so shocking to one's sense of fairness to be excessive"); Johnson v. Goord, 776 N.Y.S.2d 914, 915 (3rd Dep't 2004) (upholding 18 months in SHU and 24 months loss of good time for attempted drug possession, smuggling and abuse of telephone privileges); Barakat v. Goord, 707 N.Y.S.2d 509, 510 (3rd Dep't 2000) (upholding 24 months in SHU and 12 months loss of good time for

conspiracy to introduce contraband); <u>Green v. Selsky</u>, 685 N.Y.S.2d 127, 128 (3rd Dep't 1999) (upholding 17 months in SHU for inmate refusing to comply with a direct order to move); <u>Feliciano v. Selsky</u>, 658 N.Y.S.2d 147, 148 (3rd Dep't 1997) (30 months in SHU (reduced from 39 months) was not excessive punishment for selling narcotics and abuse of telephone privileges); <u>Davidson v. Coughlin</u>, 631 N.Y.S.2d 949, 950 (4th Dep't 1995) (24 months in SHU not "shocking to one's sense of fairness" for completing several magazine subscriptions in facility employees' names causing them to receive and be billed for unwanted magazines).[7]

Similarly, Fenton's SHU sentences do not violate any constitutional precept. All of her SHU sentences have been suspended (including the entirety of the two separate and unrelated SHU sentences she received in October 2012, for which she has never served a day in SHU), so any such unserved SHU time (and SHU time that is likely to never be served) should not be considered in any Eighth Amendment analysis. <u>See Dixon v. Goord</u>, 224 F. Supp. 2d 739, 748 (S.D.N.Y. 2002) (analyzing time actually served, not length of initial sentence). Fenton, who has been released from SHU, only served 8 months and 23 days in SHU, and this sentence was solely

---

[7]  When the Court previously addressed the issue of qualified immunity on defendants' motion to dismiss Peoples' *pro se* complaint, it cited several non-Supreme Court and non-Second Circuit decisions in support of the argument that the sentence Peoples received could be deemed as grossly disproportionate to his offense. Such decisions are insufficient to create "clearly established" rights. <u>See Anderson</u>, 317 F.3d at 197; <u>Wright</u>, 21 F.3d at 500; <u>Benitez</u>, 985 F.2d at 666. Moreover, those decisions hardly provide any guidance here in that they largely address 8.5 to 27 year sentences in solitary confinement in other states, not New York SHU conditions. Moreover, in <u>Silverstein v. Bureau of Prisons</u>, 704 F. Supp. 2d 1077, 1098-99 (D. Colo. 2010), cited by the Court, the Colorado court held that *27 years* in solitary confinement may raise Eighth Amendment issues. At the same time, that court also dismissed all individual defendants pursuant to the doctrine of qualified immunity, acknowledging that any such Eighth Amendment right was not clearly established. Putting aside the obvious and enormous differences between the <u>Silverstein</u> SHU sentence and those at issue here, while New York defendants certainly have no obligation to follow the decisions of Colorado courts, <u>Silverstein</u> was decided *after* the disciplinary decisions regarding plaintiffs Peoples and Richardson were made. And in <u>Morris v. Travisono</u>, 549 F. Supp. 291 (D.R.I. 1982) *aff'd* 707 F.2d 28 (1st Cir. 1983), the First Circuit affirmed the removal of an inmate from isolation after 8.5 years because the duration of confinement violated a prior consent decree. The First Circuit expressly did not decide the Eighth Amendment issues in that case.

related to her discipline for the impermissible use of credit card information belonging to a non-inmate and related infractions. While Fenton may characterize the matter as trivial or not her fault, the discipline imposed was hardly inappropriate, much less a "grossly disproportionate" violation of any clearly established rights. Prison officials certainly have a legitimate penological interest in preventing inmates from using the credit card information of others (or assisting other inmates in doing so) and having items sent to the prison with that credit card information.

