UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

LEROY PEOPLES, et al. on behalf of
themselves and all others similarly situated,

                          Plaintiffs,

      -versus-

BRIAN FISCHER, et al.

                        Defendants.

-------------------------------------------------------------X

11 Civ. 2694 (SAS)

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS-ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS, APPROVAL AND DISTRIBUTION OF THE NOTICE OF SETTLEMENT, AND APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL**

Taylor Pendergrass
Philip Desgranges
Christopher T. Dunn
NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 19th Floor
New York, NY 10004

David J. Fioccola
Jennifer K. Brown
Kayvan B. Sadeghi
Daniel Matza-Brown
Adam J. Hunt
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019

Alexander A. Reinert
55 Fifth Avenue, Room 1005
New York, NY 10003

Dated: December 16, 2015

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

   I.    Factual and Procedural Background ..........................................1

       A.  Litigation History........................................................1

       B.  Settlement Negotiations ..............................................2

   II.    Settlement Terms ....................................................................2

       A.  Summary of Class-wide Relief ...................................2

       B.  Attorneys' Fees, Costs, and Incentive Awards ................6

   III.   Class Action Settlement Procedure and Proposed Schedule ...................6

ARGUMENT .......................................................................................................7

   I.    The Proposed Class Satisfies the Standards of Federal Rule 23(a) .........7

       A.  The Class Is Sufficiently Numerous that Joinder Is
Impracticable.............................................................8

       B.  There Are Questions of Law and Fact Common to the
Proposed Class ..........................................................9

       C.  The Class Representatives' Claims Are Typical of the Claims
of the Class...............................................................10

       D.  The Class Representatives Fairly and Adequately Protect the
Class.......................................................................11

       E.  Certification Is Proper Under Rule 23 (b)(2)................11

   II.    The Proposed Class-Action Settlement Should Be Preliminarily
Approved Under Rule 23(e)..................................................12

       A.  The Proposed Settlement Is Fair ...............................13

       B.  The Negotiation Process Was Fair..............................15

       C.  The Proposed Incentive Payments Are Appropriate.........16

   III.   The Form of Notice to Class Members Should Be Approved ...............18

   IV.   Plaintiffs' Counsel Should Be Appointed as Class Counsel for
Settlement Purposes .............................................................18

CONCLUSION....................................................................................................19

## TABLE OF AUTHORITIES

### CASES

*Baby Neal for & by Kanter v. Casey*, 43 F.3d 48 (3d Cir. 1994)..............................11

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52 (2d Cir. 2000).....................11

*Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 CIV. 2207 JGK, 2010 WL
    3119374 (S.D.N.Y. Aug. 6, 2010) ...............................................17

*Bravo v. Palm W. Corp.*, No. 14 CIV. 9193 SN, 2015 WL 5826715 (S.D.N.Y.
    Sept. 30, 2015) ...............................................................12

*Charron v. Pinnacle Group N.Y. LLC*, 269 F.R.D. 221 (S.D.N.Y. 2010) ..............................10

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)..............................12

*Comer v. Cisneros*, 37 F.3d 775 (2d Cir. 1994)..............................................11

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ...................8

*Cutler v. Perales*, 128 F.R.D. 39 (S.D.N.Y. 1989) ............................................10

*Daniels v. City of New York*, 198 F.R.D. 409 (S.D.N.Y. 2001) (Scheindlin, J.) ......................9

*DeLeon v. Wells Fargo Bank, N.A.*, No. 12 CIV. 4494 RA, 2015 WL 821751
    (S.D.N.Y. Jan. 12, 2015)......................................................7, 12

*Denney v. Jenkens & Gilchrist*, No. 03-CV-5460 (SAS), 2004 WL 1197251
    (S.D.N.Y. May 19, 2004) (Scheindlin, J.) ......................................7

*Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir. 1968) ...................................10

*Gatto v. Sentry Servs., Inc.*, No. 13 CIV. 5721 RMB GWG, 2014 WL
    7338721 (S.D.N.Y. Dec. 19, 2014)............................................12

*Hines v. Valhalla Cty. Corr. Facility*, No. 00-CV-6935, 2002 WL 182274
    (S.D.N.Y. Aug. 8, 2002) (Scheindlin, J.)......................................16

*In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229 (2d Cir. 2012) ..........................7

*In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL
    7323417 (S.D.N.Y. Dec. 19, 2014)...............................12, 13, 14

*In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79 (S.D.N.Y. 2007)
    (Scheindlin, J.) ................................................................7

