```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LEROY PEOPLES, et al., on behalf of           :
themselves and all others similarly situated, :
                                              :
                Plaintiffs,                   :     DECLARATION OF TAYLOR
                                              :     PENDERGRASS
                                              :
                                              :     11 Civ. 2694 (SAS)
        -against-                             :
                                              :
                                              :
BRIAN FISCHER, et al.,                        :
                                              :
                Defendants.                   :
                                              :
------------------------------------------------------------x
```

## DECLARATION OF TAYLOR PENDERGRASS IN SUPPORT OF MOTION FOR CLASS-ACTION SETTLEMENT APPROVAL

TAYLOR PENDERGRASS, a member of the Bar of New York and a member of the bar of this Court, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows:

1.  I am a senior staff attorney at the New York Civil Liberties Union ("NYCLU") and have served as lead counsel for the plaintiffs in this case. I submit this declaration in support of the joint motion by the parties seeking the Court's approval of a proposed settlement in this matter.

2.  The plaintiffs filed a Third Amended Class Action Complaint in this case. *See* ECF No. 84. Defendants moved to dismiss and had not yet filed an answer at the time the litigation was stayed.

3.  The Third Amended Complaint seeks declaratory and injunctive relief on behalf of the putative class members, and individual damages on behalf of the named plaintiffs. It does not seek damages on behalf of the putative class.

4. Shortly after the defendants filed their motion to dismiss the Third Amended Complaint, the parties agreed to stay the litigation to negotiate a settlement. The Court endorsed several orders extending the litigation stay to allow the parties to continue settlement negotiations.

5. In February 2014, the Court endorsed the parties' Stipulation For Stay With Conditions, *see* ECF No. 124, which provided for a two-year stay of the litigation. The parties entered the stipulation to continue with their settlement negotiations. Under the Stipulation the Department of Corrections of Community Supervision ("DOCCS") took actions to create alternatives to Special Housing Units ("SHU") for juveniles, establish a presumption against placing pregnant female inmates in SHU for disciplinary purposes, establish an alternative program to SHU, referred to as Correctional Alternative Rehabilitation ("CAR"), for inmates with significantly limited intellectual capabilities and/or adaptive functioning skills, and implement new comprehensive guidelines for all disciplinary sanctions, among other changes. Finally, the Stipulation committed the parties to continuing their negotiations toward a global settlement agreement, including the involvement of each party's expert.

6. Under the Stipulation For Stay With Conditions, DOCCS provided substantial discovery to the plaintiffs, including monthly data productions, quarterly periodic reporting on the outcomes of the disciplinary measures, non-periodic reporting on material developments regarding the actions DOCCS took, three expert tours of correctional facilities, expert meetings with DOCCS's executive staff, facility supervisors, and line-level SHU staff, expert confidential interviews of incarcerated individuals, and expert review of requested materials. Before entering the Stipulation For Stay With Conditions, defendants produced documents ranging from SHU-related policies and directives, to training manuals provided to Hearing Officers, among other

things. Plaintiffs also received additional rules, regulations, directives, and policy and operations manuals after entering the stipulation.

7. Much of the discovery provided by defendants throughout the settlement negotiations would likely have been the subject of contention had the parties proceeded through the traditional process of discovery contemplated by the Federal Rules of Civil Procedure. Defendants could have raised multiple objections to the production of this material, and even if plaintiffs had shown an entitlement to all of the material, the delay in obtaining the discovery could have been substantial.

8. Following the Stipulation for Stay with Conditions, the parties engaged in good-faith, arm's-length negotiations for nearly two years, which culminated in the final proposed settlement referenced in paragraph 1, above. Over the last two years, the parties conducted monthly and sometimes weekly negotiations and discussions by phone, and engaged in about 10 intensive negotiation sessions in New York and Albany, including a 3-day session in September 2015.

9. The NYCLU was founded in 1951 as the New York affiliate of the American Civil Liberties Union ("ACLU") and has successfully litigated civil rights class action cases against New York State, New York City, the federal government, and other government defendants in the Southern District and elsewhere in New York since its founding. The NYCLU also has years of experience litigating prisoners' rights cases.

10. I have nearly 12 years of experience litigating civil rights class actions in federal and state courts and have served as counsel in a number of class actions, including those on behalf of prisoners and detainees. I attach Exhibit A, a copy of my resume. As it indicates, I have served as a senior staff attorney at the NYCLU since 2010. Before that, I served as a staff

attorney at the ACLU of Colorado since 2006. I served as the senior investigator and co-author of the NYCLU's investigation of the Department's SHU practices that led to a report published in October 2012, "Boxed In: The True Cost of Extreme Isolation in New York Prisons." I have submitted testimony to the United States Senate and international human rights organizations about solitary confinement, and frequently write and speak about the topic.

11. I am supported by experienced counsel who also have significant experience litigating class actions. I attach as Exhibits B-D the resumes of Alexander A. Reinert, Christopher T. Dunn, and Jennifer K. Brown.

12. Alexander A. Reinert is a professor of law at Benjamin N. Cardozo School of Law. He has 16 years of experience litigating civil rights class actions. In particular, Mr. Reinert has more than a decade's experience litigating prisoners' rights actions, including class actions against the New York State Department of Corrections and Community Supervision. *See* Exhibit B. Mr. Reinert's academic expertise also includes the rights of prisoners under the Constitution, an area in which he teaches and produces scholarship. He has testified before governmental agencies and nongovernmental organizations regarding solitary confinement in jails and prisons, and has conducted trainings of lawyers, judges, and law clerks on the topic as well as on the rights of prisoners more generally.

