

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF STATE COUNSEL
LITIGATION BUREAU

Writer's Direct Dial: (212) 416-8653

June 28, 2019

Honorable Andrew L. Carter, Jr.
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY  10007

      Re:    <u>Peoples v. Annucci, et al</u>.  (11 Civ. 2694)
               Annual Joint Report to Court

Dear Judge Carter:

      On behalf of both parties to this class-action settlement agreement, I write pursuant to the Court's Order (ECF No. 490) requiring a joint status update on the implementation of the settlement agreement ("Agreement").  The Agreement requires that the Department of Corrections and Community Supervision ("DOCCS") implement changes to its solitary confinement policies to accomplish the parties' shared goals of significantly reducing the use and duration of solitary confinement and reducing isolation and idleness in confinement.

      Pursuant to the Agreement, which took effect on April 1, 2016, the parties met in New York City on May 21, 2019, to discuss the third year of implementation.  The parties discussed the comprehensive changes implemented by DOCCS in Year 3, the objective impact of those changes on the Special Housing Unit ("SHU") environment, as well as the findings of NYCLU's expert resulting from tours of several facilities.  The meeting and discussions were both positive and productive and are indicative of the parties' joint efforts and ongoing commitment to advancing the Agreement's objectives.

      One of the notable changes in Year 3 was the creation and commencement of the Lakeview Substance Abuse SHU-Alternative Program that provides a six-month intensive alcohol and substance abuse treatment ("I-ASAT") program to incarcerated individuals at high risk for continued drug and alcohol abuse.  Participating individuals are housed in 88 single cells and receive three (3) hours of classroom programming five (5) days per week, which includes, in part,

Honorable Andrew L. Carter                                                                 Page 2
June 28, 2019

cognitive behavioral therapy, withdrawal and craving management, relapse prevention strategies and the development of skills to avoid disciplinary infractions and to promote positive engagement with general population programming.  Participants are also offered two (2) hours of recreation seven (7) days a week and can earn their choice of extra incentives including, for example, additional congregate leisure activities (movies, games, etc.), increased access to personal property, additional showers, additional commissary purchases and recommendations for time-cuts.

        In addition to the commencement of the Lakeview I-ASAT program, DOCCS has continued to develop several of its other SHU-alternative programs and converted the Mid-State Step-Down to General Population Program ("Mid-State Program") to all single cells in an effort to further enhance and promote participation in the Step-Down program.  Although not required by the Agreement, DOCCS also created a Reinstatement Policy for the Mid-State Program that gives individuals the ability to seek reinstatement if they are expelled and adopted a Voluntary Status Policy that gives participants the ability to remain in the program beyond their expired sanction time.

        Other notable changes include DOCCS' recent implementation of a monthly review process for providing discretionary time-cuts to individuals with Keeplock[1] sanctions, and the creation of a formal policy that credits pre-hearing confinement time to determinant confinement sanctions.

        When the final Agreement took effect in April, 2016, there were **2,533** incarcerated individuals serving a SHU sanction in a SHU cell.  **During the first three years of implementation, DOCCS reduced that number by 1,043 to 1,490 individuals – a reduction of 41%.**  There have been several other noteworthy improvements including the following:

1.  Total number of individuals housed in a SHU cell (the total number includes those serving a SHU sanction, those serving a Keeplock sanction, those in SHU on prehearing confinement, and those there on administrative segregation or protective custody)– reduced by 35% (3,631 to 2,377)

2.  Individuals serving a Keeplock sanction in a SHU cell – reduced by 28% (664 to 479)

3.  Individuals aged 21 and younger housed in a SHU cell – reduced by 60% (394 to 156)

---

[1] A Keeplock sanction typically involves 23-hour confinement in a cell (either in SHU or elsewhere) where, unlike with a SHU sanction, the individual retains access to his or her property.

Honorable Andrew L. Carter                                                                                          Page 3
June 28, 2019

4.  Mean length of stay to date[2] for individuals serving a SHU sanction in a SHU cell – reduced by 35% (108 days to 70 days), or according to plaintiffs' calculation,[3] reduced by 29% (from 199 days to 140 days)

5.  Median length of stay to date  for individuals serving a SHU sanction in a SHU cell – reduced by 27% (59 days to 43 days), or according to plaintiffs' calculation, reduced by 25% (from 72 days to 54 days)

6.  Median length of stay for inmates serving a Keeplock sanction in a SHU cell – reduced by 24% (25 days to 19 days), or according to plaintiffs' calculation, reduced by 17% (from 29 days to 24 days).  This reduction in the median Keeplock sanction is, however, tempered by the fact that over the same period of time the mean Keeplock sanction has increased by approximately two days.  As discussed below, plaintiffs raised concerns about the increased use of Keeplock sanctions.

