UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SDNY PRO SE OFFICE

2020 MAR -2 AM 11: 16

Leroy Peoples, et al.

Plaintiffs

Docket No. 11-CV-2694 (ALC)

- against -

Anthony Annucci, et al

Defendants

NOTICE OF MOTIONS FOR RELIEF FROM

JUDGMENT, ENFORCING JUDGMENT AND

HOLDING IN CONTEMPT

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:

2-28-20

PLEASE TAKE NOTICE that plaintiff Amin Booker will make an application to the Court for the Southern District of New York to be heard on the 25 day of October 2019 at the United States Court House, 500 Pearl Street, New York N.Y. 10007 at ___ o'clock of the forenoon of said date or soon thereafter as he may be heard, for an Order of relief from part of a judgment, Enforcing a judgment and holding defendants in Contempt, Pursuant to Fed. R. Civ. P. 60 (b), 70 (a)(b)(e), 18 U.S.C 401 (3)

DATED: September 24, 2019

Signature

x Amin Booker

Amin Booker #98 A6248 Plaintiff Pro Se

Richard W. Brewster

Assistant Attorney General, Counsel Defense

28 Liberty Street

New York, N.Y. 10271

Elmira Correctional Facility

P.O. Box 500

Elmira, N.Y. 14902

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Docket No. 11-CV-2694 (ALC)

Leroy Peoples, et al.

                    Plaintiff    ,

        -against-

Anthony Annucci, et al.

                    Defendants

PLAINTIFFS AFFIDAVIT IN SUPPORT
OF MOTION ORDERS FOR RELIEF FROM
JUDGMENT, ENFORCEMENT OF JUDGMENT,
CONTEMPT AND SANCTIONS

Amin Booker deposed and says:

1. I am above the age of 18 yrs, am confined disciplinarily in DOCCS custody at Elmira Correctional Facility solitary housing Unit (SHU) since April 22, 2015 through current date

2. I am a class member of the above captioned matter

3. The court's order dated March 31, 2016 approved a settlement agreement between both parties which in parts pertinent to this motion mandated:

   a) plaintiffs attorney would be paid $100,000.00 a year for five (5) years until Oct 2021 to enforce and oversee the settlement terms, periodic prison tours, regular data production and analysis, implementing the various settlement

agreement provisions, mediate, take necessary judicial action etc. on the agreement that "only class counsel may seek enforcement of the judgment on behalf of the class members for any non-compliance" for the same five (5) year period (§ XXI of the agreement)

b) SHU inmates on PIMS level 3 will be afforded two visits (2) per week, (Title 7 NYCRR § 302.2 (i) (1) (i) & Attachment A); All DOCCS staff will be trained in and utilize de-escalation techniques before issuing disciplinary actions against inmates that are already housed in SHU for less serious/non violent incidents, and, inmates may only be dropped down to PIMS level 1 if found guilty in a tier disposition (Settlement Agreement pg. 26-27, 46-47) Title 7 NYCRR § 303.1 (c)

4. Elmira Facility visit registry computer does not provide SHU inmates the PIMS level 3 two (2) visit per week availability. The computer provides only that SHU inmates can receive 1 visit per week. The computer frequently does not automatically re-set the SHU inmates next available visit date, which then requires the correction officer assigned to the visit post to summons a supervisor having computer access code(s), to manually over-ride the computer in order to allow the visitor to attain their visit at that time.

5. Staff assigned to Elmira's visit registration post, at their discretion, affords SHU level 3 inmates & their visitor(s) the two (2) visits per week, and, they choose discretionarily the date(s) to calculate when and/or how the family will be afforded their level 3 two visit per week, rather than comply with the Agreement.

6. On September 23, 2019 while on PIMS level 3, plaintiff Booker's cousin,

2

M. Alovie and a second loved one traveled more than 200 miles from New York City to Elmira to give Booker his second visit of that week, and were denied visit.

7. On Sept. 24th, 2019 i'd spoken to Luitenant McCooey about the wrongful denial. The LT addressed the visit staff and they told him that " Booker received a visit on Sept. 19th and 22nd so that is his 7 day period.". SHU Sgt. Dinnini relayed this message to Booker.

8. Booker demonstrated to Sgt. Dinnini that he'd received visits in September on the following dates : Sat. 7th, Sat 14th, Thurs. 19th. The 14th & 19th were his two visits for that week.
  Sunday the 22nd, 2019 began a new week.. The Sgt. told Booker, " Because the 19th and the 22nd is within 7 days, you aren't entitled to a visit until the 27th." Booker asked the Sgt. " Am I entitled to 2 visits per-week according to the Settlement agreement." The Sgt. responded, " You can have a visit within 7 days, nothing is changing"

9. Booker subsequently addressed this issue to Elmira's Superintendent J. Rich by mail, see Plaintiff Bookers Exhibit "A" (hereafter B.Ex."_" attached hereto), to Mental Health Staff Mr. Welcheski on Sept. 24, 19 to no avail

10. On Sept. 24, 19 Booker addressed this problem to Luitenant Chadwell, showed him the Agreement with attachment A (B.Ex. "B"), along with his calander visit dates of August - Sept. 2019. LT. Chadwell stated, " You can only have a visit within Seven days, not Per-week and nothing is going to change". Booker asked him " Do you comply with the agreements two visits per week for level 3 PIMS inmates." LT. Chadwell replied, " You get a visit within 7 days, we do not go by per-week.

3 .

You can write DSS Keller if you don't like the way we do things." Booker asked the LT. to contact DSS Keller because his family will visit any day and we have no idea what is going to occur. The LT. would not call the DSS. Booker then asked Mr. Welcheski, the SHU staff & Captain Henry to contact DSS, and/or rectify the problem. All persons declined saying, " I can't tell the DSS to come. Nothing is going to change, you can get a visit within 7 days."

11. Booker's fiance Ms. L. Ripley is his most frequent visitor whove visited him consecutively at Elmira's SHU each weekend for three years. On numerous dates, the computer at registration failed to reset Bookers visit availability per week and the visit assigned steady officers summoned supervisors to manually process her visit. If "a non steady visit staff is present, they initially deny her visit, and she have to call around for supervisors to explain a) the last date Booker received a visit, b) that Booker is on PIMS level 3 and can receive 2 visits per-week pursuant to the Agreement. On every such occassion, Ms. Ripley would enter the visit room extremely late and in tears.

12. This exact scenario occured, not limited to the following dates : Aug. 17th, 18th, 31st, Sept. 14th and 22nd 2019. On Sept. 18th, a steady visit registration officer "Bentley" continually attempted to influence the area supervisors to deny Ms. Ripley visit. The process was delayed for 1 hr. 35 minutes. A supervisor reviewed all visit logs and afforded our visit. Booker filed a written complaint to Deputy Superintendent of administration, Ms. Gardner on Aug. 19, 2019. He filed a verbal complaint to LT. McCrory on Aug. 18, 19 and the LT. agreed to address visit staff. On Aug. 19, 2019 Booker spoke to Guidance Counselor Mr. Brown regarding the visit problem, Mr. Brown stated that he'd just received Ms. Ripleys telephone call about the

4

problem and " there is nothing I can do." Booker asked Mr. Brown to " Contact Mr. Brewster, DOCCS Counsel in the Peoples et al Agreement," to no avail.

13. On Aug. 19, 2019 Ms. Ripley called plaintiffs attorney at N.Y.C.L.U, informed Ms. April Rodriguez of the visit problems, and Ms. Rodriguez replied " there is nothing we can do. You received your visit." On Sept. 20, 2019 Ms. Ripley Contacted plaintiffs attorney, Mr. Phillip Desgranges, complained of the visit problem and Mr. Desgranges asked her to " send him the complaint in writing". She complied. On Sept. 23rd, 19 upon Mr. Alaouie being denied his visit with Booker, he'd Called Ms. Ripley, and she'd telephoned plaintiffs Counsel, and Elmira attempting to get Mr. Alaouie his visit by right, informing them that Booker is AMS level 3 and his visit on Sept. 19, 19 was his second visit of the week from Sept. 14th, 19... Neither plaintiffs Counsel nor Elmira defendants complied with the Agreement; Mr. Brown told Booker, " there is nothing I could've done."

14. Prior to the Agreement, Elmira staff began SHU inmates visit schedule from Sunday – Saturday, for atleast 2 decades. Elmira's 'Executive team, in a silent protest to the Peoples et al agreement,                  discontinued the begin date of a week. Rescinded the Directive mandate of " visit per week", and implemented a new term called " visit per seven day period". (B. exh "c"). The "seven day" term has since been open for discretionary interpretation. Staff manipulates the term by telling SHU inmates and their visitors that " the 7 day term begins the day after the SHU inmate received his last visit". The calculation equals 9 day intervals. i.e. [ visit on Monday, next visit eligibility is the following week Tuesday.]

15. Other staff interpret the "seven day" term to disregard the Agreement of two visits per week, to just select a date within seven days of last visit, as

5

done on Sept. 23, 19 to deny Booker's Cousin visit.

16. Numerous of Bookers loved ones no longer visit him at Elmira because of the negative experiences, including but not limited to: being denied entry; lost funds in travel expenses; hours wasted in travel; delayed visit time providing dates of last visit, PIMS policy per agreement, anxiety & frustration. Booker is suffering mental anguish, anxiety & depression; high blood pressure; lost of family ties, lost of support team.

17. On May 4, 2017 while on a visit with Ms. Ripley, a SHU officer Odgiorno allegedly searched Bookers cell, recovered a writing pen, issued Booker a tier III Misbehavior report (MBR) for disciplinary action, dropped Booker from PIMS level 3 down to PIMS level 1. (B. exh. "D"). The C.O. is neither trained in De-escalation techniques, and no staff attempted to apply de-escalation mandates prior to issuing the disciplinary action. Elmira's staff, Sergeant Mazzarco refused Bookers request to notify his visitor Ms. Ripley to discontinue her pre-arranged trip from New York City to Elmira on May 7, 2017 since Booker would be PIMS level 1... On May 7, 17 Ms. Ripley traveled 200 Miles, 8 hours, spent 70$ travel expenses and was denied entry. Booker filed facility grievance for this matter and the grievance was denied. (B. exh "E1 & 2")

18. From Aug 18, 2017 to May 13, 2019 Elmira's SHU staff issued Booker 8 disciplinary actions (MBR's) for non-violent, less serious incidents, i.e. [Aug. 18, 17; Oct. 10th, Oct 12th, Nov. 28, 2017; July 15; Sept. 11, 2018; Feb. 5, May 13, 2019] (B. exh's "F1-F__ ) In neither instance did either Corr. officer issuing the tier III MBR's attempt to use de-escalation techniques, neither hearing officer utilized de-escalation techniques, in each instance, Booker asked each C.O. & hearing officer if they abide by the settlement agreement of de-escalation techniques and each admitted they

6

" do not apply it ": or " are not cognizant of it." In each issuance, Elmira's defendants dropped Booker to level 1 PIMS on the date they'd wrote the MBR's. ( B. exhs" G1 - G3 )

19. As a result of some of these premature PIMS level drops, Booker's visitors were denied entry upon arrival at Elmira for PIMS level 3 second visit per week pre-arranged schedules, not limited to: May 18, 2019 Lenord Mann rejected.

20. In June 2019 Booker and Ms. Ripley again contacted plaintiffs attorney at NYCLU about the Agreement deprivations. On around July 11, 2019 Booker had a teleconference with Mr. P. Desgranges & Ms. A. Rodriguez, plaintiffs attorney. Booker detailed the defendants failing to comply with the de-escalation techniques, dropping him to PIMS level 1, and their testimonies that they " Arent trained in de-escalation." Attorney's requested Booker to mail them the documentary proof. Booker hand delivered to Ms. Ripley the following documents which she'd given to attorneys. [ B. exh "D", " E1 & 2", " G1-G3", the disciplinary hearing transcript of Booker v Venettozzi, Supr. Court Index No. 2293-19, and B. exh. " H" ]

21. To Booker's knowledge, the attorneys took no action. Booker has previously communicated with plaintiffs counsel Mr. Desgranges by telephone, and written correspondence detailing the defendants failing to comply with the agreement. Plaintiffs attorney instructed Booker to, " File facility greivances, appeal it to CORC, mail us the decisions." Booker has written defendants counsel Mr. Brewster numerous times re: the failures to comply. Mr. Brewster never responded, and never took corrective action.

22. Plaintiffs Attorney Are telling Booker to relitigate the agreement terms by filing

7

letters and greivances to defendants, and to instruct other SHU inmates to do the same.. In July 2018 Booker assisted three of his neighbors, ie. [D. Newman # 15A3223, T. Sapp. 40 cell, and C. Evans# 14B2424] in filing greivances, copying MBR's etc & mailing to Mr. P. Desgranges regarding the defendants issuing them disciplinary MBRs for hanging their wet socks & underwear on the cell gate to dry, dropping their PIMS level to level 1, and not utilizing de-escalation techniques in accord with pgs. 26-27, 46-47 of Agreement.. Counsel took no action

23. Booker and his loved ones, including Ms. Ripley, are targets of defendant employees at Elmira because of their continual greivances and requests for adherance of the settlement agreement.. Staff are frustrated with them and frequently harrass them.. Plaintiff attorneys are being paid $100,000.00 a year to over-see compliance with the order but they aren't doing so at Elmira.

24. The defendant contemnor's of the acts in the foregoing, are DOCCS employees of Elmira: Robert Delgiorno, Kenith Sexo, Robert Siglin, Sharon Bottere, Luietenant Chedwell, T. Thompson, B. Evans, L. Tammelin, J. Aittecour, M. Naids, DSS Gregory keller, unidentified John Doe visit registry officers, Def. Counsel Richard W. Brewster, Jeb Harben

Pursuant to 28 USC 3 1746, I Amin Booker declare under the penalty of perjury that the foregoing is true and correct.