Moreover, plaintiffs are unable to point to any clearly established law stating that SHU sentences must only be reserved for infractions based on violence or that otherwise result in a specific threat to the safety or security of the prison. If Peoples or Richardson, rather than being caught filing or attempting to file UCC liens had, instead, been caught conspiring with those outside the prison to murder or injure their former prosecutors, judges and victims, there would be no doubt that lengthy SHU sentences would be appropriate (and necessary) even though these actions did not threaten the safety or security of the prison or its inhabitants. Indeed, had the intended crimes involved a property crime such as burning down the homes of their former prosecutors, judges and victims when they were not home, the seriousness of the conduct would still deserve harsh punishment, though not a threat to prison security.

Finally, there is no clearly established obligation on the part of defendants who were not involved in imposing and affirming the discipline at issue (such as Superintendents Perez, Lee, Rock, Powers, Griffin and Kaplan) to release plaintiffs from SHU and void their disciplinary sentences. This would require them to recognize these types of sentences as unconstitutional when the courts in New York do not. Moreover, these defendants do not have the disciplinary record before them and are not charged with analyzing it. As discussed herein (<u>see</u> pp. 22-23, *infra*), such an undertaking would be enormous given the large number of disciplinary proceedings that would need to be reviewed in detail. Accordingly, these defendants are further

protected by the doctrine of qualified immunity.

In sum, the total lack of the required specific guidance from the Supreme Court or Second Circuit, rather than merely generalized (at best) *dicta*, shows that there is no clearly established law supporting plaintiffs' position here. This lack of clearly established law is further emphasized by the fact that numerous other lower courts decisions expressly support defendants' position. Accordingly, a grant of qualified immunity is mandated on plaintiffs' Eighth Amendment claim.

## ii.     <u>FOURTEENTH AMENDMENT</u>

Like the Eighth Amendment, no clearly established law requires any quantum of evidence supporting SHU sentences of any particular length under the Fourteenth Amendment. While each plaintiff likely served sufficiently lengthy sentences to potentially implicate <u>Sandin v. Connor</u>, 515 U.S. 472 (1995), that is simply the threshold to determine whether procedures utilized in the prison disciplinary hearing were sufficient under the Fourteenth Amendment.[8] Moreover, this putative class action does not seek to challenge the manner in which DOCCS conducts its disciplinary hearings, but rather, the imposition of lengthy SHU sentences as a result of those disciplinary hearings. (Complaint ¶ 1.) Accordingly, what is being challenged under the Fourteenth Amendment is the length of the SHU sentences imposed on these plaintiffs, presumably because the Court allowed Peoples' Fourteenth Amendment claim to proceed based on the premise that there was arguably "no evidence" to support Peoples' lengthy disciplinary sentence in SHU (<u>see</u> May 3, 2012 Order at p. 28), not that there was not "some evidence" to support finding him guilty of the charges. <u>See</u> <u>Superintendent v. Hill</u>, 472 U.S. 445, 454 (1985)

---

[8] The Corrected Third Amended Complaint does not make any factual allegations about any of plaintiffs' disciplinary hearings that support a procedural due process claim. For example, plaintiffs do not allege that they were denied key witnesses or evidence or that the hearing officers were unconstitutionally biased or rendered decisions that inadequately discussed the charges in question and the evidence relied upon. <u>See</u> <u>Sira v. Morton</u>, 380 F.3d 57, 69 (2d Cir. 2004) (<u>citing</u> <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563-67 (1974)).

(requiring some evidence in the record).  This Court's prior Fourteenth Amendment analysis, in disregarding the "some evidence" standard established in <u>Hill</u>, which only concerned findings of guilt in inmate disciplinary hearings, not types of disciplinary sentences, establishes grounds for qualified immunity.  Indeed, before voluntarily dismissing his earlier Southern District of New York action regarding his discipline, Richardson was not, in fact, pursuing any due process claim. Nor was Fenton pursuing a due process claim in her prior, voluntarily dismissed, Western District of New York action.[9]