*In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y. 1997) ...........................7

*Inmates of Attica Corr. Facility v. Rockefeller*, 453 F.2d 12 (2d Cir. 1971) ...........................9

*Ligon v. City of New York*, 288 F.R.D. 72 (S.D.N.Y. 2013) (Scheindlin, J.) ...........................8

*Malchman v. Davis*, 706 F.2d 426 (2d Cir. 1983) ...................................................................15

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ........................................................10, 11

*McReynolds v. Richards-Cantave*, 588 F.3d 790 (2d Cir. 2009) .....................................12, 17

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997)...............................................16, 17

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ...................................................................8

*Romano v. SLS Residential Inc.*, 246 F.R.D. 432 (S.D.N.Y. 2007)...........................................8

*Romero v. La Revise Assoc., L.L.C.*, 58 F. Supp. 3d 411 (S.D.N.Y. 2014) ...........................16

*Sykes v. Mel Harris & Assoc., LLC.*, 285 F.R.D. 279 (S.D.N.Y. 2012) ..................................10

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ..........................................................8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ...........................12, 15

*Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008) ...........................................................17

## RULES, REGULATIONS AND STATUTES

18 U.S.C. § 3626......................................................................................................................6

Fed. R. Civ. P. 23(a) .............................................................................................................8, 10

Fed. R. Civ. P. 23(b) ................................................................................................................11

Fed. R. Civ. P. 23(e) .........................................................................................................7, 12, 18

# INTRODUCTION

This putative class-action litigation challenges solitary confinement practices throughout the New York state prison system. The parties entered into an interim Stipulation in February 2014, and after two additional years of discovery and negotiations, the parties have reached a global settlement that will result in significant systemic relief for the putative class over an anticipated 5-year settlement term. Under the proposed settlement, the Department of Corrections and Community Supervision ("Department") will take actions to reduce the use of Special Housing Units ("SHU") and to modify the conditions of confinement in SHU. The proposed settlement would resolve all class claims for injunctive relief and the Plaintiffs' individual damages claims. The parties jointly move this Court to (1) conditionally certify a settlement class; (2) preliminarily approve the class-action settlement; (3) approve the Notice of Proposed Class-Action Settlement and Fairness Hearing and permit the parties to distribute the Notice; (4) appoint Plaintiffs' counsel as Class Counsel; and (5) set a date for a fairness hearing. This memorandum is submitted by plaintiffs in support of that motion.

## I.   Factual and Procedural Background

### A.  Litigation History

On March 6, 2013, Plaintiffs filed a Third Amended Class Action Complaint ("TAC") challenging the constitutionality of New York State's policies and customs of using disciplinary isolation as punishment for violating prison rules as cruel and unusual punishment under the Eighth Amendment and a violation of due process under the Fourteenth Amendment.[1]  Plaintiffs,

---

[1] Lead Plaintiff LeRoy Peoples filed his *pro se* Complaint on April 18, 2011 and his *pro se* Amended Complaint on July 12, 2012. ECF No. 52.  Plaintiffs' counsel filed a Second Amended Complaint on behalf of Mr. Peoples on December 6, 2012. ECF No. 84.  The *pro se* Complaints of Tonja Fenton and Dewayne Richardson were consolidated, along with Mr. Peoples' Second Amended Complaint, into the Third Amended Class Action Complaint.  ECF No. 93.

on behalf of themselves and a class of similarly situated individuals, sought declaratory and injunctive relief.  The named plaintiffs also sought individual damages. The Defendants deny all of these allegations and moved to dismiss Plaintiffs' claims.

In May 2013, the parties agreed to a stay of the litigation to begin settlement negotiations. Defendants withdrew their motion to dismiss without prejudice. The Court endorsed several orders extending the stay to allow the parties to continue settlement negotiations. In February 2014, the Court endorsed the parties' Stipulation For Stay With Conditions ("Stipulation"), an agreement for a two-year stay of the litigation while DOCCS implemented initial reforms and the parties continued to work toward a global settlement.  *See* ECF No. 124.

### B.  Settlement Negotiations

Over the last two years, the parties have engaged in extensive settlement negotiations, informed by substantial document and data productions, expert tours of SHU units, confidential interviews with inmates, expert data analysis and recommendations, and input from class representatives and putative class members. The parties have now reached a global settlement, attached as Exhibit 1 to the Notice of Joint Motion.[2]

## II.   Settlement Terms

### A. Summary of Class-wide Relief

Under the proposed settlement the Defendants will take actions that include the following:

---

[2] The parties agree that attachments to the Settlement Agreement, including policy guidance and training materials, will remain confidential until the time the fairness process begins, at which time they will be submitted to the Court and made available to class members for review.