13. Christopher T. Dunn is the associate legal director of the NYCLU and has nearly 30 years of experience litigating civil rights class actions in federal and state courts around the country, including serving as lead counsel in several civil rights actions. Since 1987, Mr. Dunn has worked as an attorney with the ACLU and then the NYCLU. He has also taught in the Civil Rights Clinic of New York University School of Law for the past twelve years. *See* Exhibit C.

14. Morrison & Foerster LLP has decades of experience litigating complex civil litigation cases, including civil rights actions on a *pro bono* basis. Jennifer Brown, the Senior *Pro Bono* Counsel at Morrison & Foerster LLP, has two decades of experience litigating civil rights cases, including serving as Director of the Reproductive Rights Unit in the Civil Rights Bureau of the Office of the New York State Attorney General, and serving as the legal director of the nation's first women's rights legal organization, Legal Momentum, formerly known as NOW Legal Defense and Education Fund. *See* Exhibit D.

15. The proposed settlement is fair to the plaintiff class, including the approximately 4,000 incarcerated individuals currently in SHU. It will result in systemic relief for the entire class to reduce the use and duration of SHU confinement and reduce the isolation and idleness experienced by people in SHU units. Such relief is consistent with what would have been sought by plaintiffs on behalf of the class in litigation. The settlement will guarantee this systemic relief promptly to the class, as opposed to the uncertainties and duration of complex civil rights litigation. A proposed notice to the class of the key terms of the settlement is attached as Exhibit E.

16. The proposed settlement has also been informed by the views and assessments of plaintiffs' correctional expert, Eldon Vail, former secretary of the Washington State Department of Corrections. Mr. Vail has over 35 years of experience administering corrections institutions, including instituting reforms to the use of solitary confinement in the prisons of Washington State Department of Corrections. Mr. Vail's resume is attached as Exhibit F. In formulating his recommendations to plaintiffs' counsel, plaintiffs' expert reviewed voluminous data, policies and procedures, prisoner records, toured SHU units, and conducted confidential interviews with inmates.

17. Defendants' counsel likewise retained the services of a nationally recognized corrections expert, Dr. James Austin, to advise them during negotiations. Dr. Austin is the former director of the Institute on Crime, Justice, and Corrections at George Washington University, and has served as the director of several U.S. Department-of-Justice-funded research and evaluation programs, including ones providing assistance to local jails, prisons, and probation and parole systems. Plaintiffs, defendants, and their experts had numerous meetings where they discussed the defendants' document and data productions and the expert tours.

18. Hundreds of putative class members have written to plaintiffs' counsel since the filing of the Third Amended Complaint. These class members have written plaintiffs' counsel regarding concerns with SHU, and made suggestions for altering SHU. This correspondence was reviewed by plaintiffs' counsel and their experts, and informed the settlement negotiations.

19. The proposed settlement is the result of the significant time, effort, and factual expertise contributed by plaintiffs LeRoy Peoples, Dewayne Richardson, and Tonja Fenton. The plaintiffs shared invaluable insight, based on their lived experiences, about the defendants' use of SHU for disciplinary purposes. The plaintiffs also shared their suggestions on how to reduce the defendants' use of SHU and how to modify the conditions of confinement in SHU. Plaintiffs communicated with plaintiffs' counsel on numerous occasions about the litigation and settlement negotiations. Plaintiffs' counsel had numerous in-person meetings with plaintiffs and communicated through correspondence and frequent telephone calls.

20. Based on my experience and the experience of my co-counsel in working with the named plaintiffs, the incentive awards for plaintiffs are justified and appropriate. The named plaintiffs did not negotiate class-wide relief with a promise of monetary benefit for themselves. The parties agreed to incentive awards for the plaintiffs only after they reached agreement on the

framework of the global settlement agreement. The incentive awards are being paid out of the total lump sum $1.1 million dollar payment provided by Defendants for attorney fees, costs and incentive payments. Defendants had no involvement in negotiating or determining the individual or aggregate amount of the named plaintiffs' incentive awards. Plaintiffs' counsel determined the incentive award amount for each named plaintiff.

21. Before filing this class action lawsuit, the NYCLU spent significant time researching the defendants' SHU practices by reviewing thousands of data records, DOCCS's policies, and the disciplinary records of prisoners, and by interviewing over 100 prisoners about their experiences in SHU. This research culminated in "Boxed In," an October 2012 report analyzing DOCCS's SHU practices.

22. Following the filing of this lawsuit, plaintiffs' counsel expended a significant amount of time analyzing the defendants' document productions—including rules, regulations, directives, and policy and operations manuals—and data productions regarding the use of SHU.

23. Morrison & Foerster LLP expended significant financial resources to hire experts Eldon Vail and Dr. Craig Haney, to advise plaintiffs' counsel during settlement negotiations. With this advice, plaintiffs' counsel expended numerous attorney hours negotiating this global settlement.

24. As a non-profit civil-rights organization, the NYCLU has represented the plaintiffs without charge on a *pro bono* basis (as it does in all its cases). Any attorneys' fees and costs recovered from the defendants in this matter will go the NYCLU or its co-counsel. Neither I nor any other employee of the NYCLU will receive any portion of those fees or costs. For the purposes of settlement, plaintiffs' counsel have significantly discounted the number of hours from those actually expended on this case.

25. The defendants were represented by Assistant Attorney General Richard W. Brewster and other attorneys from the New York State Attorney General's Office. Mr. Brewster and the attorneys under his supervision have substantial litigation experience.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 16, 2015
      New York, N.Y.

_____/s/ Taylor Pendergrass
TAYLOR PENDERGRASS
NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 19th Floor
New York, N.Y. 10004
(212) 607-3300
tpendergrass@nyclu.org