7.  Individuals serving over 365 days of a SHU sanction in a SHU cell to date– reduced by 85% (100 to 15), or according to plaintiffs' calculation, reduced by 71% (from 208 to 61)

8.  Number of releases from a SHU cell to the community – reduced by 26%

In Year 4, the Department plans to open the Southport Step-Down to General Population Program.  At full capacity, this program will divert up to 252 individuals from SHU cells to a less restrictive and more program-rich environment, including programming focused on managing aggression and improving social skills.

The Department also continues to deploy tablets to all incarcerated individuals in SHU cells who are at or above Level 2 in the Progressive Inmate Management System (PIMS).  When fully implemented, these tablets will not only provide these individuals with academic, vocational, entertainment (music, books and games), ministerial, general library and law library materials, but they may also be used to place phone calls resulting in greater access to support from family and friends.

Despite the progress to date, more work needs to be done to reduce the population of

---

[2] "Length of stay to date" refers to the mean number of days that individuals serving a SHU sanction spent in a SHU cell, from the date they last entered the SHU cell until the date the data was collected (April 1st 2016 vs April 1st 2019). This number thus does not reflect total length of stay, which represents the time spent in SHU until the actual end of a sanction rather than the date when the data was collected.

[3] Points 4, 5, 6 and 7 include both parties' calculations because the parties differ as to how to analyze data regarding length of stay in a SHU cell.  Under DOCCS' method, length of stay is calculated based on the most recent SHU entry date, which restarts whenever an individual is out of a SHU cell for 24 hours (e.g., for a night spent in the hospital).  Under Plaintiffs' method, length of stay is calculated from the sanction's start date without regard to any days the individual may have spent out of the SHU cell during the sanction period.

Honorable Andrew L. Carter                                                          Page 4
June 28, 2019

individuals in SHU and other forms of 23-hour confinement.  During last month's meeting, Plaintiffs raised several concerns, including the following:

- that the disciplinary system remains far too reliant on confinement sanctions as demonstrated by a rise in Keeplock sanctions that has resulted in more people serving confinement sanctions this past year than in the year before the Agreement went into effect;

- that the rate of reduction of the SHU population is slowing down because the average length of SHU sanctions served in a SHU cell has remained nearly constant since the spring of 2017;

- that the use of SHU sanctions for drug use is inappropriate;

- that the use and duration of SHU sanctions for individuals with documented major mental health disorders is inappropriate; and

- that the number of individuals serving Keeplock sanctions in a SHU cell is increasing.

Plaintiffs proposed a number of solutions to address these concerns.  As noted above, DOCCS has already adopted one of those solutions – to wit, the creation of a formal policy that credits pre-hearing confinement time to determinant confinement sanctions.  Plaintiffs recognize that the State's own proposal[4] this month to implement administrative changes to the use of SHU may further resolve several of these concerns, but much depends on the details of the State's proposal. It is the parties' mutual desire to build on our success in working together and the parties do not believe the Court's intervention is necessary at this time.

Thank you for your time and consideration.

Respectfully submitted,

/s *Rebecca Ann Durden*

REBECCA ANN DURDEN
Assistant Attorney General

---

4 *See* Statement from Governor Cuomo, Majority Leader Stewart-Cousins, and Speaker Heastie on Joint Agreement to Overhaul Solitary Confinement Policies, available at https://www.governor.ny.gov/news/statement-governor-andrew-m-cuomo-majority-leader-andrea-stewart-cousins-and-speaker-carl

Honorable Andrew L. Carter                                                          Page 5
June 28, 2019

cc:     Phil Desgranges, Esq.
        Christopher Dunn, Esq.
        NEW YORK CIVIL
        LIBERTIES UNION

        Jennifer Brown, Esq.
        Adam Hunt, Esq.
        David Fioccola, Esq.
        MORRISON & FOERSTER

        Alexander Reinert, Esq.
        *Attorneys for Plaintiff Class*