Dated: September 27, 2019

Amin Booker # 98 A6245

Elmira Corr. Facility, 1879 Davis Str.

Elmira, NY 14902

Truly x _Amin Booker_

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

PLAINTIFF BOOKERS SUPPLEMENTAL

DECLARATION IN SUPPORT OF MOTION

Leroy Peoples, et al

Plaintiffs

Dock. No. 11-CV-2694 (ALC)

-against-

Anthony Annucci, et al.

Defendants

Amin Booker deposes and says:

1. I submit this supplemental declaration in support of my motions for Rule 60 (b) of the Fed. R. Civ. P., Rule 70 (a) & (e) thereof, and 18 USC§461 (3) for relief, enforcement, sanctions and civil contempt.

2. The Elmira facility defendant contemnors implemented their policy to circumvent the Agreements visit incentives for SHU inmates, as early as January 29, 2017,

3. On January 29, 2017 plaintiff Bookers cousins, Danny Brown - who is a quadroplegic confined in a wheel-chair, and Jobei McCray traveled from New York City to visit Booker at Elmira, and was denied entry by John Doe, using the pre-meditated "Seven (7) day theory" policy.

4. Booker filed a greivence with Elmira's greivence resolution committee, and the executive team denied his greivence, denied reimbursing his Cousins moneys, refused to offer apologies by advancing their intent to implement the 7 day theory (see B. exhs "I1-I2")

5. On Sept. 23rd, 19 Ms. Ripley telephoned plaintiffs Counsel, Ms. A. Rodriguez at 9:09 am informing her of Elmiras deprivations of Mr. Alaouie & Simmons visit, whereupon Ms. Rodriguez listened in on the call with Elmira's Staff. Ms. Rodriguez Communicated with defendants Central office and was told that "the matters resolved, Booker's visit Can re-register". Mr. Alaouie & Simmons waited 2 hours in the parking lot, returned to visit registry, and John Doe, Jane Doe again denied their visit on the orders of DSS Keller,. at 11:20 am [i.e. Deputy Superintendent of Security   ]

6. Ms. A. Rodriguez subsequently informed Ms. Ripley that "the matter is resolved," on, Sept. 24, 2019. On Oct. 3rd, 19 upon visit, Elmiras staff hadn't re-set Booker's visit availability in Computer, C.O. Bentley retaliated on Ms. Ripley by making her remove her sneakers to walk through the Magnometor bare feet as it were raining, the floor was wet and dirty. Ms. Ripley telephoned plaintiffs Counsel Mr. P. Desgranges and A. Rodriguez on Oct. 4, 19 informing them that Elmira won't set the visit registry Computer, and, that DSS Keller emphatically declared that Elmira will not afford the two (2) visits per-Week, asked them to resolve these matter's because She intends to Visit Booker on Sunday Oct. 6, 2019 and Mr. Desgranges & Ms. Rodriguez refused to resolve the matter, and told Ms. Ripley to "Just go up there, see what happens, and let Me know the results on Monday"

2

7. Upon visiting Booker on October 6, 2019, the visit registry computer didn't re-set Bookers visit week, C.O. Bruce and other staff attempted to deny Ms. Ripley's visit. Ms. Ripley telephoned several Elmira departments to rectify the matter. Ms. Ripley's process was delayed from 8:30 am until 11:55 am.

8. Deputy Superintendent of Security Gregory Keller, is the highest ranking official at Elmira, aside from the Superintendent. On Sept. 30, 2019 Booker sought resolution from Keller regarding his visitor's being denied his level 3 visit on Sept. 23, 2019 and the failing to re-set the visit registry computer. Keller stated, " I denied your Sept. 23, 19 visitors because you had a visit on Sept. 19th." Booker showed him the Rewster agreement re: 2 visits per week, and informed him that central office directed Elmira to accomodate my family the level 3 visit. Keller replied, " Yeah, it doesn't matter, this is Elmira and im not allowing any SHU inmates a per-week. It's after 7 days, that's it, doesn't matter who you contact. And im not re-setting the registry computer, it will remain as it is."

9. Ms. Ripley further filed greivances to DOCCS officials regarding the seven day theory on May 2017 (B. exh " J1"); the May 4, 2017 visit denial & Pins procedure violation, (B. exh " J2"); and the Sept. 23, 19 visit deprivation & computer registry problem (B. exh " J3") to no avail.

10. Plaintiffs Counsel, Mr. Desgranges or other, are dismissive of plaintiffs plights, tasks, and injuries, are forcing visitors to travel hundreds of miles to Elmira at their risk, and will not obtain judicial relief on behalf of the class in accord with the agreement.

I swear pursuant to the Penalty of Perjury Pursuant 28 USC § 1746 that the foregoing is true.
Dated: October 7, 2019
                                                    Truly, _Quinn Booker_

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
                                              x

    Leroy Peoples, et al
                    Plaintiffs
                                        x
                                    Dockt. No. 11-cv-2694 (ALC)

    -against-


    Anthony Annucci, et al
                    Defendants
                                        x


        MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS PARTIAL MOTION
    FOR RELIEF FROM JUDGMENT RULE 60(b) AND MOTION TO ENFORCE
        JUDGMENT, HOLD DEFENDANTS IN CONTEMPT & FOR SANCTIONS RULE 70

TABLE OF CONTENTS

| | Page |
|---|---|
| Preliminary Statement | 1 |
| Statement of Relevant Facts | 1 |
| Jurisdiction | 3 |
| Argument | |
| Point I ... There Are Pertinent Reasons Justifying Relief From Part Of The Order | 3 |
| Point II ... The Defendants Failure To Comply With Order Warrants Enforcement Of Judgment And Holding In Contempt | 5 |
| A. Visit Incentives Mandated | 6 |
| B. Doccs Staff training and Implementing de-escalation techniques Mandated | 6 |
| C. The Proof of Non Compliance Is Clear and Convincing | 7 |
| i. Deprivation of Visitation Incentives | 7 |
| ii. Failing to train in and apply De-escalation Techniques or To Adhere To PIMS Level Changes Protocol | 8 |
| D. The Contemnors Have Not Attempted To Comply | 9 |
| Conclusion | 10 |

TABLE OF AUTHORITIES

Pages

Alaska Pulp Corp v U.S.,
41 Fed Cl 611 (1988)                                                    5

Arthur v Superior Court of Los Angeles County,
62 Cal. 2d 404                                                          5

Badgley v Santacrose,
800 F. 2d 33, (2d Cir. 1987)                                            3

Bowens v Atlantic Maintenance Corp.,
546 F. Supp. 2d 55 (E.D.N.Y. 2008)                                     5

Filmvideo Releasing Corp v Hastings,
517 F. Supp. 66 (S.D.N.Y. 1981)                                         5

House v Secy of Health and Human Services,
688 F. 2d 7 (2d Cir. 1982)                                             3

McGuffin v Springfield,
662 F. Supp. 1546 (USDC CD III 1987)                                  6

New York State Nat. Organization for Women v Terry,
697 F. Supp. 1324 (S.D.N.Y. 1988)                                     10

New York State Nat. Organization for Women v Terry,
732 F. Supp. 388 (S.D.N.Y. 1990)                                      10

Re Westminster Realty Corp.,
123 App. Div. 797, 108 N.Y. Supp. 551 (1908)                          10

Sec v Oxford Capital Securities, inc.,
794 F. Supp. 104 (S.D.N.Y. 1992)                                       3

Thompson,
782 F. 2d                                                              6

ii

U.S. v International Broth of Teamsters, Chaufers, Warehousemen and Helpers
of America, AFL-CIO,
776 F. Supp. 144, LRRM (BNA)  (SDNY 1991) . . . . . . . . . . . . . . . . . . . 10

Vuitton v Carousel Handbags,
592 F. 2d 126 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6


Federal Rules Civil Procedure
   Fed R. Civ. P. § 60 (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,3,5
   Fed R. Civ. P. § 70 (a) (e) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,3,5


   Federal Statutes
18 U.S.C. § 401 (3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,3,5
   OTHER AUTHORITIES
   Fed. Proc & Proc. § 2960 . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


New York Codes Rules & Regulations
   7 NYCRR § 303. 1 (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6


West Ann. Code Civ Proc. § § 1211, 1217 . . . . . . . . . . . . . . . . . . . . 5


11 C Wright & Miller . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## STATEMENT OF THE CASE

Amin Booker, pro-se class member to the above action brings a combined motions for relief from parts of the Mar. 31, 2016 Order pursuant to Rule 60 (b) of the Fed. R. Civ. P., and to enforce the judgment and hold parties in contempt, pursuant to Rule 70 (a) & (e) of the Fed. R. Civ. P and title 18 U.S.C. 401 (3)

## STATEMENT OF THE RELEVANT FACTS

This court signed a settlement Agreement on March 31, 2016 between class members, inmates confined in DOCCS Special Housing Units (SHU) and DOCCS Commissioner and employees that over-see the SHU program. (Order). The agreement stipulates various mandates that were to be implemented by October 1, 2016, including a P.I.M.S. level 3 incentives that afford SHU inmates to have two (2) visits per week, (B. Exh "B"), & DOCCS staff to be trained in de-escalation techniques and principles and to apply those techniques prior to taking disciplinary action against inmates already confined in SHU that are involved in non-violent, less serious incidents of misbehavior and, inmates pending disciplinary action in SHU, shall not be dropped to PIMS level 1 unless found guilty at an ensuing tier hearing (Agreement pp 26 27, 46-47). Last, plaintiffs as class members are not to bring motions to enforce any aspect of the Order on the basis that plaintiffs attorney must over-see that the entire agreement is complied, take all actions on behalf of plaintiffs to enforce agreement and be paid $100,000.00 a year from 2016-2021 to over-see this case. (Order p. 16)

On Sept. 23, 2019 Elmira's visit registration officer's denied plaintiff Booker's visitor's M. Aleovie, & C. Simmons entry to visit. Booker is on P.I.M.S.

level 3 and was entitled to the visit on Sept. 23,19,. as he'd had a visits on Sept. 14th & 19th. 2019, then Sept. 22nd 2019 ( Pl. Aff. ¶¶ 7-8). On Sept. 23, 2019 upon plaintiffs family contacting plaintiffs attorney, Ms. April Rodriguez contacted defendants central office to resolve the matter, Central office notified Elmira Staff to allow Mr. Bookers visitors entry, but when they'd attempted to re-enter, Defendant Keller of Elmira informed his staff to deny the visitors entry. ( Pl. Supp. Decl. ¶¶   ). Elmira defendants altered the visit schedule in Jan. 2017 to deprive SHU inmates the two (2) visits per-week pursuant to the Agreement, and will not install the visit accommodation into the visit registration Computer program ( Pl. Aff. ¶¶ 4-16) ( Pl. Supp. Decl. ¶¶ 2-5, 8-9) (B. exh "J3")

On May 4, 2017 and Seven additional dates thereafter, while plaintiff Booker was confined in SHU, Elmira's staff that are not trained in de-escalation techniques and principles, had issued Booker misbehavior disciplinary actions, and dropped him from his respective PIMS levels down to PIMS level 1 on those very same dates, despite him not attending a tier hearing or receiving a guilty disposition. ( Pl. Decl. ¶¶ 17-19). Neither of the incidents of alleged misbehavior were violent, or Categorized as serious. However, in neither incident, did any staff member attempt to apply de-escalation techniques prior to writing disciplinary charges against Booker.

On Several dates, Booker and his family Contacted plaintiffs attorneys and notified them of the defendants refusals to comply with the settlement Agreement, Sought resolution. Plaintiffs attorney, instructed Booker several times to " file grievances to Docces about these issues". ( Pl. Decl. ¶¶ 20-23). Booker Contacted the defendants on numerous occasions notifying of the non-compliance incidents and defendants Counsel refuse to Correct the violations or to even acknowledge receipt of Bookers Communications. ( see Pl. Supp. Decl. ¶¶ 5-7)

## JURISDICTION

Rule 60 (b) (1) & (6) of the Federal R. Civ. P. empowers the court to relieve a party from a final judgment or order for reasons of "excusable neglect" and/or any other reason that justifies relief. (see id) see House v Secy of Health and Human Services, 688 F. 2d 7, 9 (2d Cir. 1982)

Rule 70 (e) of the Fed R. Civ. P. empowers the court to enforce a judgment for a specific act. see Sec v Oxford Capitol Securities, inc, 794 F.Supp. 104, at 106 (S.D.N.Y. 1992) ("A court has inherent power to enforce compliance with it's lawful orders through civil contempt. The instant order is no less enforceable simply because it is part of a consent agreement") [citing Badgley v Santacroce, 800 F. 2d 33, 38 (2d Cir. 1987) cert. denied 497 U.S. 1067, 107 S.ct. 955, 93 L.E.d. 2d. 1003 (1987) 18 USC § 401 (3), Court may impose fine & Civil Confinment

## ARGUMENT

### POINT I

### THERE ARE PERTINENT REASONS JUSTIFYING RELIEF FROM PART OF THE ORDER

The plaintiffs attorney(s) signed stipulations to the order that would prevent members of the class action from seeking enforcement or judicial action if the defendants decline to comply with the settlement agreement under the premise that the plaintiffs attorneys will over-see compliance and resolve any disputes that would arrive, and/or obtain judicial relief. (Ord & stipulations). Plaintiffs attorneys are being paid $100,000.00 per year for five (5) years to oversee these matters, since 2016 - current date until 2021