There is, in any event, no Supreme Court, Second Circuit or otherwise controlling precedent stating that the federal due process "some evidence" standard of <u>Hill</u> applies to examining the length of a SHU sentence.  In light of the lack of any Second Circuit or Supreme Court authority supporting this application of the "some evidence" standard, it cannot be said that there are any "clearly established" rights under the Fourteenth Amendment to a SHU sentence of any particular duration as a matter of federal or constitutional law.  Moreover, the numerous decisions already cited herein demonstrating how numerous courts have routinely upheld lengthy SHU sentences for "non-violent" conduct (including the filing, attempted filing and possession of UCC lien materials), further demonstrate that there is no clearly established law limiting the duration of a SHU sentence for prison disciplinary infractions.   Accordingly, defendants herein are also entitled to qualified immunity with respect to any Fourteenth Amendment claim.[10]

---

[9]  In any event, based on plaintiff  Fenton's allegations in the Corrected Third Amended Complaint, there was certainly "some evidence" to support findings of guilt with respect to the disciplinary determinations at issue.  <u>Superintendent v. Hill</u>, 472 U.S. 445, 454-56 (1985).  If necessary, these arguments will be more fully addressed in defendants' April 23 submission.

[10]  Unlike Fenton, Richardson and Peoples do not specifically waive all claims regarding lost good time credits, just monetary damages flowing from them. Accordingly, as neither of these defendants had these charges expunged or reversed, any due process claims raised by these defendants are again barred by <u>Heck v. Humphrey</u>, 512 U.S. 477, 489 (1994) (requirement that discipline be reversed does not just "engraft an exhaustion requirement upon § 1983, but rather

## II. EVEN IF THE COURT SOMEHOW WERE TO FIND A CLEARLY ESTABLISHED RIGHT, DEFENDANTS' CONDUCT WAS OBJECTIVELY REASONABLE

### A. GENERAL STANDARD FOR FINDING ACTIONS OBJECTIVELY REASONABLE

Even if the Court determines that a clearly established right has been violated (which is not the case), qualified immunity also protects officials who "act in ways they reasonably believe to be lawful." Anderson v. Creighton, 483 U.S. 635, 641 (1987); see also Winfield v. Trottier, 2013 U.S. App. LEXIS 4635, at *18 (2d Cir. Mar. 6, 2013) (qualified immunity applies where it was objectively reasonable for a defendant to believe that he was not violating clearly established law). Here, given the numerous New York state and federal decisions upholding lengthy SHU sentences for non-violent offenses, anyone in the position of the defendants herein, all of whom were involved in either imposing discipline or potentially reviewing discipline imposed by others, would have had no basis to believe that they were violating the law with respect to plaintiffs.

### B. DEFENDANTS' SPECIFIC ACTIONS WERE OBJECTIVELY REASONABLE UNDER EITHER THE EIGHTH OR FOURTEENTH AMENDMENTS

#### i. EIGHTH AMENDMENT

The Second Circuit's recent decision in Winfield demonstrates how a defendant's conduct may be viewed as objectively reasonable and has many similarities to the issues presented here. In reversing the district court's denial of qualified immunity, the Second Circuit held that that the district court had "defined the right at a level so general as to be 'insufficiently clear.'" 2013 U.S. App. LEXIS 4635, at *17. Winfield involved a state trooper who, after pulling over a motorist for speeding and obtaining her consent to search her car for contraband, read a piece of mail contained in an envelope in the car. The lower court had defined the right as follows: "It is a violation of a

---

den[ies] the existence of a cause of action" absent reversal) and Edwards v. Balisok, 520 U.S. 641 (1997) (applying Heck to prison disciplinary proceeding).

suspect's Fourth Amendment rights for a consensual search to exceed the scope of the consent given." Id. at **17-18. But the Circuit rejected that statement of the right at issue and defined the right much more narrowly: "It is a Fourth Amendment violation when a police officer reads a suspect's private papers, the text of which is not in plain view, while conducting a search authorized solely by the suspect's generalized consent to search the area in which the papers are found." Id. at *18. Because no Second Circuit case had previously so held, id., the defendant's actions were "'objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken,'" and accordingly, the defendant was entitled to qualified immunity. Id. (quotation omitted). As was the case in Winfield, defendants' actions were "objectively legally reasonable" in light of the lack of any clearly established law holding that their conduct offended the Eighth Amendment. Id. Here it was objectively reasonable for all involved in disciplining plaintiffs (defendants Cavaleri, Collins, Catulfo and Drown (through his estate)), reviewing plaintiffs' disciplinary appeals (Prack and Bezio), or functioning as the superintendents of the facilities in which plaintiffs were housed (Lee, Rock, Perez, Griffin, Powers and Kaplan) to have believed that the discipline in question was objectively reasonable.