1. Implement policies ensuring SHU sanctions are imposed in a narrower range of circumstances, for shorter durations, and more consistently. *See* Settlement Agreement, attached to Notice of Joint Motion as Ex. 1, § X. A.

2. Implement policies ensuring incarcerated individuals can more consistently earn time cuts reducing their SHU sanction for good behavior and program participation. *See* Settlement Agreement § X. D.

3. Modify the policies in SHU, with substantial changes for individuals expected to spend more than 180 days in SHU:

    a. Provide access to telephone calls for prisoners in SHU; *see id.* § VIII. A;

    b. Permit prisoners in SHU to enroll in correspondence courses; *see id.* § VIII. F;

    c. Increase access to reading materials within SHU; *see id.* § VIII. C;

    d. Increase access to commissary and personal property within SHU; *see* Uniform "PIMS" Program For All SHUs;

    e. Raise the number of in-person visits permitted for prisoners in SHU; *see* Uniform "PIMS" Program For All SHUs;

    f. Install shower curtains in all double-celled SHU cells; *see id.* § VIII. B;

    g. Ensure all SHU cells have access to audio programming; *see id.* § VIII. D;

    h. For inmates expected to spend 180 days or more in a SHU and deemed eligible by DOCCS, provide access to congregate recreation and instructor-led cell-side rehabilitative programming in SHU; *see id*. § VI. B;

     i. End use of the "loaf" and replace it with a sack lunch of regular food items; *see id.* § IX. D;

     j. Implement policies limiting the issuance of "deprivation orders"; *see id.* § IX. A;

     k. Provide clear written notice upon admission to SHU of the prisoner's ability to request an out-of-cell, confidential interview with mental health staff. *See id.* § VIII. H.

4. Create and continue "Alternative Units" providing rehabilitative programming for individuals deemed eligible by DOCCS who would otherwise be serving long confinement sanctions in SHU and provide more congregate interaction, more out-of-cell time and more privileges as compared to SHU:

     a. A "Step-Down" program to allow individuals with SHU sanctions of 9 months or longer the opportunity to earn their way back to general population by participating in congregate rehabilitative programming; *see id.* § I. A-B;

     b. A substance abuse program to provide intensive drug treatment programming for substance dependent individuals who would otherwise be serving a long sanction for a drug-related infraction in SHU; *see id.* § I. B-C;

     c. A "Step Down to the Community" program to provide re-entry programming to individuals who would otherwise be released directly from SHU to the community; *see id.* § I. D;

d. "Separate Keeplock Units" with less restrictive conditions of confinement as compared to SHU for a substantial number of the inmates who would otherwise be confined to SHU for a Keeplock sanction; *see id.* § IV;

e. Continue the "Correctional Alternative Rehabilitation" program to provide programming for individuals with developmental disabilities and intellectual impairments in less restrictive conditions of confinement who would otherwise be in SHU; *see id.* § I. F; and

f. Continue the juvenile unit to provide rehabilitative programming targeted to individuals aged 16 and 17 in less restrictive conditions of confinement than SHU. *See id.* § I. E.

5. The Department will conduct a system-wide training for all DOCCS's staff, with a focus on staff working in SHU and Alternative Units. *See id.* § XI. The training will support the above policies and alter daily interactions between staff and inmates in SHU.

The Settlement Agreement will allow plaintiffs' class counsel to receive data and documents, and conduct up to 40 days of expert tours over the expected five-year term of the agreement, that will permit plaintiffs' class counsel to review compliance with the agreement. *See id.* § XII. B-C. The parties agree to a two-year monitoring period following the completion of the largest construction project, the Southport Step-Down Program, which is expected to take 36 months. *See id.* §§ I. F, XVII. If that project is completed on schedule and there is no cause for extending the Settlement Term, the agreement would terminate in approximately 5 years. *See id.* A timetable for implementation of all settlement provisions is attached to the Settlement Agreement as Exhibit 2. In the event of a dispute between the parties regarding the Defendants' compliance

with the agreement, the parties are obligated to first meet and confer to resolve the dispute. *See id.* § XIII. A. If informal resolution were unsuccessful, the parties would ask the Court to appoint a Magistrate Judge to mediate the dispute. *See id.* § XIII. B. If that were unsuccessful, Plaintiffs could then move the Court to order specific performance, provided Plaintiffs show a substantial breach of a material term as defined in the agreement. *See id.* § XIII. C-D.