Becker has been notifying plaintiffs attorney since April 2017 that the

3

Elmira defendants are refusing to adhere to several aspects of the agreement terms, and asking for resolution. Plaintiffs attorneys are instructing Booker to relitigate the matters on his own, have other inmates re-litigate and send greivance responses to counsel. (Pl. Aff. ¶¶ 20-22). Plaintiffs Counsel are not attaining judicial relief from the court although they have attempted to have the defendants to adhere to the visitation term of the agreement on atleast one (1) day, Sept. 23, 2019 and the defendants agents still emphatically declined. (Pl. Supp. Decl. ¶¶5-6) See also (B. exh "H")

Booker, his visitors and others have been suffering harm and damages from the defendants refusal to adhere to the terms of the Agreement since Jan. 29th, 2017 - Current date, with no forseeable relief, and have no way to obtain relief unless and until the court gives partial relief from the judgment and order that prevents class-members from obtaining enforcement, and solely depending on counsel of plaintiffs to obtain relief on their behalf. (see Pl. Aff. ¶¶ 21-23) ( Pl. Supp. Decl. ¶¶2-6) (Pl. Aff. ¶¶ 4-19 w/exh's) (See B. exh I1-I2)

Pursuant to Rule 60 (b)(1) "excusable neglect" and (6), of the Fed. R. Civ. P. the facts present reasonable justifications for this court to relieve Plaintiffs from part of the judgement making Booker and SHU inmates dependent upon Class attorney to obtain enforcement. Three years has expired since these terms of agreement was to have been implemented. Plaintiff Booker, his visitors, and other S.H.U inmates and their visitors, are being put out of finances, and resources, and peace of mind continually for arbitrary purposes, without a true method to obtain judicial enforcement of the terms agreement. Bookers family intend to visit him at Elmira each week, but each week it is the discretion of defendants to allow them the visit, and this action is improper ( Pl. Aff. ¶¶ 4-5, 10-11) ( Pl. Supp. Decl ¶¶ 6-8, 10) (see also, B. exh "J1", J3-)

4

POINT II

THE DEFENDANTS FAILURE TO COMPLY WITH ORDER WARRANTS

ENFORCEMENT OF JUDGMENT AND HOLDING IN CONTEMPT

Rule 70 (a) '(e) of the Fed. R. Civ. P. empowers this court with inherit power to enforce a judgment that requires a party to perform, if the party fails to perform within the time frame specified. The court may order the act to be done - at the disobedients party's expense. (id). See also Filmvideo Releasing Corp. v Hastings, 517 F. Supp. 66, 68 (S.D.N.Y. 1981).

Title 18 USC § 401 (3) empowers this court to punish by fine or imprisonment, or both, at it's discretion, such contempt of a court of the United States Authority that § (3) Disobedience or resistance to its lawful writ, process, order, rule, decree or command. See Bowens v Atlantic Maintenance Corp, 546 F. Supp. 2d 55, 63-64 (E.D.N.Y. 2008). Contempt which does not occur in immediate view and presence of court is indirect contempt, and in such case an affidavit must be presented to court stating facts constituting contempt, an order to show cause must be issued, and a hearing on the facts must be held by a judge. See West Ann. Code Civ Proc §§ 1211, 1217 Arthur v Superior Court of Los Angeles County, 62 Cal. 2d 404; see also Alaska Pulp Corp v U.S., 41 Fed. Cl. 611 (1988)

A court may invoke the Statute when it is able to cite a decree, or rule which "sets forth in specific detail an equivocal command" [citation omitted]. ("Civil Contempt proceedings are generally summary in character 11C Wright & Miller, Fed. Proc. & Proc. § 2960 (1973). Nevertheless, Findings of fact and conclusions of law are appropriate, and indeed encouraged on contempt motions (omitted). The court then, is not free to exercise it's discretion

and withold an order in civil contempt awarding damages, to the extent proven, but it does retain broad discretion in fashioning an equitable remedy to ensure future compliance.") See McGuffin v Springfield, 662 F.Supp. 1546, 1548-49 (USDC CD Ill 1987) citing; Thompson, 782 F.2d at 722 and Vuitton v Carousel Handbags, 592 F.2d 126, 130 (2d Cir. 1979)

## A. Visit Incentives Mandated

The settlement order agreement of this case did mandate the defendants afford inmates confined in SHU that have achieved PIMS level 3 status, to receive two (2) visits per week. (See B. exh. "B") See also, title 7 NYCRR § 302.2 (i)(1)(i). The policy was mandated to be implemented by October 1, 2016 (see Stipulation & Agreement, Implementation dates Calendar)

## B. Doccs Staff Training And Implementing De-escalation Techniques Mandated

The settlement order agreement did mandate that all of Doccs SHU personal be trained in de-escalation techniques and principles, receive anual peace officer training in de-escalation techniques and principles beginning at 2016-2017. De-escalation methods were mandated to be applied to less serious - non violent incidents of misbehavior by inmates already confined in SHU, as opposed to the issuing of disciplinary proceedings. And pending disciplinary hearing decisions, an inmate in SHU should not be dropped from a progressive P.I.M.S level down to PIMS level 1 unless and until the imposition of a penalty and disposition of guilt (see Stipulations & agreement pp. 26-27, 45-47; implementation Calander dates) See also Title 7 NYCRR § 303.1 (c)

## C. The Proof Of Non Compliance Is Clear and Convincing

### i. Deprivation of Visitation Incentives

The defendants at Elmira implemented a policy in January 2017 to circumvent the settlements Order incentive of two (2) visits per week, by rescinding the SHU visit Calander schedule, and creating an ambiguous term titled "within 7 days", and allowing individual staff discretionary authorization of interpreting and applying the term. (see B. exh "C") (Pl. Aff. ¶¶ 4-5) The defendant's refuse to program the visit registry computer to recognize the two (2) visits per-week affordance for SHU inmates on PIMS level 3, or, to automatically re-set the one (1) visit per-week expiration from SHU inmates last visit. (Pl. Aff. ¶¶ 11-13) (see B. exh's: "A" & "J-3")

On Sept. 23, 2019 while on PIMS level 3, Bookers loved one's M. Alaouie and Chad Simmons attempted to visit him for his 2nd visit per-week, and Contemnors Jane Doe & John Doe denied their visit using the "7 day theory." Mr Alaouie & Simmons contacted Ms Ripley regarding the denial, and jointly they'd contacted plaintiffs counsel who'd contacted defendants counsel. After a two (2) hour process from 9 am to 11am, counsel presumptively resolved the problem and assured Mr. Alaouie & Simmons they were cleared for the visit, Contemnor Keller, Jane Doe & John Doe disregarded counsels instructions and again denied them [Alaouie & Simmons] visitation (Pl. Supp. Decl. ¶¶ 5-6 )

On Sept. 30, 2019 Contemnor Keller explicitly told Booker that he is not adhering to the term of the settlement agreement. (Pl. Supp. Decl. ¶ 8 )

On October 3rd, 2019 upon Ms. Ripley's visit, the registry computer did not

7

register Booker's availability for two (2) visits, and, C.O. Bentley imposed an arbitrary search tactic against her to harass her for her filing complaints (Pl Supp Decl. ¶ 6)

ii. Failing To Train In and Apply De-escalation Techniques Or To Adhere To PIMS Level Changes Protocol

On May 4, 2017 C.O. Delgiorno issued Booker a disciplinary action and dropped him from PIMS level 3 down to level 1 (see B. exhs." D" and "G-1"). The alleged misbehavior was less-serious and non-violent, yet Delgiorno did not attempt to apply De-escalation techniques. Moreover, during the ensuing disciplinary hearing, it was admitted that neither C.O. Delgiorno or the hearing officer were trained in the De-escalation techniques. (Pl. Aff. ¶¶ 17-18)

As a result of the defendants May 4,17 contumacious actions, Booker's Francé, Ms. Ripley, was denied entry to visit on May 7th, 2017, and the defendants denied Booker's facility filed greivance thereof. (Pl. Aff. Decl. ¶ 17) (B. exh. "E1-E2")

From July 24, 2017 - May 13, 2019 several agents of defendants filed disciplinary actions against Booker in Elmira's SHU. Each alleged incident was non-violent and less-serous. (see B. exhs. "F1-F2"). On each incident, the defendants dropped Booker PIMS level down to level 1 on the date of issuing the disciplinary report, without even commencing the ensuing hearing (see B. exhs. "G1-G3"). As a result, Booker's family that was en-route to visit him, were improperly denied visits, not limited to: Ms. Ripley on

8

May 7, 2017 and Lenny Mann on May 18, 2019. (Pl. Aff. ¶¶ 17, 19).

Neither of the Correction officers that issued Booker those misbehavior reports were trained in De-escalation techniques.. At each ensuing tier hearing, the hearing officers and authors of the reports testified that they were either "not trained" in de-escalation, or, "not cognizant" of the Peoples etal, de-escalation principles.. Further, not in either of the alleged incidents of misbehavior did any staff attempt to apply a de-escalation technique with Booker, but simply issued disciplinary actions against him. (Pl. Aff. ¶¶ 17-18). Booker delivered hearing transcripts to plaintiffs attorney in July-Aug. 2019 with DOCCS staff testimonies that they aren't trained in or applying the de-escalation techniques at Elmira. (Pl. Aff. ¶¶ 20-22) (B. exh "H")

D. The Contemnors Have Not Attempted To Comply

The Elmira defendants have been requested by plaintiff and his loved ones on several occassions to adhere to the Peoples, etal settlement agreement terms, to no avail.. The settlements implementation calander instructed that these aspects of the Agreement be commenced by Oct. 1, 2016 and 2016-2017 ( see Implementation Calander ¶¶ V, XI )

Elmira's DSS G. Keller is the leading authority, and he'd expressly refused to comply with the agreements visit incentives (Pl. Supp. Decl. ¶ 8___ ), and vetoed defendants instructions to comply with the visit protocols on Sept. 23, 2019 (Pl. Supp. Decl. ¶ 5)

The Elmira defendants do not attempt to train correctional staff

9

in the de-escalation techniques, they have not attempted to apply those principles in Elmira's SHU prior to issuing disciplinary actions to less serious - non violent incidents, nor do they attempt to comply with the PIMS level change protocols. (Pi. Aff. ¶¶ 17-22) (B. exh. "E1-E2")

## HEARING REQUESTED

("Person charged with civil contempt is entitled to notice of allegations, right to counsel, and hearing at which plaintiff bears the burden of proof and defendant has an opportunity to present a defense.") U.S. v International Broth. of Teamsters, Chauffers, Warehouseman and Helpers of America, AFL-CIO, 776 F. Supp. 144, 139 LRRM (BNA) 2637 (S.D.N.Y 1991). However, ("Ordinarily, hearing is required before a court may order civil contempt sanctions, but no hearing neccessary where there are no material facts in dispute") See New York State Nat. Organization For Women v Terry, 732 F. Supp. 388 (S.D.N.Y. 1990), though ("Stipulated facts relieved court of obligation to conduct hearing before awarding civil contempt sanctions.") See, New York State Nat. organization For Women v Terry, 697 F. Supp. 1324 (S.D.N.Y. 1988). A contemnor who rests his defense on affidavits, without a request for an oral examination, thereby waives his right to the latter. See Re Westminster Realty Corp. (1908) 123 App. Div. 797, 108 N.Y. Supp. 551 See 57 A.L.R. 545 Pg.# 35

## IMPOSE FINE FOR INJURIES

Plaintiff is hereby requesting the court to impose sanctions and order the contemnors to pay a fine, jointly and/or severally for their disobedience

10

of the settlement order, decree, commands and agreement, sufficient to indemnify the petitioner-plaintiff Booker and his visitors for their losts and injuries hereby:

(a) $7.00 in U.S. Currency per-diem, from October 1, 2016 - the date the Agreements terms were to commence, until the date the contemnors, by certified affirmation with proof of service thereof, implement the following terms of agreement in which they've failed to:

  (i) To make Elmira's visit registry computer include that SHU inmates on Pims level 3 status can receive two (2) visits per-week,

  (ii) To make Elmira's visit registry computer re-set SHU inmates visit eligibility dates per-week

  (iii) Implement a mandatory policy of which all visit registration assigned officers & staff at Elmira afford SHU inmate visitor's their allowed visits per week, and two-visits per-week for Pims level 3, without discrepancy or delay, ie:

      October 1, 2016 - October 7, 2019    $ 7,707.00

  (b) $7.00 in U.S. Currency per diem, from October 1, 2016 - the date that the agreements terms were to commence, until the date the contemnors, by certified affirmation with proof of service thereof, implement the following terms of agreement in which they've failed:

(i) To train Elmira's staff in the de-escalation principles and techniques, and, fully incorporate the de-escalation principles and techniques in it's entirety instead of issuing SHU inmates disciplinary actions for less-serious & non-violent incidents,

(ii) To adhere to PIMS procedures to maintain SHU inmates PIMS level unless and until a guilty disposition to misbehavior is entered at a disciplinary hearing, ie.

October 1, 2016 - October 7, 2019   $ 7,707.00

(C) $ 500.00 in U.S. currency payable to each of plaintiff Booker's visitors for each time Elmira's contemnor's deprived them of visitation rights by violating the terms of the agreement, ie:

| | | |
|---|---|---|
| Danny Brown | January 29, 2017 | $ 500.00 |
| Joebi McCray | January 29, 2017 | $ 500.00 |
| Latasha Ripley | May 7, 2017; | $ 500.00 |
| Lenny Mann | May 18, 2019 | $ 500.00 |
| Mohammed Alaouie | September 23, 2019 | $ 500.00 |
| Chad Simmons | September 23, 2019 | $ 500.00 |

(d) Defendant Contemnors are to cover petitioner-plaintiff Booker's attorney fees, costs, bills, expenses accumulated in representing this action, pursuant to common law, statutory provisions and/or the equal labor clause that are applicable, and reasonable. The amount(s) to be determined

12

at appropriate time, and/or as the court directs plaintiff Bookers Bill of costs in this matter. and any relief the court deems just and equittable

## CONCLUSION

For the foregoing reasons, this court should conduct a hearing, relieve plaintiffs from dependency on the plaintiffs class attorneys to resolve and obtain judicial enforcement, and hold the defendant contemnors in contempt, enforce the judgment provisions, and order the defendants to pay fines to the injured parties, and order all other relief that this court deems just and proper.