Here it was objectively reasonably for all of the relevant defendants to have believed that the SHU sentences being served by Peoples and Richardson were constitutional. For example, conduct involving UCC liens, if prosecuted by the State, would have been a Class E Felony. If the liens had been filed on federal officials, the conduct surrounding each lien would have been a federal felony, each lien filing punishable by up to ten years in prison. See, e.g., U.S. v. Chance, 2012 U.S. App. LEXIS 22956, at *5 (2d Cir. Nov. 6, 2012) (65 month sentence for filing retaliatory UCC lien affirmed); U.S. v. Speight, 75 Fed. Appx. 802, at *1 (2d Cir. Aug. 28, 2003) (affirming 72 month sentence for filing fraudulent UCC liens on federal judge and officials); 18 U.S.C. § 1521 (filing fraudulent UCC liens on federal official punishable by up to ten years of imprisonment); N.Y. Penal Law § 175.35 (filing a fraudulent UCC lien is a Class E felony). If the

conduct at issue could be punishable by many additional years in prison, it was objectively reasonable to have believed that significant SHU time could be imposed for the same conduct.

Even without considering the length of sentences that could result from potential criminal penalties (and their many years of additional prison time), it simply cannot be said it was objectively unreasonable for any official in any of the defendants' positions to have believed that serving 26 or 14 months in SHU was unconstitutional in light of the offenses committed. Given existing decisions cited herein, and most significantly, the fact that another federal court in the Second Circuit has upheld 18 months in SHU under similar circumstances, and a Second Circuit decision upholding six months in SHU for a mentally retarded inmate who requested a "kiss on the cheek," it was reasonable to believe that precedent did not proscribe defendants' alleged conduct.

This Court has previously raised the issue of whether the length of the time spent in disciplinary confinement in SHU by Peoples and Richardson (approximately 26 and 14 months, respectively, reduced from 36 month sentences), in light of the "non-violent" infractions committed that the Court indicated may not pose a threat to the safety of others or the security of the prison, could potentially be unconstitutional. <u>See</u> June 26, 2012 Opinion at pp. 3, 15. Courts have, in fact, held that the threatened and/or actual filing of fraudulent UCC liens on corrections and other officials can, in fact, be a threat to the safety and security of a prison. For example, a Western District of New York court held that an inmate who had a history of filing fraudulent liens on such public officials could be held in administrative segregation under SHU conditions because the inmate "would be a threat to the safety and security of the facility if allowed to reenter the general population" provided that, as required under DOCCS' administrative segregation rules, the inmate receive periodic reviews to determine whether he continued to be a threat. <u>See</u> <u>Fludd v. Fischer</u>, 2012 U.S. Dist. LEXIS 122924, at *26 (W.D.N.Y. Aug. 28, 2012). In addition, it appears that the inmate in <u>Fludd</u> had been held in administrative segregation under these conditions for at least *four years* given the history recited in the decision. <u>See</u> <u>also</u> <u>Ray v. Williams</u>, 2005 U.S.

20

Dist. LEXIS 45513, at *19 (D. Or. Mar. 24, 2005) (holding that allowing inmates to possess materials showing them how to file liens on corrections staff and other public officials would weaken the ability of corrections staff to maintain order).