The provisions of the Settlement Agreement reflect the complexity of reducing the use of restricted housing in one of the largest correctional systems in the United States. These provisions reflect the parties' shared goal of reducing SHU in a careful and comprehensive manner that will first and foremost ensure the safety of staff and inmates, and that will increase the chance of the long-term success of these efforts. The parties agree and jointly ask the Court to find that the proposed settlement satisfies 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act. *See id.* § XIII. E.

**B**.     **Attorneys' Fees, Costs, and Incentive Awards**

Defendants agree to pay $1,100,000 for attorneys' fees, costs and disbursements, including incentive payments to the named plaintiffs. *See id.* § XIV. A. During the Settlement Term, Defendants will reimburse Plaintiffs up to $100,000 per year for reviewing compliance with the Agreement. *See* Settlement Agreement § XIV. B.

**III.**     **Class Action Settlement Procedure and Proposed Schedule**

Courts have established a three-step process for settlement approval in class actions where the parties seek class certification in conjunction with approval of a proposed settlement. The following process is meant to safeguard class members' procedural due process rights and enable the Court to fulfill its role as the guardian of class interests:

1. Preliminary approval of the proposed settlement and certification of a settlement class;

2. Dissemination of mailed and/or published notice of settlement to all affected class members; and

3. A final settlement approval hearing at which class members may be heard regarding the settlement, and at which arguments concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

See Fed. R. Civ. P. 23(e); *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) (Scheindlin, J.); *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). The parties request that the Court take all three steps above and appoint Plaintiffs' counsel as Class Counsel for settlement purposes. *See, e.g., Denney v. Jenkens & Gilchrist*, No. 03-CV-5460, 2004 WL 1197251, at *4 (S.D.N.Y. May 19, 2004) (Scheindlin, J.).

## ARGUMENT

The parties jointly move the Court to (1) conditionally certify a (b)(2) settlement class pending a fairness hearing; (2) grant preliminary approval of the class-action settlement, including incentive awards to be paid to the three class representatives, pending a fairness hearing; (3) approve the proposed Notice to the class and permit the parties to distribute the Notice; and (4) appoint Plaintiffs' counsel as Class Counsel for settlement purposes.

## I.    The Proposed Class Satisfies the Standards of Federal Rule 23(a)

The parties jointly move the Court to conditionally certify the following settlement class:

> All DOCCS inmates who are now serving, or will in the future serve, a disciplinary confinement sanction in a SHU or in one of the programs created under or referenced in the Agreement.

Conditional certification is appropriate in light of the parties' joint motion and for "avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time

of the final approval hearing." *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 CIV. 4494 RA, 2015 WL 821751, at *2 (S.D.N.Y. Jan. 12, 2015) (citations omitted).

Prior to approving the settlement, the Court "must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012) (citation omitted). Rule 23(a) sets forth four prerequisites to maintaining a class action: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The parties agree that the putative class meets the requirements of Rule 23(a) and (b)(2), and as discussed below, the proposed class meets each requirement.

### A. The Class Is Sufficiently Numerous that Joinder Is Impracticable

Numerosity requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is presumptively established with at least forty class members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). The potential for prospective injunctive relief to future class members is a factor weighing against the practicability of joinder. *See Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).

The proposed class of current and future incarcerated individuals satisfies the presumption for numerosity. Joinder is impracticable for the approximately 4,000 incarcerated individuals currently in SHU on any given day, *see* Pendergrass Decl. ¶ 15, and for the thousands more future incarcerated individuals who will be in SHU and the Alternative Units over the anticipated 5-year settlement term.

**B.  There Are Questions of Law and Fact Common to the Proposed Class**

Commonality requires that "the class members have suffered the same injury . . . [and] that the claims asserted must depend upon a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Ligon v. City of New York*, 288 F.R.D. 72, 79 (S.D.N.Y. 2013) (Scheindlin, J.) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)) (citation and internal quotations omitted).  Where "a plaintiff alleges injury from a common policy, the commonality requirement is met." *Romano v. SLS Residential Inc.*, 246 F.R.D. 432, 444 (S.D.N.Y. 2007); *see also Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001) (Scheindlin, J.) ("The fact that the claims of the proposed class stem from the same alleged unconstitutional conduct of the defendants proves the existence of common questions of law or fact." (citation and internal quotations omitted)). In the context of prisons and jails, there are common questions of law and fact where "inmates have a common interest in preventing the recurrence of the objectionable conduct." *Inmates of Attica Corr. Facility v. Rockefeller*, 453 F.2d 12, 24 (2d Cir. 1971).