Dated: October 7, 2019
Elmira, New York 14902

Truly, Amin Booker

Amin Booker# 98 A6245 Plaintiff-Pro-Se
Elmira Correctional Facility
P.O. Box 500
Elmira, N.Y. 14902

13

AFFIDEVIT OF SERVICE

Re. People et al v Annucci et al. Fed no. 11 cv 2694 (Alc)

I, Amin Booker hereby swears under the penalty of perjury that on October 9, 2019 I served an exact copy of the enclosed ("Motion with exhibits, for Rule 60 (b) 70 (a)(e) of Fed R.civ.P, and 18 USC §401 Sanctions & Contempt) by placing the same in a properly sealed envelope and delivered into the hand of correctional officer responsible for U.S. Postal service located at Elmira Correctional Facility. P.O. Box 500, Elmira N.Y 14902  addressed to

Mr. Phillip Desgranges. esg

NYCLU

125 Broad Street, 19th Fl.

New York, N.Y 10004

Truly & Amin Booker

Amin Booker # 98A6245
~~For a Correctional Facility~~
~~P.O. Box 500~~
~~Elmira, NY 14902~~

October 7, 2019

To: Clerk of the Hon.
Andrew L Carter jr. USDJ
United States Court House
500 Pearl Street
New York, N.Y. 10007

RE: Peoples et al v Annucci, et al Docket No 11-cv-2694 (ALC)
Plaintiff Bookers Motions for Sanctions, Relief and Enforcement

Dear Clerk

Enclosed for filing with the District Judge Ex parte are Motions pursuant to 18 usc § 401 (3) Rules 60 (b) & 70 (e) of the Fed R Civ P. with exhibits "A-J", an Order to Show Cause with Supporting papers. A Writ for Petition for Ad Testificandum Habeas Corpus with supporting papers

Please acknowledge receipt of these documents at your earliest convenience. Thank you for your time and assistance

Enclosed is an additional copy of said documents

Sincerely, Amin Booker

Amin Booker '98A0243

Elmira Correctional Facility

P.O. Box 500

Elmira, N.Y. 14902

Oct. 14, 19

To Clerk of the Court

Andrew L. Carter jr., U.S.J.

U.S. Court House, 500 Pearl Street

New York, N.Y. 10007

RE: Peoples v. Annucci, et al  Dock No. 11 cv 2694 (ALC)

Plaintiff's Booker Motion For Sanctions Relief and Enforcement

Dear Clerk,

Enclosed is an itemized list of the exhibits I'd submitted with the above Motion on October 9, 2019. Please attach to said motion, thank you.

AFFIDAVIT OF SERVICE

Amin Booker, hereby swears under the penalty punishable by perjury that on October 15 2019, I served an exact copy of the (Motion for Rules 60(b) 70(e) of Fed R Civ P. 18 USC § 401 sanction & enforcement with exhibits) by placing in a sealed envelope, delivered into the hand of the Correction officer responsible for Mailing U.S. Postal service at the above return address, addressed to: Mr Richard W Brewster, Assistant Attorney General In Counsel, Office of the Attorney General, 28 Liberty street New York N.Y. 10271

Sincerely, Amin Booker

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Leroy Peoples, et al                          DKt. No. 11-CV-2694 (ALC)

　　　　　　　　Plaintiffs

　-.against.                                   PLAINTIFF BOOKER'S LIST OF EXHIBITS IN

Anthony Annucci, et al.                        SUPPORT OF MOTIONS FOR RELIEF, ENFORCEMENT

　　　　　　Defendants    x                     AND CONTEMPT

| Exhibit | dated | DESCRIPTION |
|---|---|---|
| A | Sept. 23, 19 | Booker's grievance re: Visitors denial & Computer registry problem   (2 pgs.) |
| B |  | SHU program PIMS level 3 (2 visits per week) incentive. |
| C | Mar. 1, 2017 | Elmira Facilities Seven day Theory Visit policy change |
| D | May 4, 2017 | Misbehavior report |
| E 1 | July 10, 2017 | Superintendents response re: Denial of Ms. Ripleys 5/7/17 visit & drop of PIMS level |
| E 2 | June 26, 2017 | IGRC's response re: Denial of Ms. Ripleys 5/7/17 visit & drop of PIMS level |
| F1 | Oct. 9, 2017 | Misbehavior report |
| F.2 | Nov. 28, 2017 | Misbehavior report |
| F3 | July 15, 2018 | Misbehavior report |
| F4 | Sept.11, 2018 | Misbehavior report |
| F5 | Feb. 5, 2019 | Misbehavior report |
| F6 | May 12, 2019 | Misbehavior report |
| F7 | May 13, 2019 | Misbehavior report |
| G1 | May - Oct. 17 | Booker's Internal Locator System, PIMS Level Drops |
| G2 | Oct. - Nov. 17 | Booker's Internal Locator System, PIMS Level Drops |
| G3 | July 18 - May, 19 | Booker's Internal Locator System, PIMS Level Drops |
| H | July 20, 19 | Booker's Follow-up letter to plaintiffs counsel |

| Exh | date | DESCRIPTION |
|-----|------|-------------|
| I 1 | Feb. 28, 17 | Seargent Mazzarco's report justifying denial of Danny Browns, J. McFay's visit on Jan. 29, 17 - Re-implementing the Seven day Theory Policy |
| I 2 | Mar. 7, 17 | Greivance Superintendent response re: Denial of D. Brown's, visit |
| J 1 | May 2017 | Ms. Ripleys greivance re: The 7 day theory |
| J 2 | May 2017 | Ms. Ripleys greivance re: May 7, 17 denial of visitation |
| J 3 | Sept. 24, 17 | Ms. Ripleys greivance re: wrongful denial of visitors on 9/23/17 and denial of People's Settlement Agreement. |

Truly + *[signature]*

B. exh. "A"

To: Superintendent J. Rich, Elmira C.F.

Fr: Amin Baxter #98A6245, SHU 48 cell

Date: Sept. 23, 2019

Re: WRONGFUL DEPRIVATION OF VISIT

Dear Mr Rich,

I am writing to attain a final resolution to a visitation problem, and a reimbursement for my families visit denial. SHU inmates on PIMS level 3 status can receive two (2) visits a week, per Docs settlement order in Peofles v Annucci, Dkt. No. 11-cv-2694 (Mar. 31, 2016 S.D.N.Y.). However, in this facility, the visit registry staff wrongfully applies this policy discretionarily, and this policy is not uploaded into the computer registration. Only specific supervisors have access to over-ride the computer to log SHU visitors visitation because the computer monitors aren't automated.

On Sept. 23rd, 2019 my relative M. Alwie and a friend attempted to visit me and the registry staff denied them visitation, claiming that i'd " received my one visit for the week". By law I was entitled to the visit by right. I had received a visit yesterday, (Sept. 22, 2019), today would have been my 2nd visit for the week.

Prior to the 22nd, i'd received three visits in Sept., ie: Saturday 7th, Sat. 14th, and Thurs. 19th. Therefore the Sun. 22nd began my visit week. On Sept. 22nd, 19 my fiance Ms Ripley's visit was held up due to the computer's entries not being automated. She then specifically informed the staff that, " Amins family are visiting him tommorow the 23rd" and asked for the matter to be resolved. This has been a reoccuring problem since Oct. 2016. Any time there are different officers

D. exh. "A"

at the visit registry post, my visitor's are delayed for hours explaining to staff the visit policy/computer problem. They have to call watch commanders or ask for supervisors. On Aug. 18th, Sept. 14th and Sept. 22nd-2019 these problems occured when my family visited me.. Sir, this is a severe problem that must be rectified. My loved ones traveled from New York City and were wrongfully denied visitation. We've filed complaints on this problem to ORC guidance, Lieutenants, administrative staff to no avail. This destroys bonds in my relationships, discourages my loved ones, robs them of their money & time, causes depression and anxiety attacks, delays our visits continuously.. We've asked if there be a written/typed memorandum and/or calander posted to the visit registry computer directing any staff having the assigned post - of my (SHU inmates) visitation monitoring. At least until the computer monitor system is implemented. This remedy will prevent my loved ones from: being wrongfully denied visits; delayed visits to explain the PIMS system & the dates of my last visit, and awaiting a staff that can manually over-ride the computer.

   Sir, this denial was disastrous and un-neccesary.. The problem was forseeable and ignored. I am asking if you will please:

a) Arrange for my loved ones to be reimbursed their travel expenses

b) Permit me an emergency call on my telephone list to make amends to my loved ones and attempt to restore/maintain our ties

c) Implement a final resolution to this problem and afford me a make-up visit opportunity.

        I humbly await your reply, thank you for your time and concern
                    Truly ~ Dennis Burden

PG.# 13
B.exh B

| SHU Program Privileges by PIMS Level | | | | |
|---|---|---|---|---|
| | PIMS Level I | PIMS Level II | PIMS Level III | PIMS Level IV (PIMS IV at Upstate & Southport Only) |
| Time Spent in Each PIMS Level  (No regressions, deprivation orders or misbehavior reports) | 30 Days | 60 Days | 90 Days | Contingent on good behavior and positive programming |
| Daily Recreation (hrs. daily/traditional SHUs & Southport) | 1 hour | 1 hour | 1 hour | 1 hour at Southport on days when congregate rec is not offered |
| Daily Recreation (hrs. daily/ Upstate & S200s) | 2 hours | 2 hours | 2 hours | 2 hours at Upstate on days when congregate rec is not offered |
| Congregate Recreation (CPP/Upstate & Southport) | N/A | N/A | 2 hours once per week | 2 hours 3x per week |
| Restraints | Cuffs w/waist chain | Cuffs w/waist chain | Cuffed behind back | Cuffed in front |
| Telephone Call (15 minutes each) | None | One call during PIMS II | 1 call every 30 days | 1 call every 30 days |
| Visits (per week) | 1 visit | 1 visit | 2 visits | 2 visits |
| Headphones (or pers. radios where no jacks exist) | Yes | Yes | Yes | Yes |
| In-Cell Property  (Packages – Inmates will receive packages pursuant to Directive #4933, except PIMS III + IV will be allowed 1 package of Personal Clothes as listed, if not available in the inmate's property) | 4933 §302.2 | 4933 §303.2 | Personal Shorts & 1 pair sneakers | Pers. Shirt, Sweatshirt (non-hooded) & Sweatpants |
| Commissary | Stamps Only | 4933 §303.3 | Up to $5 non-cookable food/playing cards | Up to $10 non-cookable food/playing cards |
| Hygiene (Showers/Shaves per week) | 3 | 3 | 4 | 4 |
| Confinement Program Plan (CPP) | *See* Program Description in Final Settlement Agreement | | | |





**NEW YORK STATE**

## Corrections and
## Community Supervision

*Attachment A*

*Br. ex: "C"*

**ANDREW M. CUOMO**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

To:     SHU and Long Term Keeplock Inmates

From: Captain's Office

Date:   03/01/17

Re:     Visitation

---

    Effective April 1, 2017 SHU and Long Term Keeplock inmates will now be allowed one (1) visit per seven (7) day period as outlined in the directive. The current policy of allowing one (1) visit a week, between Sunday and Saturday, will be rescinded on the above mentioned date.

*Capt*

J. Scranton, Captain

B. Ex. "D"

FORM 2171A (4/01)

STATE OF NEW YORK-DEPARTMENT OF CORRECTIONAL SERVICES

## Elmira
Correctional Facility

## INMATE MISBEHAVIOR REPORT ♦ INFORME DE MAL COMPORTAMIENTO DEL RECLUSO

| 1. NAME OF INMATE (LAST, FIRST) ♦ NOMBRE DEL RECLUSO (Apellido, Nombre)<br>Booker, Amin | NO ♦ NUM<br>98A6245 | HOUSING LOCATION ♦ CELDA<br>SHU 41 |
|---|---|---|
| 2. LOCATION OF INCIDENT ♦ LUGAR DEL INCIDENTE<br>SHU 41 cell | INCIDENT DATE ♦ FECHA<br>5/4/2017 | INCIDENT TIME ♦ HORA<br>approx 10:35 Am |

3. RULE VIOLATION(S) ♦ VIOLACIONES

113.23 Contraband, 114.10 Smuggling

4. DESCRIPTION OF INCIDENT - DESCRIPCIÓN DEL INCIDENTE

On the above date and approximate time I, R, Delgiorno, was removing inmate booker 98A6245 from his cell for a visit, while removing this inmate from his cell I noticed excess towels and styrofoam cups so I entered, while removing these items from his cell I found a hard fullsize pen in his shoe which is contraband in the SHU, I removed these items as required in my post orders with no incident .

| REPORT DATE ♦ FECHA<br>5/4/2017 | REPORTED BY ♦ NOMBRE DE LA PERSONA QUE HACE EL INFORME<br>R Delgiorno | SIGNATURE ♦ FIRMA | TITLE ♦ TITULO<br>CO |
|---|---|---|---|

5. ENDORSEMENTS OF OTHER EMPLOYEE WITNESSES (if any)      SIGNATURES
ENDOSOS DE OTROS EMPLEADOS TESTIGOS (si hay)           FIRMAS      1

2                                                              3

NOTE: Fold back Page 2 on dotted line before completing below.