In this case, the hearing officers (Drown, Cavaleri, Collins and Catulfo) were functioning in an environment where significant SHU sentences for purportedly "non-violent" conduct were routinely upheld as constitutional by the courts. Officials in such a position, therefore, would not have believed that they were acting in an unconstitutional manner by imposing a lengthy SHU sentence for any of the conduct at issue in this case. In addition, these defendants were operating in an environment where the full length of any initial SHU sentence is often not served for a variety of reasons such as reduction on administrative appeal, good behavior or a discretionary review, all of which provides a reasonable basis for any such official to believe that the time actually served would often be significantly less than the time imposed. In fact, all plaintiffs had their sentences modified, with Peoples having his time reduced by ten months, Richardson having his time reduced by 22 months and Fenton having her time reduced/suspended by 15 months.

Moreover, the SHU sentences in question were issued pursuant to a valid state statute (7 NYCRR § 254.7), under which a hearing officer may sentence an inmate who commits a Tier III infraction to SHU confinement for up to the remainder of the inmate's prison term. See 7 NYCRR § 254.7; Porter v. Coughlin, 421 F.3d 141, 142 n.1 (2d Cir. 2005) ("Tier III hearings . . . may result in SHU confinement for the remainder of the inmate's prison time, as well as forfeiture of 'good time' credits"). The Second Circuit has held that:

> [A]bsent contrary direction, state officials are entitled to rely on a presumptively valid state statute until and unless the statute is declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning the law's constitutionality -- with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws.

<u>Vives v. City of New York</u>, 405 F.3d 115, 117 (2d Cir. 2005) (citation omitted).  As this regulation has never been held unconstitutional, defendants' alleged conduct in exercising their discretion, pursuant to the regulation, in imposing and reviewing plaintiffs' SHU sentences, was objectively reasonable based on the existing law.  <u>See</u> <u>Vives</u>, 405 F.3d at 117.  Moreover, the regulation certainly cannot be found to be "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws," <u>id.</u>, in light of the fact that neither the Supreme Court nor the Second Circuit has defined what constitutes a "grossly disproportionate" SHU sentence under the Eighth Amendment.

The reviewing officials (Bezio and Prack) were also operating in an environment where objectively reasonable officials in such a position could believe that their actions taken in upholding or only partially reducing lengthy SHU sentences did not violate precedent, because courts routinely upheld these lengthy sentences.  Similarly, these officers also knew that inmates who did not prevail on their administrative appeals had other avenues for having their time in SHU reduced such as good behavior and subsequent discretionary review, which occurred for all the named plaintiffs.

Finally, the Superintendent Defendants (Lee, Rock, Perez, Griffins, Powers and Kaplan) were also acting in an objectively reasonable manner given the environment where similar SHU sentences were being routinely upheld as constitutional.  It was also objectively reasonable for officials in their position to believe they were not personally involved in any purported constitutional violation stemming from discipline imposed, and administratively reviewed, by others.  Indeed, this Court has already dismissed defendants Lee and Perez for lack of personal involvement and courts routinely dismiss prison superintendents under these circumstances.[11]

---

[11]    <u>See also</u> <u>Poe v. Leonard</u>, 282 F.3d 123, 132-33 (2d Cir. 2002); <u>Woods v. Goord</u>, 2002 U.S.

Finally, with respect to the discipline imposed on plaintiffs here, there was no constitutional, or even statutory, obligation for superintendents to review the merits and factual underpinnings of the disciplinary proceedings[12] for every inmate serving SHU time in their facilities and it was objectively reasonable for these defendants not to do so. For the Upstate (Rock) and Southport (Griffin) superintendents, whose prisons consist mainly of SHU cells, that would require an enormous undertaking given the thousands of SHU inmates who may pass through their facilities in a given year. It would also be an enormous undertaking for the superintendents of large facilities such as Albion (Powers), Downstate (Perez) and Green Haven (Lee), where there are hundreds of disciplinary sanctions involving SHU imposed each year. DOCCS has an administrative disciplinary review process that is currently supervised by defendant Prack and it was objectively reasonable for the superintendent defendants to believe that they were not expected to duplicate that function. This would severely impact their ability to perform their jobs and it was objectively reasonable for them not to undertake this enormous responsibility.