The commonality requirement is met here. The class members challenge generally applicable DOCCS policies and customs related to using SHU as punishment for violating prison rules and the conditions in SHU. *See* TAC ¶¶ 1-10, at ECF No. 93. Plaintiffs believe the common questions of law and fact would include (1) whether Defendants' policies and customs governing the conditions of confinement in SHU pose an unconstitutional risk of harm to class members in violation of the Eighth Amendment, *see id.* ¶¶ 27, 30, 86, 93, 99, 132-35, 148, 150, 175; (2) whether Defendants' disciplinary policies and customs subject class members to SHU as punishment for misbehavior in a manner that is arbitrary, grossly disproportionate, or serves no

legitimate penological purpose, in violation of the Eighth Amendment, *see id.* ¶¶ 57-60, 73, 116, 143, 175; and (3) whether Defendants' disciplinary policies and customs leading to disciplinary SHU sanctions fail to provide adequate procedural protections that would reduce the risk of arbitrary and erroneous deprivations of class members' liberty interests, in violation of the Due Process Clause of the Fourteenth Amendment, *see id.* ¶¶ 70, 111, 141, 176.

## C. The Class Representatives' Claims Are Typical of the Claims of the Class

Typicality "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotations omitted). In a (b)(2) class, where "plaintiffs request declaratory and injunctive relief against a defendant engaging in a common course of conduct toward them . . . [there is] no need for *individualized* determinations of the propriety of injunctive relief." *Charron v. Pinnacle Group N.Y. LLC*, 269 F.R.D. 221, 232 (S.D.N.Y. 2010) (citation and internal quotations omitted) (emphasis in original).

The typicality requirement is met here with regard to this (b)(2) class. The named plaintiffs' claims are typical of those of the proposed class because they arise from the "same course of events" as those of the class—the application of generally applicable policies and customs that determine the conditions of SHU confinement for class members and the circumstances that class members may be subjected to those SHU conditions as discipline—and rely on "similar legal arguments"—the allegation that these policies and customs violate the Eighth and Fourteenth Amendments. *See* TAC ¶¶ 37-54, 163-68, 175-76; *see also Sykes v. Mel Harris & Assoc., LLC*, 285 F.R.D. 279, 287 (S.D.N.Y. 2012) (citation and internal quotations omitted). Typicality is present here because "all members of the putative class would benefit by

the success of the named plaintiff[s]." *Cutler v. Perales*, 128 F.R.D. 39, 45 (S.D.N.Y. 1989) (citing *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968)).

### D. The Class Representatives Fairly and Adequately Protect the Class

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry requires examining whether "1) plaintiff[s'] interests are antagonistic to the interest of other members of the class and 2) plaintiff[s'] attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

Both requirements are met here. There is no conflict between the interests of the named plaintiffs and the proposed class. The named plaintiffs sought relief that will benefit the entire class currently in SHU and those who may be in SHU in the future. *See, e.g.*, *Marisol A.*, 126 F.3d at 378 (holding that broad-based relief seeking to improve all services is in the interest of all class members). Plaintiffs' counsel have extensive experience litigating class actions and civil rights cases and will adequately represent the proposed class. *See* Pendergrass Decl. ¶¶ 9-14.

### E. Certification Is Proper Under Rule 23 (b)(2)

Certification under Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). These requirements are satisfied if "plaintiffs seek injunctive relief and they predicate the lawsuit on the defendants' acts and omissions . . . " *Comer v. Cisneros*, 37 F.3d 775, 796 (2d Cir. 1994); *see also Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) (finding the "requirement is almost automatically satisfied in actions primarily seeking injunctive relief.")

The class jointly proposed by the parties meets the requirements for Rule 23(b)(2). The Defendants' generally applicable policies and customs regarding SHU conditions and the imposition of disciplinary SHU similarly affect the entire class as discussed above in Section I. B.; *see also* TAC ¶¶ 1-10.

## II. <u>The Proposed Class-Action Settlement Should Be Preliminarily Approved Under Rule 23(e)</u>

Under Rule 23(e), "[a] court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion. A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citations and internal quotations omitted); *see also McReynolds v. Richards-Cantave*, 588 F.3d 790, 803-04 (2d Cir. 2009) (applying the standard articulated in *Wal-Mart* to a Rule 23(b)(2) class action settlement). With regard to final approval of a proposed class action settlement, "courts should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to assess potential risks." *DeLeon*, 2015 WL 821751, at *1 (citation omitted).