DATE AND TIME SERVED UPON INMATE          5-5-17   11:22 m          NAME AND TITLE OF SERVER
FECHA Y HORA DADO AL RECLUSO                                        NOMBRE Y TITULO DEL QUE ENTREGA    CO DiBDio

You are hereby advised that no statement made by you in response to the charges or information derived therefrom may be used against you in a criminal proceeding.   Por este medio se le informa que no se puede usar ninguna declaración hecha por usted como respuesta al cargo o la onformacion derivada de ella en una demanda criminal.

## NOTICE ♦ AVISO

REVIEWING OFFICER ( DETACH BELOW STATEMENT FOR VIOLATION HEARING ONLY)

You are hereby notified that the above report is a formal charge and will be considered and determined at a hearing to be held.
Por este medio se le notifica que el informe anterior es un cargo formal el cual se considerara y determinara en una audiencia a celbrarse

The inmate shall be permitted to call witnesses provided that so doing does not jeopardize institutional safety or correctional goals.
Se le permitira al recluso llamar testigos con tal de que al hacerlo no pondra en peligro la seguridad de la Institucion o los objetivos del Departamento

If restricted pending a hearing for this misbehavior report, you may write to the Deputy Superintendent for Security or his/her designee prior to the hearing to make a statement on the need for continued prehearing confinement.
Si esta restringido pendiente a una audiencia por este informe de mal comportamiento, puede escribirle al Diputado del Superintendente para Seguridad o su representante antes de la audiencia para que haga una declaracion acerca de la necesidad de continuar bajo confinamiento, previo a la audiencia.

B. exh. ME-1

| NEW YORK STATE Corrections and Community Supervision | GRIEVANCE NO. EL 47-418-17 | | DATE FILED 06/01/17 |
|---|---|---|---|
| | FACILITY Elmira Correctional Facility | | POLICY DESIGNATION I |
| INMATE GRIEVANCE PROGRAM | TITLE OF GRIEVANCE ISSUES W/VISITS | | CLASS CODE 24 |
| SUPERINTENDENT | SUPERINTENDENT'S SIGNATURE | | DATE 07/10/17 |
| GRIEVANT BOOKER, A. | DIN 98A6245 | | HOUSING UNIT SHU 30-1-20 |

## SUPERINTENDENT'S RESPONSE

Inmate is grieving that he only had one visit per week.

Investigation by Sgt. Mazzaraco finds no evidence of any wrongdoing on the part of staff or of any problems with facility policy. Inmate had a regression and an accompanying lowering of PIMS level and dropped from 2 visits per week to 1. It is not staff responsibility to notify inmate's family and friends about their visiting sanctions.

Grievance is denied accordingly.

Amin Booker, swears under penalties punishable by perjury that on July 18th 2017 I served this appeal, and appeal to grievance # EL-47-477-17, by placing both in one properly sealed envelope, delivered into hand of correction officer, to be placed in locked mail-box in Elmira S.H.U. to be delivered First Class U.S. Postal Service —    x Amin Booker

## APPEAL STATEMENT

If you wish to refer the above decision of the Superintendent please sign below and return this copy to your Inmate Grievance Clerk. You have seven (7) calendar days from receipt of this notice to file your appeal.* Please state why you are appealing this decision to C.O.R.C.

Investigation by subject of grievance (Sgt. Mazzarco) violates Directive #4040 & inherent conflict of interest, & tailored fact finding. Sgt. Mazzarco participated in the filing of false report, as means to deny my scheduled visit, and, he lied to me that he "Called my family and cancel..."

July 17th 2017
_____    DATE
GRIEVANT'S SIGNATURE

7/20/14
_____    DATE
GRIEVANCE CLERK'S SIGNATURE

*An exception to the time limit may be requested under Directive #4040, section 701.6 (g)
Form 2133 (02/15)

B. exh. "E-2"

FORM 2131E (REVERSE) (REV. 6/06)
Response of I.G.R.C. Page 1 of 1

| EL47-418-17 | NAME: Booker, A. | DIN: 98-A-6245 | LOC: SHU-1-30 | DATE: 06/26/17 |
|---|---|---|---|---|

It is the recommendation of the IGRC that this grievance is **DENIED:** per the investigation, the Grievant , on 5/4/17 received an MBR which dropped his PIMS level back to 1.  This regression caused the Grievant to be allowed only one visit a week as to his previous 2 a week. Notification of his disciplinary actions are not part of securities job duties, but steps were taken to see if his family could be notified by MHU and his SHU counselor.

Date Returned To Inmate _6/29/17_          I.G.R.C. Members _____

Chairperson _1. Brown/mld_                  _Healey_

                                            _I. Acc._

                                            _Sgt Perry_

Return within 7 calendar days and check appropriate boxes. *

[✓] I disagree with I.G.R.C. response and
    Wish to appeal to the Superintendent.

[ ] I have reviewed deadlocked response.
    Pass-thru to Superintendent.

[ ] I agree with I.G.R.C. response and
    Wish to appeal to the Superintendent.

[ ] I apply to the I.G.P. Supervisor for
    Review Of dismissal

Signed _Ann Booker_          _June 30, 2017_
       Grievant                    Date

_____          _____
Grievance Clerk's Receipt          Date

To be completed by Grievance Clerk.

Grievance Appealed to the Superintendent: _____
                                            Date

Grievance forwarded to the Superintendent for Action: _____
                                                       Date

* An exception to the time limit may be requested under Directive # 4040, Section 701.6(g)



FORM 2171A (4/01)

**STATE OF NEW YORK-DEPARTMENT OF CORRECTIONAL SERVICES**

BEA "F1"

_Elmira_ _____ Correctional Facility

## INMATE MISBEHAVIOR REPORT ♦ INFORME DE MAL COMPORTAMIENTO DEL RECLUSO

| NAME OF INMATE (LAST, FIRST) ♦ NOMBRE DEL RECLUSO (Apellido, Nombre) | NO. ♦ NUM | HOUSING LOCATION ♦ CELDA |
|---|---|---|
| Booker, Amin | 98A6245 | SHU 26 |
| 2. LOCATION OF INCIDENT ♦ LUGAR DEL INCIDENTE | INCIDENT DATE ♦ FECHA | INCIDENT TIME ♦ HORA |
| SHU 26 cell | 10/9/2017 | Approx, 9:35 AM |

3. RULE VIOLATION(S) ♦ VIOLACION/ES

116.10 destruction of state property

113.20 excess state property

4. DESCRIPTION OF INCIDENT - DESCRIPCION DEL INCIDENTE

On the above date and approximatre time I, L. Tammelin, was conducting a random daily cell frisk on SHU 26 Booker

98A6245. while conducting this frisk I discovered 3 fishing lines under this inmates bed made of a destroyed state sheet,

There was also five extra towels and three sets of excess clothing found in this cell.

| REPORT DATE ♦ FECHA | REPORTED BY ♦ NOMBRE DE LA PERSONA QUE HACE EL INFORME | SIGNATURE ♦ FIRMA | TITLE ♦ TITULO |
|---|---|---|---|
| 10/9/2017 | L Tammelin | | CO |

5. ENDORSEMENTS OF OTHER EMPLOYEE WITNESSES (if any)   SIGNATURES

ENDOSOS DE OTROS EMPLEADOS TESTIGOS (si hay)   FIRMAS   1. _Alice_

2. _____   3. _____

**NOTE: Fold back Page 2 on dotted line before completing below.**

DATE AND TIME SERVED UPON INMATE   10/10/17   8 22 Am   NAME AND TITLE OF SERVER   C.O. Winfield

FECHA Y HORA DADO AL RECLUSO   NOMBRE Y TITULO DEL QUE ENTREGA

You are hereby advised that no statement made by you in response to the charges or information derived therefrom may be used against you in a crimal proceeding. Por este medio se le informa que no se puede usar ninguna declaracion hecha por usted como respuesta al cargo o la onformacion derivada de ella en una demanda criminal.

### NOTICE ♦ AVISO

REVIEWING OFFICER ( DETACH BELOW STATEMENT FOR VIOLATION HEARING ONLY)

You are hereby notified that the above report is a formal charge and will be considered and determined at a hearing to be held.

Por este medio se le notifica que el informe anterior es un cargo formal el cual se considerara y determinara en una audiencia a celbrarse

The inmate shall be permitted to call witnesses provided that so doing does not jeopardize institutional safety or correctional goals.

Se le permitira al recluso llamar testigos con tal de que al hacerlo no pondra en peligro la seguridad de la institucion o los objetivos del Departamento

If restricted pending a hearing for this misbehavior report, you may write to the Deputy Superintendent for Security or his/her designee prior to the hearing to make a statement on the need for continued prehearing confinement.

Si esta restringido pendiente a una audiencia por este informe de mal comportamiento, puede escribirle al Diputado del Superintendente para Seguridad o su respresentante antes de las audiencia para que haga una declaracion acerca de la necesidad de continuar bajo confinamiento, previo a la audiencia.

FORM 2171B (4/01)

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

BE X "1" F1 2 "

Elmira _____ Correctional Facility

# INMATE MISBEHAVIOR REPORT ♦ INFORME DE MAL COMPORTAMIENTO DEL RECLUSO

| 1. NAME OF INMATE (Last, First) ♦ NOMBRE DEL RECLUSO (Apellido, Nombre) | NO. ♦ NÚM. | HOUSING LOCATION ♦ CELDA |
|---|---|---|
| Booker, A | 98A6245 | SHU 26 |

| 2. LOCATION OF INCIDENT ♦ LUGAR DEL INCIDENTE | INCIDENT DATE ♦ FECHA | INCIDENT TIME ♦ HORA |
|---|---|---|
| SHU Rec Pen | 11-28-17 | App 9:35 am |

**3. RULE VIOLATION(S) ♦ VIOLACIÓN/ES**

118.22 - Unhygenic Act

**4. DESCRIPTION OF INCIDENT ♦ DESCRIPCIÓN DEL INCIDENTE**

On the above date and approximate time while escorting Counselor T. Brown, Inmate Booker 98A6245 stoped me to tell me "I need a Plastic bag and T-Shirt to clean my Shit off the ground". I then looked in the rec pen and observed feces on the ground. There was no attempt to inform Staff prior to defecating on the ground. He then cleaned up the fecies and was returned to his cell with no further Incident. Area Supervisor was then notified.

| REPORT DATE ♦ FECHA | REPORTED BY ♦ NOMBRE DE LA PERSONA QUE HACE EL INFORME | SIGNATURE ♦ FIRMA | TITLE ♦ TÍTULO |
|---|---|---|---|
| 11-28-17 | B. Evans | | C.O |

**5. ENDORSEMENTS OF OTHER EMPLOYEE WITNESSES (if any)** SIGNATURES

ENDOSOS DE OTROS EMPLEADOS TESTIGOS (si hay)   FIRMAS

1. _____

2. _____  3. _____

**NOTE: Fold back Page 2 on dotted line before completing below.**

DATE AND TIME SERVED UPON INMATE _____   NAME AND TITLE OF SERVER

FECHA Y HORA DADO AL RECLUSO _____   NOMBRE Y TÍTULO DEL QUE ENTREGA _____

You are hereby advised that no statement made by you in response to the charges or information derived therefrom may be used against you in a criminal proceeding. Por este medio se le informa que no se puede usar ninguna declaración hecha por usted como respuesta al cargo o la información derivada de ella en una demanda criminal.

## NOTICE ♦ AVISO

REVIEWING OFFICER (DETACH BELOW STATEMENT FOR VIOLATION HEARING ONLY)

You are hereby notified that the above report is a formal charge and will be considered and determined at a hearing to be held.
Por este medio se le notifica que el informe anterior es un cargo formal el cual se considerará y determinará en una audiencia a celebrarse.

The inmate shall be permitted to call witnesses provided that so doing does not jeopardize institutional safety or correctional goals.
Se le permitirá al recluso llamar testigos con tal de que al hacerlo no pondrá en peligro la seguridad de la institución o los objetivos del Departamento.

If restricted pending a hearing for this misbehavior report, you may write to the Deputy Superintendent for Security or his/her designee prior to the hearing to make a statement on the need for continued prehearing confinement.
Si está restringido pendiente a una audiencia por este informe de mal comportamiento, puede escribirle al Diputado del Superintendente para Seguridad o su respresentante antes de la audiencia para que haga una declaración acerca de la necesidad de continuar bajo confinamiento, previo a la audiencia.

FORM 2171B (10/14)
Side 2

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

_____ Elmira _____ **Correctional Facility**

# INMATE MISBEHAVIOR REPORT ♦ INFORME DE MAL COMPORTAMIENTO DEL RECLUSO

| 1. NAME OF INMATE (Last, First) ♦ NOMBRE DEL RECLUSO (Apellido, Nombre) | NO. ♦ NÚM. | HOUSING LOCATION ♦ CELDA |
|---|---|---|
| Booker, Ainul | 98A6245 | SHU 42 |

| 2. LOCATION OF INCIDENT ♦ LUGAR DEL INCIDENTE | INCIDENT DATE ♦ FECHA | INCIDENT TIME ♦ HORA |
|---|---|---|
| SHU 42 | 1/15/18 | 10:15 AM |

3. RULE VIOLATION(S) ♦ VIOLACIÓN/ES

113.20 - Excess/Altered Bedding
113.23 - Contraband
116.10 - Damage State Property

4. DESCRIPTION OF INCIDENT ♦ DESCRIPCIÓN DEL INCIDENTE

On the above date and approximate time I Officer Youman conducted a random cell search on inmate Booker, Ainul 98A6245 SHU 42 cell. While searching the cell I found 1 altered state sheet that had been torn and hung across his cell. I also found a extra state blanket on the floor. I also found 4 non state standard new inserts hidden inside envelopes at the head of the bed. All items confiscated and removed. Evidence placed in evidence locker box #3.

| REPORT DATE ♦ FECHA | REPORTED BY ♦ NOMBRE DE LA PERSONA QUE HACE EL INFORME | SIGNATURE ♦ FIRMA | TITLE ♦ TÍTULO |
|---|---|---|---|
| 7/16/18 | | | CO |

5. ENDORSEMENTS OF OTHER EMPLOYEE WITNESSES (if any)    SIGNATURES:
ENDOSOS DE OTROS EMPLEADOS TESTIGOS (si hay)    FIRMAS   1.
2.
3.