In sum, in light of the many decisions allowing lengthy SHU sentences for "non-violent" conduct (see pp. 12-14, *supra*), as well as the lack of specificity of any controlling law, it cannot be said that defendants were not objectively reasonable in their conduct.

---

Dist. LEXIS 7157, at *24 (S.D.N.Y. Apr. 23, 2002) (even "[r]eceipt of letters or grievances ... is insufficient to impute personal involvement"). "Were it otherwise, virtually every prison inmate who sues for constitutional torts by [prison officials] could name the [supervisor] as a defendant since the plaintiff must pursue his prison remedies, and invariably the plaintiff's grievance will have been passed upon by the [supervisor]." Id.

[12] Plaintiffs also appear to be arguing that these superintendents are also obligated to undertake a complete review of each inmate's mental health and medical history and that these superintendents have an obligation to revise SHU sentences in light of such an evaluation.

## ii.    **FOURTEENTH AMENDMENT**

Given the volume of decisions upholding similar sanctions to those presented here by plaintiffs, it was also objectively reasonable for defendants to also believe that nothing they did (or did not do) violated the Fourteenth Amendment. The same analysis above (at pp. 21-23, *infra*) with respect to each type of defendants' objectively reasonable belief under the Eighth Amendment applies equally to any Fourteenth Amendment analysis.

## iii.    **DEFERENCE TO STATE INSTITUTIONS**

Another factor that should guide the Court in analyzing whether the defendants' actions were objectively reasonable is that in addressing the issues raised herein, this Court must provide the appropriate level of deference to prison officials. "In cases where prisoners challenge disciplinary treatment on Eighth Amendment grounds, courts repeatedly have pointed out that prison officials must be accorded substantial deference in adopting and enforcing measures they think necessary to preserve order in what is inherently a dangerous and volatile atmosphere." Shepard v. Coughlin, 1993 WL 77385, at *3 (S.D.N.Y. Mar. 16, 1993); see also Whitley v. Albers, 475 U.S. 312, 321-22 (1986); Bell v. Wolfish, 441 U.S. 520, 547-48 (1979) (discussing deference to state authorities on prison issues): Anderson v. Coughlin, 757 F.2d 33, 35 (2d Cir. 1985) (noting an "awareness of the relatively narrow authority of judges and the appropriate, but by no means unlimited, deference to be accorded the decisions of prison administrators"). Accordingly, "courts must bear in mind that their inquiries 'spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.'" Rhodes v. Chapman, 452 U.S. 337, 351 (1981) (quotation omitted). Thus, "courts cannot assume that state legislatures and prison officials are insensitive to the requirements of the Constitution or to the perplexing sociological problems of

how best to achieve the goals of the penal function in the criminal justice system:  to punish justly, to deter future crime, and to return imprisoned persons to society with an improved chance of being useful, law-abiding citizens."  Id. at 352.  "Eighth Amendment judgments should neither be nor appear to be merely the subjective views of judges.  To be sure, the Constitution contemplates that in the end [a court's] own judgment will be brought to bear on the question of the acceptability of a given punishment.  But such judgment[s] should be informed by objective factors to the maximum possible extent."  Id. at 346 (citations and internal quotation marks omitted).  "[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.  Judicial recognition of that fact reflects no more than a healthy sense of realism."  Wolfish, 441 U.S. at 548 n. 30 (citation omitted).  Accordingly, in light of the substantial deference to be accorded to prison officials by federal courts in making discretionary determinations, defendants' conduct was objectively reasonable.

## **CONCLUSION**

For all the foregoing reasons, defendants respectfully request that the Court dismiss all money damages claims in plaintiffs' Corrected Third Amended Complaint in their entirety and extend qualified immunity to defendants.

Dated: New York, New York                    Respectfully submitted,
       April 9, 2013

                                        ERIC T. SCHNEIDERMAN
                                        Attorney General of the State of New York
                                        Attorney for Defendants

                                        By:_____ /s/ _____
                                        JEB HARBEN
                                        CHRISTINA OKEREKE
                                        Assistant Attorneys General
                                        120 Broadway - 24th Floor
                                        New York, New York 10271
                                        (212) 416-6185