Preliminary approval to the class action settlement should be granted if there is "'probable cause' to submit the [proposed settlement] to class members and hold a full-scale hearing as to its fairness." *Bravo v. Palm W. Corp.*, No. 14 CIV. 9193 SN, 2015 WL 5826715, at *1 (S.D.N.Y. Sept. 30, 2015) (quoting *In re Traffic Exec. Ass'n,* 627 F.2d 631, 634 (2d Cir. 1980)). If the proposed settlement "falls within the range of possible approval, the court should order that the class members receive notice [of the] settlement." *Gatto v. Sentry Servs., Inc.*, No. 13 CIV. 5721 RMB GWG, 2014 WL 7338721, at *1 (S.D.N.Y. Dec. 19, 2014) (citation omitted).

**A. The Proposed Settlement Is Fair**

The Second Circuit has identified nine factors to consider in assessing the fairness of a proposed settlement. *Wal-Mart Stores*, 396 F.3d at 117 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)). "All nine factors need not be satisfied; the court must look at the totality of these factors in light of the specific circumstances involved." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at *5 (S.D.N.Y. Dec. 19, 2014) (citation omitted). Because this case does not seek class damages, only the following factors are relevant in this (b)(2) class settlement: (1) the complexity, expense and likely duration of the litigation, (2) the stage of the proceedings and the amount of discovery completed, (3) the risks of establishing liability, (4) the risks of maintaining the class action through the trial, and (5) the reaction of the class to the settlement.[3]

1.     <u>Complexity, expense and likely duration of the litigation</u>. This civil rights lawsuit involves complex constitutional claims. If the parties were to continue with litigation, Plaintiffs anticipate a vigorous defense by the Defendants. It would likely take years to resolve motions to dismiss, summary judgment motions, and interlocutory appeals. Both parties would expend a tremendous amount of resources on motion practice and on discovery. A trial would be lengthy, complex and require substantial attorney time and expense. This proposed settlement ensures relief to the class without the expense and duration of complex civil rights litigation.

2.     <u>Stage of the proceedings and the amount of discovery completed</u>. Plaintiffs have been able to "intelligently evaluate the merits of [their] claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *3-11 (citation and

---

[3] The reaction of the class to the settlement is evaluated at the time of the fairness hearing.

internal quotations omitted). Because the settlement discussions began before class discovery was underway, as a precondition to putting the litigation on hold and engaging in negotiations, the parties agreed that Defendants would provide information Plaintiffs would otherwise seek in discovery. Plaintiffs were provided with voluminous monthly and quarterly electronic data and reports regarding SHU. Plaintiffs' experts toured numerous SHU facilities, including confidential interviews with dozens of incarcerated individuals. *See* Pendergrass Decl. ¶ 6. Plaintiffs' expert spoke with DOCCS' executive staff, facility supervisors, and line-level SHU staff. *See id*. Plaintiffs were provided with all requested rules, regulations, directives, and policy and operations manuals. *See id*. It is likely Defendants would have contested the discoverability of some of the information freely provided to Plaintiffs in the settlement process. *See id.* ¶ 7. Plaintiffs had numerous calls and meetings with Defendants and the experts where all the information above was thoroughly discussed. *See id*. In addition, Plaintiffs reviewed hundreds of letters from putative class members regarding concerns with SHU policies and conditions. *See id.* ¶ 18. As a result, Plaintiffs had the benefit of significant and meaningful discovery before negotiating the proposed settlement agreement.[4]

3. <u>Risks of establishing liability</u>. Establishing liability, especially in complex class action lawsuits, bears considerable risks. *See In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *3 ("courts have long recognized that [complex class action] litigation is notably difficult and notoriously uncertain, and that compromise is particularly appropriate."

---

[4] Plaintiffs' counsel had a substantial amount of information about SHU policies before initiating the litigation, as reflected by the level of detail contained in the Third Amended Complaint. Prior to filing the lawsuit, the NYLCU obtained thousands of pages of data records, policies, and prisoner records through New York's Freedom of Information Law, and interviewed over 100 prisoners, as described in the NYCLU's report "Boxed In". *See* Pendergrass Decl. ¶ 21.

(citation and internal quotations omitted)). The proposed settlement balances the tangible and immediate benefits for the class with the risks of no relief following a protracted litigation.