**NOTE: Fold back Page 2 on dotted line before completing below.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DATE AND TIME SERVED UPON INMATE    7/16/18    4:01 PM    NAME AND TITLE OF SERVER   CO Sambroski

FECHA HORA DADO AL RECLUSO    NOMBRE Y TÍTULO DEL QUE ENTREGA

You are hereby advised that no statement made by you in response to the charges or information derived therefrom may be used against you in a criminal proceeding. ♦ Por este medio se le informa que no se puede usar ninguna declaración hecha por usted como respuesta al cargo o la información derivada de ella en una demanda criminal.

## NOTICE ♦ AVISO

**REVIEWING OFFICER (DETACH BELOW FOR VIOLATION HEARING ONLY)**

You are hereby notified that the above report is a formal charge and will be considered and determined at a hearing to be held. ♦ Por este medio se le notifica que el informe anterior es un cargo formal el cual se considerará y determinará en una audiencia a celebrarse.

The inmate shall be permitted to call witnesses provided that so doing does not jeopardize institutional safety or correctional goals. ♦ Se le permitirá al recluso llamar testigos con tal de que al hacerlo no ponga en peligro la seguridad de la institución o los objetivos del Departamento.

If restricted pending a hearing for this misbehavior report, you may write to the Deputy Superintendent for Security or his/her designee prior to the hearing to make a statement on the need for continued prehearing confinement. ♦ Si está restringido pendiente a una audiencia por este informe de mal comportamiento, puede escribirle al Diputado del Superintendente para Seguridad o su representante antes de la audiencia para que haga una declaración acerca de la necesidad de continuar bajo confinamiento, previo a la audiencia.

Distribution: WHITE - Disciplinary Office    CANARY - Inmate (After review) ♦ Distribución: BLANCA - Oficina Disciplinaria    AMARILLA - Recluso (después de la revisión)

Side 2   B. ex. "F4"        Elmira        Correctional Facility    Plaintiffs Attachment "A"

STATE OF NEW YORK · DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

## INMATE MISBEHAVIOR REPORT ♦ INFORME DE MAL COMPORTAMIENTO DEL RECLUSO

| 1. NAME OF INMATE (Last, First) ♦ NOMBRE DEL RECLUSO (Apellido, Nombre) | NO. ♦ NÚM. | HOUSING LOCATION ♦ CELDA |
|---|---|---|
| BOOKER, AMIN | 98A6245 | SHU 42 |

| 2. LOCATION OF INCIDENT ♦ LUGAR DEL INCIDENTE | INCIDENT DATE ♦ FECHA | INCIDENT TIME ♦ HORA |
|---|---|---|
| SHU 42 | 9-11-18 | App 9:10 A.m. |

3. RULE VIOLATION(S) ♦ VIOLACIÓN/ES

106.10  DIRECT ORDER
104.13  CREATing A disTurbance
112.22  OBSTRUCT visibility

4. DESCRIPTION OF INCIDENT ♦ DESCRIPCIÓN DEL INCIDENTE

On the Above dAte And time while doing Rds in SHU, I observed
inmate BookerS Rear gAte covered obstructing visibility into his cell. Inmate
Booker wAs also Banging his feet Against his cell dooR, disturbing ordR
in the TANK and cAusing otheR inmates to start yelling. I gAve inmate
Booker several direct orders to uncover his cell. Inmate BookeR disregarded
my direct orders and refused to uncover his cell. Inmate Booker 98A6245
asked to see mental Health, but denied any thoughts of hurting himself.
At this time the area supervisor was Notified, And a Regular mental
health Referral was written.

| REPORT DATE ♦ FECHA | REPORTED BY ♦ NOMBRE DE LA PERSONA QUE HACE EL INFORME | SIGNATURE ♦ FIRMA | TITLE ♦ TÍTULO |
|---|---|---|---|
| 9-11-18 | T. Thompson | | CO |

5. ENDORSEMENTS OF OTHER EMPLOYEE WITNESSES (if any)        SIGNATURES:

ENDOSOS DE OTROS EMPLEADOS TESTIGOS (si hay)        FIRMAS:    1. _____    _____

2. _____                                3. _____

**NOTE:** Fold back Page 2 on dotted line before completing below.

DATE AND TIME SERVED UPON INMATE  9/12/18   10:03 Am    NAME AND TITLE OF SERVER  R. Bennett

FECHA HORA DADO AL RECLUSO _____    NOMBRE Y TÍTULO DEL QUE ENTREGA _____

You are hereby advised that no statement made by you in response to the charges or information derived therefrom may be used against you in a criminal proceeding. ♦ Por este medio se le informa que no se puede usar ninguna declaración hecha por usted como respuesta al cargo o la información derivada de ella en una demanda criminal.

## NOTICE ♦ AVISO

**REVIEWING OFFICER (DETACH BELOW FOR VIOLATION HEARING ONLY)**

You are hereby notified that the above report is a formal charge and will be considered and determined at a hearing to be held. ♦ Por este medio se le notifica que el informe anterior es un carge formal el cual se considerará y determinará en una audiencia a celebrarse.

The inmate shall be permitted to call witnesses provided that so doing does not jeopardize institutional safety or correctional goals. ♦ Se le permitirá al recluso llamar testigos con tal de que al hacerlo no pondrá en peligro la seguridad de la institución o los objetivos del Departamento.

If restricted pending a hearing for this misbehavior report, you may write to the Deputy Superintendent for Security or his/her designee prior to the hearing to make statement on the need for continued prehearing confinement. ♦ Si está restringido pendiente a una audiencia por este informe de mal comportamiento, puede xhirle al Diputado del Superintendente para Seguridad o su representante antes de la audiencia para que haga una declaración acerca de la necesidad de :r bajo confinamiento, previo a la audiencia.

on: WHITE - Disciplinary Office    CANARY - Inmate (After review) ♦ Distribución: BLANCA - Oficina Disciplinaria    AMARILLA - Recluso (después de la resión)

FORM 2171B (4/09)
Side 2

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

B. exh "F5"

## Elmira Correctional Facility

### INMATE MISBEHAVIOR REPORT ♦ INFORME DE MAL COMPORTAMIENTO DEL RECLUSO

| 1 NAME OF INMATE (Last, First) • NOMERE DEL RECLUSO (Apellido, Nombre) | NO. • NUM | HOUSING LOCATION ♦ CELDA |
|---|---|---|
| Booker, Amin | 98A6245 | SHU-42 |

| 2 LOCATION OF INCIDENT ♦ VIOLACIONES | INCIDENT DATE ♦ FECHA | INCIDENT TIME ♦ HORA |
|---|---|---|
| SHU-42 | February 5, 2019 | 4:15pm   Approximately |

3 RULE VIOLATION(S) ♦

| 104.13 | CREATING A DISTURBANCE | | |
|---|---|---|---|
| 106.10 | REFUSING DIRECT ORDER | 104.11 | VIOLENT CONDUCT |
| 107.10 | INTERFERENCE WITH EMPLOYEE | | |

4. DESCRIPTION OF INCIDENT ♦

On the above date and approximate time, I CO K. Sears, was handing out mail during the evening chow run. As I handed Inmate Booker 98A6245 his mail, I noticed an intact disbursement form included with his mail. I pulled the mail back from the hatch and performed a closer inspection of the disbursement form. Inmate Booker demanded that I give him his disbursement form at this time. I explained to Inmate Booker that the disbursement form had all three copies and that it was not his at this time. He attempted to pull the disbursement form into his cell and I ordered him to release his hold of the disbursement form. Inmate Booker became aggressive and continued to try to pull the form through the feed up hatch. I was able to pull the disbursement form from his hands and tried to explain that the form needed to be stamped and returned to inmate accounts for processing so that the proper charges could be made. Inmate Booker thrust his arm out of the hatch and used several swear words, demanding that I give him his form. I tore the pink copy from the form and gave the "inmate copy", to Inmate Booker. Inmate Booker continued to be disruptive, began yelling profanities, and tried to grab the disbursement form from me. I gave three more direct orders to pull his arm back into his cell. Inmate Booker with a clenched fist, refused to bring his arm back through the feed up hatch. I ordered Inmate Booker a final time to pull his arm back into his cell or he would receive a misbehavior report. Inmate Booker refused to comply and I left the area, leaving the feed up hatch open and his arm out of the feed up hatch.     Area supervisor notified and misbehavior report issued.

THE FEED UP HATCH WAS SECURED A FEW MINUTES AFTER COMPLETING FEED UP.

| REPORT DATE ♦ FECHA | REPORTED BY ♦ NOMBRE DE LA PERSONA QUE HACE EL INFORME | SIGNATURE ♦ FIRMA | TITLE ♦ TITULO |
|---|---|---|---|
| 12/16/18 | K.Sears | | CO |

5. ENDORSEMENTS OF OTHER EMPLOYEE WITNESSES (if any)         SIGNATURES

ENDOSOS DE OTROS EMPLEADOS TESTIGOS (si hay)         FIRMAS   1   _MUDD_

2                                                    3

**NOTE: Fold back Page 2 on dotted line before completing below.**

DATE AND TIME SERVED UPON INMATE    2/6/19  8⁴¹ᵃᵐ        NAME AND TITLE OF SERVER   EL.Bennett

FECHA HORA DADO AL RECLUSO                              NOMBRE Y TITULO DEL QUE ENTREGA

You are hereby advised that no statement made by you in response to the charges or information derived therefrom may be used against you in a criminal proceeding. ♦ Por este medio se le informa que no se puede usar ninguna declaracion hecha por usted como respuesta al orgoo información derivada de ella en una demanda criminal.

### NOTICE ♦ AVISO

REVIEWING OFFICER (DETACH BELOW FOR VIOLATION HEARING ONLY)

You are hereby notified that the above report is a formal charge and will be considered and determined at a hearing to be held. ♦ Por este medio se le notifica que el informe anterior es un cargo formal el cual se considerara y determinara en una audiencia a celebrarse.

The inmate shall be permitted to call witnesses provided that so doing does not jeopardized institutional safety or correctional goals. ♦ Se le permitira al recluso llamar testigos con tal de que al hacerlo no pondra en peligro la seguridad de la institucion o los objetivos del Departamento.

If restricted pending a hearing for this misbehavior report, you may write to the Deputy Superintendent for Security or his/her designee prior to the hearing to make a statement on the need for continued prehearing confinement. ♦ Si esta restringido pendiente a una audiencia por este informe de mal comportamiento, puede escribirle al Diputado del Superintendente para Seguridad o su respresentante antes de la audiencia para que haga una declaracion acerca de la necesidad de continuar bajo confinamiento , previo a la audiencia.

Distribution:  WHITE - Disciplinary Office  CANARY - Inmate (After review) ♦ Distribucion:  BLANCA - Oficina Disciplinaria  AMARILLA - Recluso (despues de la resion)

FORM 2171B (10/14)
Side 2

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

D. exh "F6"

_____Elmira_____ **Correctional Facility**

## INMATE MISBEHAVIOR REPORT ♦ INFORME DE MAL COMPORTAMIENTO DEL RECLUSO

| 1. NAME OF INMATE (Last, First) ♦ NOMBRE DEL RECLUSO (Apellido, Nombre) | NO. ♦ NÚM. | HOUSING LOCATION ♦ CELDA |
|---|---|---|
| Booker, Amin | 98A6245 | SHU 48 |

| 2. LOCATION OF INCIDENT ♦ LUGAR DEL INCIDENTE | INCIDENT DATE ♦ FECHA | INCIDENT TIME ♦ HORA |
|---|---|---|
| Inside Cell 48 | 5/12/19 | Approx 2 PM |

**3. RULE VIOLATION(S) ♦ VIOLACIÓN/ES**

113.22 property in unauthorized location
113.23 Contraband
113.19 excess tobacco

**4. DESCRIPTION OF INCIDENT ♦ DESCRIPCIÓN DEL INCIDENTE**

On the above date and Approximate time, I CO. J. Nitterour was ordered by Sgt. J. Nolan to conduct a suspicion cell search of SHU 48 housing Inmate Booker Amin 98A6245. During the course of my search I recovered a white homemade envelope with tape around the outside containing loose tobacco and Rolling papers located in another envelope with misc. papers. Area supervisor notified. The envelope and contents were photographed and then disposed of per Directive 4910A.

| REPORT DATE ♦ FECHA | REPORTED BY ♦ NOMBRE DE LA PERSONA QUE HACE EL INFORME | SIGNATURE ♦ FIRMA | TITLE ♦ TÍTULO |
|---|---|---|---|
| 5/12/19 | J. Nitterour | J. Nitt | CO |

**5. ENDORSEMENTS OF OTHER EMPLOYEE WITNESSES (if any)    SIGNATURES:**

ENDOSOS DE OTROS EMPLEADOS TESTIGOS (si hay)    FIRMAS:   1. _____

2. _____    3. _____

**NOTE: Fold back Page 2 on dotted line before completing below.**

DATE AND TIME SERVED UPON INMATE  5/13/19  8:45   NAME AND TITLE OF SERVER  E.C. Bennett

FECHA HORA DADO AL RECLUSO _____    NOMBRE Y TÍTULO DEL QUE ENTREGA _____

You are hereby advised that no statement made by you in response to the charges or information derived therefrom may be used against you in a criminal proceeding. ♦ Por este medio se le informa que no se puede usar ninguna declaración hecha por usted como respuesta al cargo o la información derivada de ella en una demanda criminal.