4.    <u>Risk of maintaining a class through trial</u>.  If the parties had to litigate this case, Defendants could object to Plaintiffs' motion for class certification. Even if Plaintiffs' motion were granted, Plaintiffs would face the risk that Defendants could seek to de-certify their class during the litigation.  This proposed settlement eliminates all such risk.

**B.  The Negotiation Process Was Fair**

A settlement is entitled to a presumption of fairness, adequacy and reasonableness if the settlement is "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores*, 396 F.3d at 116 (citations and internal quotations omitted); *see also Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983). These negotiations were conducted at arm's length. Over the last two years, the parties conducted monthly and sometimes weekly negotiations and discussions by phone, and engaged in about 10 intensive negotiation sessions in New York and Albany, including a 3-day session in September 2015. *See* Pendergrass Decl. ¶ 8. Each party enlisted their own expert to aid them throughout negotiations, and both experts are nationally recognized in their field.[5] *See id.* ¶¶ 16-17. As discussed above, Plaintiffs received substantial discovery allowing them to independently analyze information that informed their settlement posture. In addition, Plaintiffs incorporated the input of the class

---

[5] The Plaintiffs' expert, Eldon Vail, is a former corrections administrator with nearly 35 years experience in correctional institutions.  For seven years, Mr. Vail served as the Deputy Secretary for the Washington State Department of Corrections, and for four years as Secretary.  Since retiring as Secretary, Mr. Vail has served as an expert witness and correctional consultant throughout the country. The Defendants' expert, Dr. James Austin, is the former director of the Institute on Crime, Justice, and Corrections at George Washington University, and has served as the director of several U.S. Department-of-Justice-funded research and evaluation programs, including ones providing assistance to local jails, prisons, and probation and parole systems.  *See* Pendergrass Decl. ¶¶ 16-17, Ex. F.

representatives and putative class members throughout the negotiations. *See id.* ¶¶ 18, 19. Plaintiffs' counsel have decades of experience litigating class action and civil-rights lawsuits, and the Attorney General and DOCCS' counsel are similarly experienced and zealously represented the interest of DOCCS during the negotiation, *see* Pendergrass Decl. ¶¶ 9-14, 25. The parties continue to maintain principled disagreements regarding issues raised in this litigation. This settlement reflects significant compromises by both parties worked out over two years of continuous and complex negotiations.

### C. The Proposed Incentive Payments Are Appropriate

Incentive awards are common in successful class actions to award class representatives for the time, effort, and personal risk incurred in prosecuting the litigation. *See, e.g., Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997); *Romero v. La Revise Assoc., L.L.C.*, 58 F. Supp. 3d 411, 421 (S.D.N.Y. 2014). Incentive awards are approved in the discretion of the Court based upon the "the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), [and] any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and of course, the ultimate recovery." *Roberts,* 979 F. Supp. at 200. Civil rights litigation often warrants higher incentive awards than in other class actions (such as securities litigation) due to the personal effort and risk inherent in such cases. *See id.* (finding with regard to incentive awards a "fundamental distinction" between civil rights litigation and securities and anti-trust litigation). There may be no situation where a class representative faces a greater risk of retaliation than an incarcerated individual who brings complaints against the jail or prison. *See, e.g., Hines v. Valhalla Cty. Corr. Facility*, No. 00-CV-6935, 2002 WL 1822740, at *3 (S.D.N.Y.

Aug. 8, 2002) (Scheindlin, J.) (where this Court noted that "any inmate complaint can result in retaliation . . . .").

The parties agree that the named plaintiffs in this case, who will receive no money damages and will dismiss their pending individual damages claims, should receive incentive awards.[6] Plaintiffs' counsel determined that the named plaintiffs should receive the following awards: $80,000 for Dewayne Richardson, $40,000 for Tonja Fenton, and $9,900 for LeRoy Peoples.[7] *See id.* The named plaintiffs achieved significant relief for the class in this settlement, and they played an active and invaluable role in the litigation and settlement negotiations. *See id.* ¶ 19. They spent significant time communicating with class counsel and shared their substantial factual expertise regarding SHU practices. *See* Richardson Decl. ¶¶ 4-5, Fenton Decl. ¶¶ 4-9, and Peoples Decl. ¶¶ 5-6. They took on these burdens in a high-profile civil rights litigation even though doing so put them at risk of retaliation, *see* Richardson Decl. ¶¶ 6-8, Fenton Decl. ¶¶ 10-12, and Peoples Decl. ¶ 7. The incentive awards are appropriate in light of these facts and are consistent with those approved in other civil rights cases. *See Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 CIV. 2207 JGK, 2010 WL 3119374, at *7 (S.D.N.Y. Aug. 6, 2010) (approving incentive payments of $75,000 to five named plaintiffs, $60,000 and $50,000 to two other plaintiffs in employment discrimination case); *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) (approving incentive payments of $50,000 to each of the eleven named plaintiffs in employment discrimination case); *Roberts,* 979 F. Supp. at 202-04 (approving incentive payments of $85,000 and $50,000 in employment discrimination case).