## NOTICE ♦ AVISO

**REVIEWING OFFICER (DETACH BELOW FOR VIOLATION HEARING ONLY)**

You are hereby notified that the above report is a formal charge and will be considered and determined at a hearing to be held. ♦ Por este medio se le notifica que el informe anterior es un carge formal el cual se considerará y determinará en una audiencia a celebrarse.

The inmate shall be permitted to call witnesses provided that so doing does not jeopardize institutional safety or correctional goals. ♦ Se le permitirá al recluso llamar testigos con tal de que al hacerlo no pondrá en peligro la seguridad de la institución o los objetivos del Departamento.

If restricted pending a hearing for this misbehavior report, you may write to the Deputy Superintendent for Security or his/her designee prior to the hearing to make a statement on the need for continued prehearing confinement. ♦ Si está restringido pendiente a una audiencia por este informe de mal comportamiento, puede escribirle al Diputado del Superintendente para Seguridad o su representante antes de la audiencia para que haga una declaración acerca de la necesidad de continuar bajo confinamiento, previo a la audiencia.

Distribution: WHITE - Disciplinary Office    CANARY - Inmate (After review) ♦ Distribución: BLANCA - Oficina Disciplinaria    AMARILLA - Recluso (después de la resión)

FORM 2171B (10/14)
Side 2

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

B. exh "F-7"

Elmira _____ **Correctional Facility**

## INMATE MISBEHAVIOR REPORT ♦ INFORME DE MAL COMPORTAMIENTO DEL RECLUSO

| 1. NAME OF INMATE (Last, First) ♦ NOMBRE DEL RECLUSO (Apellido, Nombre) | NO. ♦ NÚM. | HOUSING LOCATION ♦ CELDA |
|---|---|---|
| Booker, Amin | 98A6245 | SHU 48 |

| 2. LOCATION OF INCIDENT ♦ LUGAR DEL INCIDENTE | INCIDENT DATE ♦ FECHA | INCIDENT TIME ♦ HORA |
|---|---|---|
| SHU 48 | 5-13-19 | Approx 109/A |

**3. RULE VIOLATION(S) ♦ VIOLACIÓN/ES**

105.13 Gang material

**4. DESCRIPTION OF INCIDENT ♦ DESCRIPCIÓN DEL INCIDENTE**

On the above date and approximate time, SHU 48 housing inmate Booker, # 98A6245 was frisked. During the course of the frisk, CO Mitterour recovered one handwritten paper, which he subsequently turned over to myself. Upon examining the paper, I determined that it contained Gang Material pertaining to the Blood Gang, more specifically the Bloodhound Brim Set. A copy of the material is attached to this report. The original is secured in the disciplinary contraband Locker per Dir. 4910A

| REPORT DATE ♦ FECHA | REPORTED BY ♦ NOMBRE DE LA PERSONA QUE HACE EL INFORME | SIGNATURE ♦ FIRMA | TITLE ♦ TÍTULO |
|---|---|---|---|
| 5-13-19 | 1/M. DIA | my laidi | CO |

**5. ENDORSEMENTS OF OTHER EMPLOYEE WITNESSES (if any)**   SIGNATURES:
ENDOSOS DE OTROS EMPLEADOS TESTIGOS (si hay)   FIRMAS:   1. _____

2. _____   3. _____

**NOTE: Fold back Page 2 on dotted line before completing below.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DATE AND TIME SERVED UPON INMATE  5/14/19   8:38am   NAME AND TITLE OF SERVER  C.O. A. Bates

FECHA HORA DADO AL RECLUSO _____   NOMBRE Y TÍTULO DEL QUE ENTREGA _____

You are hereby advised that no statement made by you in response to the charges or information derived therefrom may be used against you in a criminal proceeding. ♦ Por este medio se le informa que no se puede usar ninguna declaración hecha por usted como respuesta al cargo o la información derivada de ella en una demanda criminal.

## NOTICE ♦ AVISO

**REVIEWING OFFICER (DETACH BELOW FOR VIOLATION HEARING ONLY)**

You are hereby notified that the above report is a formal charge and will be considered and determined at a hearing to be held. ♦ Por este medio se le notifica que el informe anterior es un carge formal el cual se considerará y determinará en una audiencia a celebrarse.

The inmate shall be permitted to call witnesses provided that so doing does not jeopardize institutional safety or correctional goals. ♦ Se le permitirá al recluso llamar testigos con tal de que al hacerlo no pondrá en peligro la seguridad de la institución o los objectivos del Departamento.

If restricted pending a hearing for this misbehavior report, you may write to the Deputy Superintendent for Security or his/her designee prior to the hearing to make a statement on the need for continued prehearing confinement. ♦ Si está restringido pendiente a una audiencia por este informe de mal comportamiento, puede escribirle al Diputado del Superintendente para Seguridad o su representante antes de la audiencia para que haga una declaración acerca de la necesidad de continuar bajo confinamiento, previo a la audiencia.

Distribution: WHITE - Disciplinary Office   CANARY - Inmate (After review) ♦ Distribución: BLANCA - Oficina Disciplinaria   AMARILLA - Recluso (después de la resión)

D. Ex. 61

```
8:34:24 Thursday, April 25, 20
  04/25/19                    LOCATOR SYSTEM
                    INTERNAL MOVEMENT HISTORY DISPLAY          KLOCM6B
                             11 ELMIRA
 DIN 98-A-6245    NYSID 07468235-P   FACILITY ELMIRA GENER    LOCATION SH-01-048
 NAME BOOKER, AMIN                       DOB 03/17/77   SEX M   E/R NB


                    EFFECTIVE      DATE
        FACILITY       DATE       ENTERED      FROM              TO
     ELMIRA GENER    05/05/17    05/05/17    SH-01-041       SH-01-030
                                            L-3 04/19/17    L-1 05/05/17
                                            PROGRESSION     REGRESSION
                     06/04/17    06/04/17    L-1 05/05/17    L-2 06/04/17
                                            REGRESSION      PROGRESSION
                     06/26/17    06/26/17    SH-01-030       SH-01-026
               1.    08/18/17    08/18/17    L-2 06/04/17  * L-1 07/24/17
                                            PROGRESSION     REGRESSION
                     08/23/17    08/23/17    L-1 07/24/17    L-2 08/23/17
                                            REGRESSION      PROGRESSION
               2.    10/12/17    10/12/17    L-2 08/23/17  * L-1 10/10/17
                                            PROGRESSION     REGRESSION
               3.    10/16/17    10/16/17    L-1 10/10/17    L-1 10/13/17


  <ENTER> CONTINUE    <PF3> EXIT(FUNCTION)    <PF4> RETURN   <CLEAR> EXIT(SYSTEM)
                    <PF7> SCROLL BACKWARD    <PF8> SCROLL FORWARD
```

000701

8:34:28 Thursday, April 25, 20??

B.exh "62"

04/25/19                    LOCATOR SYSTEM                       KLOCM6B
                    INTERNAL MOVEMENT HISTORY DISPLAY
                           11 ELMIRA

DIN 98-A-6245   NYSID 07468235-P   FACILITY **ELMIRA GENER**   LOCATION SH-01-048
NAME **BOOKER, AMIN**                        DOB 03/17/77   SEX **M**   E/R **NB**

|                | EFFECTIVE | DATE    |              |              |
|----------------|-----------|---------|--------------|--------------|
| FACILITY       | DATE      | ENTERED | FROM         | TO           |
| ELMIRA GENER 4.| 10/16/17  | 10/16/17| L-1 10/13/17 *| L-1 10/16/17 |
|                | 11/15/17  | 11/15/17| L-1 10/16/17 | L-2 11/15/17 |
|                |           |         | REGRESSION   | PROGRESSION  |
|             5. | 12/18/17  | 12/18/17| L-2 11/15/17 | L-1 11/28/17 |
|                |           |         | PROGRESSION  | REGRESSION   |
|                | 12/28/17  | 12/28/17| L-1 11/28/17 | L-2 12/28/17 |
|                |           |         | REGRESSION   | PROGRESSION  |
|                | 01/26/18  | 01/26/18| SH-01-026    | SH-01-042    |
|                | 02/27/18  | 02/27/18| L-2 12/28/17 | L-3 02/26/18 |
|             6. | 03/20/18  | 03/20/18|              | L-1 11/28/17 |
|                |           |         |              | INITIAL      |
|                | 03/21/18  | 03/21/18| L-1 11/28/17 | L-3 02/26/18 |
|                |           |         | INITIAL      | PROGRESSION  |

  <ENTER> CONTINUE   <PF3> EXIT(FUNCTION)    <PF4> RETURN   <CLEAR> EXIT(SYSTEM)
                <PF7> SCROLL BACKWARD    <PF8> SCROLL FORWARD

000702

B. Ex G3"

8:34:31 Thursday, April 25, 20

04/25/19                        LOCATOR SYSTEM
                        INTERNAL MOVEMENT HISTORY DISPLAY                    KLOCM6B
                                11 ELMIRA
DIN 98-A-6245    NYSID 07468235-P  FACILITY **ELMIRA GENER**    LOCATION SH-01-048
   NAME BOOKER, AMIN                       DOB 03/17/77    SEX **M**    E/R **NB**

                    EFFECTIVE        DATE
       FACILITY       DATE         ENTERED        FROM              TO
    ELMIRA GENER 7. 07/16/18       07/16/18     L-3 02/26/18 ✱ L-1 07/15/18
                                               PROGRESSION      REGRESSION
                     08/03/18       08/03/18     L-1 07/15/18     L-3 08/03/18      8. Sept. 11, 2018 Level 1
                                               REGRESSION       PROGRESSION
                     02/23/19       02/23/19     SH-01-042        SH-01-048
                   9 02/28/19       02/28/19     L-3 08/03/18 ✱ L-1 02/05/19       10. May 13, 2019, Level 1
                                               PROGRESSION      REGRESSION
                     03/07/19       03/07/19     L-1 02/05/19     L-2 03/07/19
                                               REGRESSION       PROGRESSION


                    **    AT END OF REQUESTED HISTORY SCAN    **
    <ENTER> CONTINUE    <PF3> EXIT(FUNCTION)     <PF4> RETURN    <CLEAR> EXIT(SYSTEM)
                    <PF7> SCROLL BACKWARD     <PF8> SCROLL FORWARD

B. exh. "H"

Amin Booker # 98A6245

Elmira Correctional Facility

P.O. Box 500

Elmira, N.Y. 14902

July 20, 2019

To: Ms. April Rodriguez

N.Y.C.L.U. 125 Broad Street

New York, N.Y. 10004

RE: TELEPHONE CONFERENCE AND ISSUES OF PEOPLES SETTLEMENT ORDER

Dear Mrs. Rodriguez,

Enclosed are the documents you'd requested.. I ask that you mail the Answer with exhibits & hearing transcript back to me as soon as you make your copies. [Please bind these back with a string]. I am currently litigating this matter so i'd appreciate if you'll mail it back a.s.a.p.

Also, will you forward me an affidavit or a letter affirming that Elmira staff are supposed to be trained in, and, utilize the de-escalation principles and techniques prior to issuing SHU inmates misbehavior reports, pursuant to the settlement order... Reason being, i've filed a Mandamus to compel the parties to comply with this part of the order, in the Albany Supreme Court.

Ok, You will observe in the internal movement history, Elmira staff dropped me to level 1 on each day they'd issued me a misbehavior report [They do not await a disposition of a hearing at all]. Enclosed is the May 4, 2017 misbehavior report, and my fiance attempted to visit me on May

Exh. "H"

7th 2017, and the staff rejected her visit, stating I am now Level 1.
The two greivance responses enclosed will confirm this point.

The locator system omits the following information: Sept. 11, 2018 I was issued a misbehavior report and immediately dropped from level 3 to level 1. Sgt. Rios denied me my telephone scheduled call that night.

On May 12, 2019 while on level 3, I received a misbehavior report and was dropped to level 1 on same date. On May 18, 2018 My loved one Lenny Mann attempted to visit me, and staff rejected him stating I am on level 1. A review of the records will confirm I am not on level 3 yet and that the May 12, 2019 Misbehavior report is still Pending.

The following pages of the hearing transcript will confirm that the SHU steady officer Thompson, [That issued Misbehavior report on Sept. 11, 2018] is not aware of the Leaflex, order re: de-escalation, the hearing officer is not aware either· Pgs. 018- 020 , 035-036, & 066) (Exhibit D of Answer)

I'm also including a misbehavior report issued on May 12, 2019. Every Misbehavior issued against me in Elmira SHU From May 4, 2017- May 12, 2019 was a miscellaneous non-serious allegation-incident. There was no de-escalation technique used or even known to the staff, and, every hearing officer confirmed in those hearings that they aren't aware of the Policy & Order... I give You Permission to obtain all of the Misbehavior reports, hearing transcripts, Visitor records & Phone logs — to confirm the truth-facts and file a motion of Contempt and to enforce the Judgment... I don't understand why your office don't simply request the records of the following items

a) All Elmira Staff trained records in De-escalation
b) All Misbehavior reports issued to Elmira SHU inmates from Oct. 1, 2016- Current
c) All Elmira SHU inmates locator System Internal Movement History Display "

d) All Elmira SHU inmates telephone home logs fr. Oct. 1, 2016 - Current date.