---

[6] The incentive awards will be paid from the total $1.1 million lump sum that includes attorney fees, costs, and incentive awards. Defendants had no involvement in negotiating or determining the individual or aggregate amount of the incentive awards. *See* Pendergrass Decl. ¶ 20.

[7] Ms. Fenton was released from custody in March 2014. Mr. Peoples and Mr. Richardson, who are both still incarcerated, would be entitled to similar incentive awards for their participation in the litigation, but for the fact that Mr. Peoples has voluntarily requested a smaller award.

### III. The Form of Notice to Class Members Should Be Approved

Notice of the proposed settlement "must be of such nature as reasonably to convey the required information … and it must afford a reasonable time for those interested to make their appearance." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 804-05 (2d Cir. 2009) (citation and internal quotations omitted). The proposed notice, attached as Exhibit E to the Pendergrass Decl., will be posted in English and Spanish in a manner that will reach all class members. The notice will apprise the class of the key settlement terms, the manner that class members can review the entire proposed settlement, the date and location of the fairness hearing, and instruct class members on how they can be heard on the proposed settlement by writing to the Court.

### IV. Plaintiffs' Counsel Should Be Appointed as Class Counsel for Settlement Purposes

When deciding whether to appoint class counsel, courts must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Plaintiffs request the Court appoint the NYCLU, Morrison & Foerester LLP, and Alexander Reinert as Class Counsel. *See* Fed. R. Civ. P. 23(e)(1). Collectively, Plaintiffs' counsel have several decades worth of experience litigating class action cases. *See* Pendergrass Decl. ¶¶ 9-14. The NYCLU and Alexander Reinert have significant experience litigating prisoners' rights cases, and Morrison & Foerster has experience litigating a variety of class action and *pro bono* cases. *See id.* ¶¶ 9-10, 12, 14. Plaintiffs' counsel have devoted significant time, effort and resources, including time spent investigating the use of SHU before filing this class action, analyzing documents and data produced by the Defendants,

resources spent to hire an expert in correctional practices, and thousands of attorney hours dedicated to the settlement negotiations. *See id.* ¶¶ 21-23.

## CONCLUSION

The parties jointly request the Court grant a Preliminary Approval Order including the following relief:

1. Grant conditional class certification and preliminary approval of the proposed settlement;

2. Appoint Plaintiffs' counsel as class counsel;

3. Approve the form of the class notice, and direct Defendants to provide notice to all Class Members within 10 days of entry of the Preliminary Approval Order, by posting copies of the Notice in English and Spanish in prominent and visible locations accessible to all general population prisoners on a daily basis, and delivering a copy of the notice to each individual currently housed in SHU, the Correctional Alternative Rehabilitation program, and the Juvenile Program;

4. Provide Class Members with sixty days after Notice is posted and served to comment on the proposed settlement as specified in the Notice; and

5. Set a date for a fairness hearing for final approval of the settlement.

Dated: December 16, 2015
New York, N.Y.

Respectfully submitted,

_____/s/ Taylor Pendergrass_____
Taylor Pendergrass (TP-3608)
Philip Desgranges (PD-2833)
Christopher T. Dunn (CD-3991)
Aimee Krause*
NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 19th Floor
New York, N.Y. 10004
(212) 607-3300
tpendergrass@nyclu.org

David J. Fioccola (DF-1622)
Jennifer K. Brown (JB-4222)
Kayvan B. Sadeghi (KS-7463)
Daniel Matza-Brown (DM-1106)
Adam J. Hunt (AH-0627)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 468-8000
Fax: (212) 468-7900
dfioccola@mofo.com

Alexander A. Reinert (AR-1740)
55 Fifth Avenue, Room 1005
New York, New York 10003
Tel: (212) 790-0403
Fax: (212) 790-0805
areinert@yu.edu

*On the brief, admission pending to the Southern District of New York

*Counsel for Plaintiffs*