These records will be self explanatory, & demonstrate that the Order is not being Complied.. To wait for inmates to write you letters and forward greivances is incomprehensive and ineffective because # 1, Majority of inmates confined to SHU have no Knowledge of the Peoples, Case at all; # 2 Inmates that may have heard of a SHU change, have no idea that there is a lawfirm being paid to over-see the Settlement Order, # 3. On average, inmates are fearful to file greivances because of Staff retaliation, # 4.- it is very unfair that inmates have to keep relitigating matters that was resolved in the Settlement order & hearings and attorneys are being paid to litigate.

You guys can send regional Staff here to conduct interviews, review records, telephone inmates, etc... It must be more Progressive methods to oversee these matters..

Just my thoughts.. Hope to hear from you A.S.A.P.
Thank you in advance.. Take Care.

Sincerely, Quin Beale

enclosed: Answer to Article 78 w/exhibits
      Booker's Internal Movement History Display
      Interrogatory Responses P. Chappius jr. Superintendent [¶ 5]
      Interrogatory Responses D. Venettozzi Director of SHU [¶¶ 12
   2 Misbehavior Reports (May 4, 2017 and May 12, 2019)          C.C.
      Greivance Responses : Immediate PIMS level drop

B. exh "II" 

 **Corrections and Community Supervision**

NEW YORK STATE

| | |
|---|---|
| ANDREW M. CUOMO | ANTHONY J. ANNUCCI |
| Governor | Acting Commissioner |

To: ~~████████~~ Captain
     ~~████████~~ Captain

From: ~~████████~~ Sgt.

Date: 2-18-17

Subject: Grievance EL 46-981-17
          Booker 98A6245

Sir,

I spoke with inmate Booker 98A6245 on 2-19-17 at approx. 8:55 am and inmate had nothing further to add to his complaint.

I have reviewed the dates in question and determined that inmate Booker did receive a visit on 1-28-17 and a visit was denied on 1-29-17 according to him. While the Elmira SHU Orientation Manual does state that a visit week is Sunday AM through Saturday PM. Directive 4933 clearly states that SHU inmates will only receive one non-legal visit per week. The visit for a one week period was registered in the computer on 1-28-17 and thus his visit on 1-29-17 was denied in accordance with visit guidelines established by directive 4933. There is ambiguity in the two references and I was directed that this being addressed. I spoke with CO ~~████~~ regarding the matter and he states that in no way did he harass or interrogate inmate's visits that day. He denied the visit based on the denial of visit that the computer generated. Attached are copies of the visit screen for inmate denoting the visit by L Ripley on 1-28-17 and a To-From from CO ~~████~~ denying any improper actions.

My assessment of the complaint is that inmate Booker was going by the policy established in the SHU Orientation Manual and that staff were correct in denying the visit based on Directive 4933 Sec I Sub Sec 1 "one non legal visit per week will be permitted during visiting hours scheduled by the facility." and the denial of visit in the computer system. The ambiguity in policies is being addressed and that at no time did staff act inappropriate by harassing or interrogating inmate's visit.

Respectfully Submitted,

~~████████~~ Sgt.

Received ECF

FEB 21 2017

Captain's Office

Ex. "I 2"

| NEW YORK STATE | Corrections and Community Supervision | GRIEVANCE NO. EL 46-981-17 | DATE FILED 02/10/17 |
| | | FACILITY Elmira Correctional Facility | POLICY DESIGNATION I |
| INMATE GRIEVANCE PROGRAM | | TITLE OF GRIEVANCE WHY VISIT DENIED | CLASS CODE 5 |
| SUPERINTENDENT | | SUPERINTENDENT'S SIGNATURE | DATE 03/07/17 |
| GRIEVANT BOOKER, A. | | DIN 98A3248 | HOUSING UNIT SHU 1-16 |

## SUPERINTENDENT'S RESPONSE

Grievant is grieving visits in SHU.

The SHU Orientation Manual did in fact state visiting would be between Sunday and Saturday. However, the Directive (4933) states one visit every seven days.
The Orientation Manual has since been changed to be in compliance with 4933. Inmates request for his family to be reimbursed for their traveling expense is being denied through the grievance process because visit rules for state inmates is on the state web site.

Grievance is denied.

## APPEAL STATEMENT

If you wish to refer the above decision of the Superintendent please sign below and return this copy to your Inmate Grievance Clerk. You have seven (7) calendar days from receipt of this notice to file your appeal.* Please state why you are appealing this decision to C.O.R.C.

This Response is fraudulent. I've been confined here Elmira S.H.U. and the visit schedule, on web site and in visit registry, & S.H.U. Manual schedule has always been Sun-Sat (7 days). I've always received my visits according this schedule. The visit desk & Computer has Sun. as 1st day of visit calendar.. The 95t. Mazrecco that submitted the fraudulent investigation report, just arrived at Elmira w/in 60 days, & filed an answer to cover the officers deliberate deprivation. My family visited in accordance w/ Elmira visit schedule as they have consistently throughout my residing here since Apr. 2015 and are entitled to reinbursement.

GRIEVANT'S SIGNATURE

GRIEVANCE CLERK'S SIGNATURE  *Arin Beck*    DATE March, 16th 2017

*An exception to the time limit may be requested under Directive #4040, section 701.6 (g)
Form 2133 (02/15)

Grievance Clerk    3/24/17

Booker's Exh "J1"



Latesha Ripley
~~[redacted]~~
Bronx N.Y. 10473
~~[redacted]~~

To: Commissioner of Special Housing Units
RE: Violation of Directive #4933.

I am making a formal complaint against the
visiting/security staff at Elmira Correctional
Facility. According to Directive #4933 "SHU"
inmates are entitled to one visit per week.
However the staff at Elmira Correctional
Facility are only allowing "SHU" inmates to
recieve a visit 8 days from the date of
their last visit. This does not allow the
inmate to recieve their mandated number of
visits. It also presents a hardship to families
because bus service to Elmira is only
provided on weekends. This limits an inmate
to only recieving 2 visits per month if
their family rely on public transportation (bus
service). I visited Amin Booker #98A6245 on
Sunday May 28th, 2017. I was informed
today by visit processing staff and counselor
Kathy that Amin Booker could not recieve
another visit until Monday June 5th 2017.
I ask that this matter be looked into
and corrected immediately as per

B. exh "J1"

Directive #4933 which states that "Shu" inmates are entitled to one visit per week, not every 8 days.

cc: Anthony Annuci, Commissioner
1220 Washington Avenue
Albany, N.Y. 12226-2050

cc: Office of Special Investigations
D.O.C.C.S. State Campus Bldg #2
Albany, N.Y. 12226

cc: Prisoner Legal Services
41 State Street Suite M112
Albany, N.Y. 12207

cc: Superintendant Paul Chappius
Elmira Correctional Facility
1879 Davis St.
P.O. Box 500
Elmira, New York 14902

cc: Amin Booker #98A6245
Elmira Corr Facility
P.O. Box 500
Elmira, New York 14902

B. exh. "J-2"

LaTasha Ripley
~~████████████████~~
Bronx, New York 10473
~~████████████~~

To: Carl Heastie
Speaker of the New York Assembly
1446 E Gun Hill Road
Bronx, New York 10469

RE: Complaint

Dear Sirs/Madams

    I am greatly aggrieved as a citizen of The United States of America, a Native New Yorker and a perpetual tax payer - to report that State Officials of The New York State Department of Corrections and Community Supervision (D.O.C.C.S.) evil and insensitive treatment of myself.

    On May 7th, 2017 I traveled from New York City to visit my loved one Amin Booker #98A6245 who is incarcerated at Elmira Correctional Facility a distance of 241 miles. Upon my arrival and attempt to register, Correctional staff enthusiastically informed me that Mr. Booker "Could not receive a visit, because he received an infraction for having an extra towel in his cell.

    Through subsequent correspondence with Amin,

B. exh. "J-2"

I learned on May 17, 2017 that (a) He recieved the infraction on Friday May 5th, 2017 at 11 am and immediately informed S.H.U. Sergeant Mazzarco and a mental health Unit staff member L. Brennan that I was pre-scheduled to visit him on 5-7-17 and he requested them to telephone me to cancel the road trip. This occured from 11:30am - 1 p.m. (b) That Ms. Brennan alleged that she was arranging the phone call to be made through a specific person in the guidance unit, despite his requesting her to arrange for any staff member to make the call, rather than be selective. (c) That on Saturday May 6th, 2017 between 8am - 9:30pm Amin followed up with Sgt. Mazzarco concerning the telephone call to cancel the visit and Sgt. Mazzarco embellished to him that he'd received confirmation from Ms. Brennan that she spoke to me and informed me that Amin couldn't receive a visit. However she never contacted me.

This action by personnel in a proffessional capacity is arbitray, capricious and reflects complete discredit upon D.O.C.C.S. It negates the principle of strengthening family ties, rehabilitation of the incarcerated and protection of the public safety. I take great pride in my country, her prosperity and her institutions, and would defend any states if her rights

B. exh "J-2"

were invaded, and as of right now my native N.Y. State rights are being violated. Indeed it was within the lawful bounds resources and human rights of Sgt. Mazzarco and/or "Mental health provider" Brennan to telephone or contact any available guidance staff of the facility to inform me of the cancelation, preventing me from the arduous travel, wasted hard earned dollars and the shame hurtful emotions of deprivation.

This act was done intentionally to harm Amin Booker, to discourage me from supporting him, (as this isn't the first time Elmira's staff has attacked his visiting privilege). This must be thoroughly investigated. I demand vindicative action to be carried out against the perpetrators, and not a circumvention of duties. Further full reimbursement for my trip in the amount of $55.00.

The framers of our Constitution never exhausted so much labor, wisdom and forebearance in its formation and surround it with so many guards and securities if it was intended to be broken by every member of the D.O.C.C.S. at will.

It should also be known that a Correction Officer R. Delgiorno with cohesion of Sgt. Mazzarco conducted an unlawful cell search of Amin's cell

B. exh. "J2"

on 5-14-17, discarding D.O.C.C.S. own directive #4910 - while he was on a visit, and falsified the allegations in a deliberate effort to prevent him from receiving S.H.U. P.I.M.S. level III incentives

Please resolve this matter in a fair and expeditous manner. Thank you for your time. I pray for my representation. I pay my taxes.

Sincerely,
LaTasha Ripley

CC: Anthony Annucci, Commissioner
1220 Washington Ave
Albany, N.Y. 12226-2050

Office of Special Investigations
State Campus Bldg #2
Albany N.Y. 12226

David Weprin, Chairperson
185-06 Union Turnpike
Fresh Meadows, N.Y. 11366

Amin Booker #98A6245
P.O. Box 500
Elmira New York 14902

B. exh "J3"

Latasha Ripley
~~XXX XXXXX XXXXX XX XX~~
Bronx New York ~~XXXXX~~

9-24-19

RE: Amin Booker #98A6245 P.I.M.S. Level 3 visits

To: Superintendent Ray Coveney,

 I am writing to make a formal complaint against staff at Elmira Correctional Facility visit processing officers. On Monday September 23,2019 my family was denied access to visit with Amin Booker #989A6245 whom is level 3 P.I.M.S.. According to People vs. Annucci  an inmate whom is level 3 is allowed 2 visits per 7 days. According to DOCCS the 7 days does not start any particular day of the week it is calculated by the day of the first visit. I visited Mr.  Booker on Saturday September 14th and again on Thursday September 19th.  According to a calendar 7 days from September 14th Is September 20th. Therefore when I Visited him on Sunday September 22nd we are starting a new 7 day period. However your visit processing staff denied my family access on Monday September 23 which would have been Mr. Booker's 2nd visit for that 7 day period.  In the past I Have also had issues when visiting 2 times in a 7 day period.  On 2 occasions Sergeant Lang has had to come and override the computer. It seems like whether or not Amin is allowed the 2nd visit as per People vs Annucci is being determined by the discretion of whatever officer is working the visit processing area. This is totally unacceptable. We travel over 5 hours to visit Mr. Booker and spend a numerous amount of money. I demand that this problem is rectified through your computers as well as your visit staff. It is not fair that we are being inconvenienced when it is stated in black and white that level 3 P.I.M.S. is entitled to 2 visits per 7 days. I thank you in advance for addressing this issue.

                                        Yours truly,
                                        Latasha Ripley
                                        Latasha Ripley

Cc: April Rodriguez
     Civil Liberties Union
Cc: Jeffrey McKoy
     Deputy Commissioner of Program Services

Booker's Exhibit 1 A

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

## DISBURSEMENT OR REFUND REQUEST

NAME  Amin Booker

CODE TYPE

INMATE NUMBER  9 8 A 6 2 4 5

CHECK/ORDER NUMBER

COMMISSARY PRODUCT GROUP

SENT TO CODE
(SEE TABLE B-6)

DATE  Oct 8

"SHORT NAME"  A B o o

FIRST INITIAL
FIRST 3 OF LAST NAME

CELL LOCATION  SHU 48  20 19

SUFF

V30 Free
Legal (...)

ITEM
DESCRIPTION  Legal Mail

AMOUNT $  7 7 7 6 6 5

RIGHT ADJUSTED WITH LEADING ZEROS

SENT TO OR
PURCHASE FROM

LAST NAME  Clerk of Courts  FIRST NAME  jr. L Andrew
ADDRESS  500 Pearl Street  U.S. Court House
CITY  New York  STATE  NY  ZIP CODE  10007

MI

APT. NO.

I HEREBY ACKNOWLEDGE EXPENDITURE OF THE
AMOUNT TO BE DEDUCTED FROM MY INMATE
ACCOUNT.

Amin Booker
(INMATE SIGNATURE)

APPROVED _____  (SOURCE AREA)  DATE _____

APPROVED _____  (BUSINESS OFFICE)  DATE  10/9/19

FORM 2706 (7/11)   Original - Business Office   Yellow - Approving Office   Pink - Inmate